LATHAM & WATKINS LLP
Sadik Huseny (pro hac vice)
*sadik.huseny@lw.com*
Amit Makker (pro hac vice)
*amit.makker@lw.com*
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-6538
Telephone: (415) 391-0600
Facsimile: (415) 395-8095

ASIAN AMERICANS ADVANCING JUSTICE-AAJC
Niyati Shah (pro hac vice)
*nshah@advancingjustice-aajc.org*
Terry Ao Minnis (pro hac vice)*
*tminnis@advancingjustice-aajc.org*
1620 L Street NW, Suite 1050
Washington, DC 20036
Telephone: (202) 296-2300
Facsimile: (202) 296-2318

SPENCER FANE
Andrew M. Federhar (No. 006567)
*afederhar@spencerfane.com*
2415 East Camelback Road, Suite 600
Phoenix, AZ 85016
Telephone: (602) 333-5430
Facsimile: (602) 333-5431

*Attorneys for Plaintiff*
** Application for pro hac vice forthcoming*

UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA

Arizona Asian American Native Hawaiian And Pacific Islander For Equity Coalition,

Plaintiff,

vs.

Katie Hobbs, in her official capacity as Arizona Secretary of State; et al.,

Defendants.

Case No.: CV-22-01381-PHX-SRB

**MOTION FOR PRELIMINARY INJUNCTION**

**[H.B. 2243—IMMINENT VOTER PURGE]**

**ORAL ARGUMENT AND EXPEDITED HEARING REQUESTED**

## TABLE OF CONTENTS


Page

I. INTRODUCTION .......... 1

II. BACKGROUND .......... 2

A. Arizona's Pre-2022 History of Voter Cancellation Attempts in Violation of the NVRA .......... 3

B. The Arizona Legislature Passes H.B. 2492 in March 2022—in Defiance of Court Rulings and Arizona's Own Statements and Consent Decree—and Then Delays Implementation Until 2023 .......... 4

C. The Legislature Fails to Pass a Voter Purge Bill, H.B. 2617 .......... 6

D. H.B. 2243 is Passed on the Last Day—Altered from H.B. 2617 to Purge Voters of Color and Naturalized Voters Prior to the November Election .......... 7

III. PROCEDURAL POSTURE REQUIRING THE INSTANT MOTION .......... 8

IV. LEGAL STANDARD .......... 11

V. DISCUSSION .......... 11

A. Plaintiff Is Likely to Succeed on The Merits .......... 11

1. H.B. 2243 Violates Section 8 of the NVRA by Systematically Purging Voters Within 90 days of a Federal Election .......... 11

2. H.B. 2243 Violates the Uniformity and Non-discrimination Mandate of Section 8 of the NVRA .......... 13

B. Irreparable Harm Is Guaranteed .......... 14

C. The Remaining Preliminary Injunction Factors Strongly Support Preliminary Relief .......... 16

VI. CONCLUSION .......... 17

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*All. for the Wild Rockies v. Cottrell*,
632 F.3d 1127 (9th Cir. 2011) .......... 11

*Am. Trucking Ass'ns, Inc. v. City of L.A.*,
559 F.3d 1046 (9th Cir. 2009) .......... 11

*Arcia v. Florida Secretary of State*,
772 F.3d 1335 (11th Cir. 2014) .......... 12, 13

*Arizona v. Inter Tribal Council of Arizona, Inc.*,
570 U.S. 1 (2013).......... 1, 3

*Chevron Corp. v. Donziger*,
833 F.3d 74 (2d Cir. 2016).......... 16

*Elrod v. Burns*,
427 U.S. 347 (1976).......... 15

*Idaho v. Coeur d'Alene Tribe*,
794 F.3d 1039 (9th Cir. 2015) .......... 16

*ITCA. Kobach v. U.S. Election Assistance Comm'n*,
772 F.3d 1183 (10th Cir. 2014), *cert. denied*, 576 U.S. 1055 (2015).......... 3, 5

*League of Women Voters of N.C. v. N.C.*,
769 F.3d 224 (4th Cir. 2014) .......... 15, 17

*LULAC v. Reagan*,
No. 2:17-cv-04102-DGC (D. Ariz. June 18, 2018), ECF No. 37 .......... 4, 5

*Melendres v. Arpaio*,
695 F.3d 990 (9th Cir. 2012) .......... 15

*Nat'l Wildlife Fed'n v. Burlington N. R.R., Inc.*,
23 F.3d 1508 (9th Cir. 1994) .......... 14

*North Carolina State Conference of the NAACP v. Bipartisan Board of Elections & Ethics Enforcement*,
No. 1:16CV1274, 2018 WL 3748172 (M.D.N.C. Aug. 7, 2018).......... 13, 15, 17

*Obama for Am. v. Husted*,
697 F.3d 423 (6th Cir. 2012) ............................................................ 15, 17

*Philip Morris USA Inc. v. Scott*,
561 U.S. 1301 (2010) (Scalia, J., in chambers) ............................................ 16

*Pimentel v. Dreyfus*,
670 F.3d 1096 (9th Cir. 2012) ............................................................ 11

*Project Vote v. Blackwell*,
455 F. Supp. 2d 694 (N.D. Ohio 2006)..................................................... 14

*Purcell v. Gonzalez*,
549 U.S. 1 (2006)......................................................................... 3, 17

*Reynolds v. Sims*,
377 U.S. 533 (1964)....................................................................... 15

*Shell Offshore, Inc. v. Greenpeace, Inc.*,
709 F.3d 1281 (9th Cir. 2013) ............................................................ 11

*United States v. Florida*,
870 F. Supp. 2d 1346 (N.D. Fla. 2012) .................................................. 13, 14

*Wesberry v. Sanders*,
376 U.S. 1 (1964)......................................................................... 15

*Winter v. Nat. Res. Def. Council, Inc.*,
555 U.S. 7 (2008)......................................................................... 11

**STATUTES**

A.R.S. § 16-166(F) ......................................................................... 3

52 U.S.C.
§ 20507(b)(1) ............................................................................. 13
§ 20507(c)(2)(A)........................................................................... 12

H.B. 2243
§ 2........................................................................................ 12
§ 2(A)(10) ................................................................................ 8
§ 2(E) .................................................................................... 8
§ 2(G)-(J) ................................................................................ 8

## I. INTRODUCTION

In its 2022 session, Arizona's legislature enacted two voting laws that unlawfully restrict or outright deny the voting rights of Arizona's voters of color and naturalized voters: House Bill 2492 ("**H.B. 2492**"), and House Bill 2243 ("**H.B. 2243**"). These laws are the latest entries in a nearly two-decade attempt by Arizona officials to subvert voting rights via documentary proof requirements and punishment schemes. This effort has both long- and near-term effects. A number of cases (including this one) already challenge H.B. 2492, which is in many respects Arizona's do-over of its attempt to require "documentary proof of citizenship" ("**DPOC**") that the U.S. Supreme Court rejected nine years ago in *Arizona v. Inter Tribal Council of Arizona, Inc.* ("*ITCA*"), 570 U.S. 1 (2013). H.B. 2492 is part of the long-term effects—because in tacit recognition of infirmities pointed out to the legislature by its own lawyers, coupled with the upcoming November election, Arizona's legislature issued a new bill delaying H.B. 2492's effective date to January 1, 2023. H.B. 2492 is thus not at issue in this motion.

What is at issue is H.B. 2243. The Arizona legislature passed H.B. 2243 in two days flat, and on the last day of the legislative session—by dropping an even harsher version of a previously-vetoed bill into the shell of another. <u>H.B. 2243 is a voter purge bill with sweeping near-term effects on the upcoming November election—targeted precisely at voters of color and naturalized voters—and compels this motion for preliminary relief.</u>

H.B. 2243 creates a framework whereby anyone can, without evidence, accuse a voter of not being a U.S. citizen; whereby county recorders are commanded to engage in a systematic, monthly investigation of citizenship status via a mélange of various databases; and whereby suspected voters are sent cancellation notices, purged from the rolls, and then referred for criminal investigation—unless they are able to provide DPOC within 35 days. If implemented on the General Effective Date of September 24, 2022, H.B. 2243 provides just enough time to purge voters *days* before the November election and to frighten Arizona's voters of color and naturalized voters from registering, including by threat of criminal investigation if they simply are unable to quickly provide DPOC.

The violation of law, and likelihood of success on the merits, is straightforward. The National Voter Registration Act ("**NVRA**") requires Arizona's voter roll laws to be uniform and nondiscriminatory, and <u>unequivocally prohibits</u> systematic removal of voters within 90 days of a primary or general election for Federal office—full stop.

Imminent, irreparable harm is essentially guaranteed. Plaintiff Arizona Asian American Native Hawaiian and Pacific Islander for Equity Coalition ("Plaintiff") is a state-wide, non-profit and non-partisan organization committed to the mission of improving the participation of marginalized communities in Arizona, with a particular focus on expanding representation and increasing civic engagement for 357,000+ Asian Americans, Native Hawaiians, and Pacific Islanders (AANHPIs) in the state. Tiwamangkala Decl. ¶ 2. Plaintiff's work and its constituency especially will be affected by H.B. 2243: as of 2020, over 61% of AAHNPI Arizonans eligible to vote are naturalized U.S. citizens. *Id.* ¶ 9. H.B. 2243 puts these voters and prospective voters, and others, at imminent risk of disenfranchisement, and per black letter law undeniably threatens irreparable harm to them and those that seek to conduct voter registration and mobilization.

By this motion, Plaintiff simply seeks to preserve the status quo, and to protect the right to vote by all citizens in Arizona—whatever their race, country of origin, or path taken to citizenship. And it files this motion because it must: Plaintiff has asked each of the county recorders their position on H.B. 2243, in an effort to avoid this motion. But those positions are not uniform, and shifting—and as many county recorders have themselves noted, a preliminary injunction is necessary to preserve the status quo for all.

Plaintiff respectfully requests that the Court issue a preliminary injunction preventing Arizona from effectuating H.B. 2243 and its imminent voter purge.

## II. BACKGROUND

Arizona has a long history of applying non-uniform voter registration and voting requirements to different voters. Its voter fraud rationale for these laws has been debunked time and again by the courts, and even by Arizona's own high-ranking officials and legislative audits, but the attempts just keep coming. A discussion of this history is key to

understanding Arizona's latest foray into voter suppression, including why this motion is essential, and why any purported public interest Defendants might articulate in effectuating H.B. 2243 now, and hardship in having it enjoined, are meritless.

### A. Arizona's Pre-2022 History of Voter Cancellation Attempts in Violation of the NVRA

In 2004, Arizona adopted Proposition 200, a ballot initiative purportedly designed to "combat voter fraud by requiring voters to present proof of citizenship when they register to vote and to present identification when they vote on election day." *Purcell v. Gonzalez*, 549 U.S. 1, 2 (2006). Proposition 200 amended the state's election code to require county recorders to "reject any application for registration that is not accompanied by satisfactory evidence of United States citizenship." A.R.S. § 16-166(F).

The law was challenged all the way to the Supreme Court, which in 2013 held that Proposition 200's DPOC requirement violated the NVRA. The Supreme Court found that "a state-imposed requirement of evidence of citizenship not required by the Federal Form [the federal mail voter registration form created pursuant to the NVRA] is inconsistent with the NVRA's mandate that States 'accept and use' the Federal form." *ITCA*, 570 U.S. at 15 (quotation and citation omitted). Thus, Arizona's first attempt to circumvent federal law with a DPOC requirement, ostensibly fueled by voter fraud concerns, was rejected. But on its heels, Arizona attempted two workarounds.

First, it tried to change the Federal Form by challenging the Election Assistance Commission's decision to not include DPOC. Then, as now, the purported justification was voter fraud. But in rejecting the challenge, the Tenth Circuit found that Arizona "failed to advance proof that registration fraud in the use of the Federal Form prevented Arizona . . . from enforcing [its] voter qualifications," and thus failed to meet the burden set out by the Supreme Court in *ITCA*. *Kobach v. U.S. Election Assistance Comm'n*, 772 F.3d 1183, 1188, 1196-97 (10th Cir. 2014), *cert. denied*, 576 U.S. 1055 (2015).

Second, Arizona implemented a bifurcated voter registration system: voters who registered with the Federal Form could vote in federal elections, but not in state or local elections; while voters who registered with the Arizona state form, which required DPOC,

could vote in all elections. In essence, Arizona has two voter rolls—one for federal-only elections and one for all elections (federal, state, and local). In 2017, a lawsuit alleged that Arizona's system of treating applicants differently depending on whether they used the state form or the Federal Form was unconstitutional. Arizona acquiesced, and voluntarily entered into a Consent Decree to end that litigation. *See* Makker Decl. Ex. 1, Consent Decree, *LULAC v. Reagan*, No. 2:17-cv-04102-DGC (D. Ariz. June 18, 2018), ECF No. 37 ("Consent Decree"). Under that Consent Decree, which Arizona promised to abide by, (1) Arizona must treat all registrants the same, regardless of whether they use the state or Federal Form, when registering all voters for federal elections; and (2) Arizona state and county officials are required to check the motor vehicles database for U.S. citizenship documentation before limiting voters to federal-only elections. *See id.* at 1-2, 7-16.

### B. The Arizona Legislature Passes H.B. 2492 in March 2022—in Defiance of Court Rulings and Arizona's Own Statements and Consent Decree—and Then Delays Implementation Until 2023

Despite having entered into the Consent Decree only a few short years ago, and the *ITCA* and *Kobach* decisions, the Arizona legislature decided to try again this year.

Relevant here, the most recent voter suppression attempt began with H.B. 2492, first read to the House on January 24, 2022. At its core, H.B. 2492 does the following:

- prevents applicants registering with the Federal Form without DPOC from voting in presidential elections or casting a ballot by mail;
- strips already-registered voters who did not provide DPOC of voting in presidential elections or casting a ballot by mail;
- prevents applicants from registering to vote using either the Federal or state form without providing identifying documentation that establishes proof of location of residence;
- requires applicants registering with the Arizona state form to provide their place of birth—a requirement with no material connection to an applicant's qualifications to register to vote;
- requires that an investigation be initiated should a county recorder decide, based on outdated and unreliable information, that a Federal Form applicant is not a U.S. citizen—without due process to contest any such decision.

*See* Makker Decl. Ex. 2. At the February 22, 2022 hearing of the House Committee on Rules, its staff attorney stated that H.B. 2492 likely presents a preemption issue with the

NVRA and is in conflict with *ITCA*. Makker Decl. ¶ 5, Ex. 3. Chairman Travis Grantham responded that he found it "troubling" that Arizona was required to abide by Supreme Court precedent and that he "strongly rejects" that notion. *Id.* Rather than comport with the law, he expressed his willingness to take the fight back to the Supreme Court. *Id.* Reports indicate that the staff attorney in the Senate provided the same advice to the Senate. Makker Decl. Ex. 4. To zero effect: the law was sent to the Governor anyway.

There were other warnings that the Arizona legislature was willfully disregarding federal law, precedent, and its own sworn promises. *See* Compl. ¶ 50. Nevertheless, on March 30, 2022, Governor Ducey signed H.B. 2492 into law, citing election integrity and voter fraud as justifications. Makker Decl. Ex. 5. Yet neither the legislature nor Governor Ducey have cited a scintilla of evidence that voter fraud occurs in Arizona on a scale that impacts election results, such as the 2020 Presidential election, or threatens election integrity. In fact, a brief recitation of history shows the opposite is true:

- 2014 – Arizona "fail[s] to advance proof that registration fraud in the use of the Federal Form prevented Arizona . . . from enforcing [its] voter qualifications," and thus fails to meet the Supreme Court's *ITCA* burden. *Kobach*, 772 F.3d at 1188.
- 2018 – Arizona officials themselves agree in court that they can "treat State Form applications exactly as they treat Federal Form applications" while still "providing necessary safeguards to deter those who would commit voter registration fraud." Consent Decree at 3.
- 2020 – Governor Ducey rebukes then-President Trump's allegations of voter fraud in Arizona during the 2020 election, stating: "In Arizona, we have some of the strongest election laws in the country, laws that prioritize accountability and clearly lay out procedures for conducting, canvassing, and even contesting the results of an election. We've got ID at the polls. We review EVERY signature (every single one) on early ballots — by hand — unlike other states that use computers. Prohibitions on ballot harvesting. Bipartisan poll observers. Clear deadlines, including no ballots allowed after Election Day." Makker Decl. Ex. 6.
- 2021 – The Arizona legislature finances a partisan-fueled audit of votes cast in Maricopa County during the 2020 election and finds no conclusive evidence of voter fraud. Makker Decl. Ex. 7.
- 2022 – In the debate over H.B. 2492, Arizona Free Enterprise Club, the bill's proponent repeatedly calls for support to "Help Stop Illegals from Voting!"– but never provides any evidence of its claims. Makker Decl. Exs. 8-9.

- 2022 – AG Brnovich and his Election Integrity Unit tell the Arizona Senate that after "hundreds of hours reviewing" allegations and "thorough[] investigat[ion]," many "allegations of dead voters during the 2020 elections" were "absurd," "insufficient and not corroborated." Makker Decl. Ex. 10.

The pattern is obvious. Passing a law to solve a problem that (1) you yourself previously stated you did not have, (2) has been rejected by the courts as having no evidentiary support, and (3) has been found by your own audits and officers to have no evidentiary support, is the quintessence of pretext.

H.B. 2492 was signed into law anyway and had been scheduled to go into effect on September 24, 2022, the general effective date for all bills passed during this most recent session. Makker Decl. Ex. 11. But three weeks later—perhaps because of the backlash—the legislature deferred the law's effective date. On April 22, 2022, Governor Ducey signed S.B. 1638, moving H.B. 2492's effective date to January 1, 2023. *Id.*, Ex. 12.

### C. The Legislature Fails to Pass a Voter Purge Bill, H.B. 2617

What eventually became H.B. 2243 has its origins in H.B. 2617—a bill Governor Ducey vetoed. H.B. 2617 was introduced on January 31, 2022 and, like H.B. 2492, was pushed by the Arizona Free Enterprise Club, on the purported need for "election integrity" and "voter roll maintenance." Makker Decl. ¶ 15, Ex. 13. Relevant here, it provided for two voter roll purge schemes: (1) county recorders would receive from the Secretary of State a monthly list of persons who had been issued a driver's license from another state, and (2) county recorders would engage in a matching process with various databases, including the Systematic Alien Verification For Entitlements ("SAVE") database for voter registrations they "ha[ve] reason to believe are not United States citizens." Makker Decl. Ex. 14. For registered voters who the county recorders deemed not qualified under either scheme, the recorders would send a notice stating that unless the voter provided satisfactory evidence within 90 days, their registration would be canceled. *Id.*

With enough time for stakeholders to understand the ramifications of H.B. 2617—the vague and standardless inquiries, the "anyone-can-accuse" scheme for alleged non-citizens, and the harsh effects of voter cancellation and investigation if one could not

provide enough evidence within the short period of 90 days—the bill took some public fire. Makker Decl. Exs. 15-16. In light of these infirmities, the counties opposed the passage of the bill and urged Governor Ducey to veto it. *Id.*, Ex. 17. He did so on May 27, stating: "Our lawfully registered voters deserve to know that their right to vote will not be disturbed without sufficient due process. This provision leaves our election system vulnerable to bad actors who could seek to falsely allege a voter is not a qualified elector." *Id.*, Ex. 18.

Following that veto, Governor Ducey was heavily criticized by supporters of the bill. And Arizona Free Enterprise Club, the proponent of both bills, said the following:




Makker Decl. Ex. 19. Note the claimed justification for why H.B. 2617 should have been signed: the bill provides 90 days prior to voter-cancellation—plenty of time in the proponents' minds for a voter to confirm they are "eligible." H.B. 2617 *did* in fact provide for a 90-day response period for both (1) voters appearing to not be residents (based on driver's licenses in other states), and (2) voters accused of not being U.S. citizens.

### D. H.B. 2243 is Passed on the Last Day—Altered from H.B. 2617 to Purge Voters of Color and Naturalized Voters Prior to the November Election

Undeterred, the legislature tried again. As introduced on January 18, 2022, H.B. 2243 contained none of the provisions challenged in this case. But it was later used as a shell to pass a harsher form of H.B. 2617. In response to the veto of H.B. 2617, on June 22, 2022, the Senate amended H.B. 2243 to include a modified version of H.B. 2617, which passed swiftly and landed on the Governor's desk on June 24, the last day of the session. As the amendment's sponsor explained, "this amendment is basically what was House Bill

2617, passed out of here, went to the governor's desk, he vetoed it, and this amendment is that bill but addresses the veto letter and the one concern." Makker Decl. ¶ 22, Ex. 20.

But it was worse than that. In actuality, even though it was called identical, H.B. 2243 was amended to treat some allegedly "improper" voters differently from others—and in particular, to treat accused non-citizens far more harshly than accused non-residents (and more harshly than H.B. 2617 would have). What the changes do is reveal H.B. 2243's discriminatory purpose and effects—and the immediacy of the harm it seeks to inflict.

For those accused or "believe[d]" to not be U.S. citizens, or lacking DPOC on file, H.B. 2243's command is harsh, punitive, and immediate. Each month, the county recorder conducts a standardless, systematic inquiry to try to puzzle together a match of a voter's information against sources not designed for such queries, including (i) the Social Security Administration database; (ii) the SAVE database, (iii) the Electronic Verification of Vital Events system; and (iv) "relevant city, town, county, state and federal databases to which the county recorder has access." Makker Decl. Exs. 21-22; H.B. 2243 § 2(G)-(J) (Makker Decl. Ex. 23). Systematically; on a monthly basis; in perpetuity. With no processes or standards to ensure the accuracy of matches, officials are left to their own subjective, arbitrary, and non-uniform opinions. If the recorder purportedly "confirms" (an undefined term) that the accused is not a U.S. citizen, **the accused has a mere 35 days to respond** with "satisfactory" DPOC or their registration is canceled, and they are referred to the county attorney and attorney general for criminal investigation. H.B. 2243 § 2(A)(10).

Meanwhile, for voters accused of being ineligible to vote because they appear to be non-residents, H.B. 2243, like its predecessor bill H.B. 2617, still affords these voters **90 days** to sign a document, attesting (without evidence) to their residency. H.B. 2243 § 2(E). Critically, because of H.B. 2243's September effective date, this means that only *certain* groups get purged before the next election: naturalized voters and voters of color. And no Arizona official even *tried* to offer any justification for that—nor have they to this day.

## III. PROCEDURAL POSTURE REQUIRING THE INSTANT MOTION

On July 22, 2022, Plaintiff sent a formal notice to Defendant Secretary of State

Hobbs, as required under the NVRA, notifying Secretary Hobbs of the numerous NVRA violations arising from the enactment of H.B. 2492 and H.B. 2243. Compl. Appx. 1. To date, Secretary Hobbs has not resolved the violations set forth in the letter, believing that she is required to implement H.B. 2492 and H.B. 2243 as enacted absent any court order.

As noted, H.B. 2243 is anticipated to have immediate impact upon the effective date of September 24, 2022 if even a single county recorder implements it. Accordingly, to ensure that this motion was in fact necessary, after submitting its NVRA notice letter to Secretary Hobbs, Plaintiff reached out to each of the named county recorder-Defendants, asking whether and when, in connection with the passage of H.B. 2243, the county recorder is (1) currently implementing or planning to shortly implement any changes to their procedures or effectuate any new procedures or actions, and/or (2) planning any such changes/new procedures or actions upon the general effective date of bills passed during the 55th Legislature (September 24, 2022). Steinbach Decl. ¶¶ 3-5, 16-17, 19.

As of August 18, 2022, just over a week after the initial outreach, eight county recorders had responded in writing. Of those eight, five said that they believe H.B. 2243 will go into effect in September, upon the general effective date of bills passed during the 55th Legislature, and three had not taken a position on when exactly the law will go into effect. Steinbach Decl. ¶¶ 6-21. But seven who responded in writing stated that they will implement H.B. 2243 upon its effective date unless a preliminary injunction is granted to preserve the status quo prior to that time. Here is just one example, from Graham County:

> If a motion for preliminary injunction seeking to preserve the status quo is filed and granted, Ms. John will follow the court's order. Absent such an order, the challenged law will take effect in September, and Ms. John will follow the law.

Steinbach Decl. ¶ 14; *see also id.* at ¶¶ 10-11, 13, 15, 18, 20.

Plaintiff had also been in touch with Defendant Secretary Hobbs on this issue. And on August 19, 2022, in response to Plaintiff's inquiry, Plaintiff was told the following:

> Because H.B. 2243 does not have a delayed effective date, it is subject to the General Effective Date of September 24, 2022. However, the Secretary's position is that Section 2 of H.B. 2243 is not operative until January 1, 2023 because it amends A.R.S. § 16-165 "as amended by" H.B. 2492, which does not go into effect by its own terms until that

> date. Because H.B. 2243 makes amendments to A.R.S. 16-165 on top of the amendments enacted by H.B. 2492, it is not possible to reverse engineer what the changes would be if the H.B. 2492 changes are not in effect. The Secretary thus believes it is not possible for her office or the counties to operationalize H.B. 2243's amendments to A.R.S. 16-165 until H.B. 2492 is in effect. The Secretary's office has discussed and shared this position with the counties on a coordinating call, but has not yet transmitted any guidance in writing.

Makker Decl. Ex. 24. This, of course, is a different take. And at bottom, it means that the Secretary of State believes, because H.B. 2492 was stayed by the Arizona legislature until January 1, 2023, *the relevant provisions of H.B. 2243 <u>also</u> cannot go into effect until January 1, 2023*, even though the legislature did *not* stay H.B. 2243's effective date.

Of course, there has been no court or other official ruling that the Secretary's position is correct. But in light of that view, and to provide the Court with the most up-to-date information and ensure that this motion was in fact necessary, Plaintiff reached out just this week, one more time, to all of the County Recorders, as well as the Arizona Attorney General, on the issue of H.B. 2243's effective date. The mixed response, unfortunately, guarantees that no clarity can be reached without this motion. <u>Five</u> county recorders changed their position, stating that in light of the Secretary of State's expressed view they now deemed the effective date of H.B. 2243 to be January 1, 2023—but many others simply did not respond to Plaintiff, or change their position. <u>If helpful to the Court, we have prepared a summary chart of the positions, found at Steinbach Decl. Ex. 23.</u>

In light of this mixed response—and the fact that Plaintiff does not have a guarantee from any Defendant that they will not soon implement H.B. 2243 (or flip-flop again)—Plaintiff is compelled to file this motion. As the Secretary of State noted, "[b]ecause H.B. 2243 does not have a delayed effective date, it is subject to the General Effective Date of September 24, 2022." Makker Decl. Ex. 24. And that is so, until there is a Court order stating otherwise or enjoining implementation of H.B. 2243, as per this motion.

Each of the Defendants, of course, is able to file a statement of non-opposition to this motion, accompanied by a relevant declaration, guaranteeing the Court (and Plaintiff) that they will not implement any aspect of H.B. 2243. Plaintiff expects many to do so,

consistent with the statements made to Plaintiff. If so, this motion may ultimately only be directed at the few Defendants who may currently view H.B. 2243's effective date as the Arizona legislature did, and does: September 24, 2022. *Id.* at ¶¶ 27-29, Exs. 25-27.

## IV. LEGAL STANDARD

Plaintiffs seeking a preliminary injunction must establish that (1) they are likely to succeed on the merits, (2) they are likely to suffer irreparable harm absent preliminary relief, (3) the balance of equities tips in their favor, and (4) an injunction would be in the public interest. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Am. Trucking Ass'ns, Inc. v. City of L.A.*, 559 F.3d 1046, 1052 (9th Cir. 2009). The Ninth Circuit uses a "sliding scale" approach, under which "a stronger showing of one element may offset a weaker showing of another." *Pimentel v. Dreyfus*, 670 F.3d 1096, 1105 (9th Cir. 2012) (citation omitted). Thus, if Plaintiff establishes irreparable harm and the "balance of hardships tips *sharply* in [its] favor," it need "only show that there are 'serious questions going to the merits.'" *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013) (citation omitted); *see also All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011) ("[A] stronger showing of irreparable harm to plaintiff might offset a lesser showing of likelihood of success on the merits.").

## V. DISCUSSION

### A. Plaintiff Is Likely to Succeed on The Merits

Plaintiff's complaint raises numerous claims against both H.B. 2492 and H.B. 2243. For this motion, Plaintiff focuses on two core claims against H.B. 2243: (1) violation of Section 8 of the NVRA by systematically removing voters from voter rolls within 90 days of a federal election; and (2) violation of the mandate in Section 8 of the NVRA regarding uniformity and nondiscrimination in any voter roll maintenance program.

#### 1. H.B. 2243 Violates Section 8 of the NVRA by Systematically Purging Voters Within 90 days of a Federal Election

Section 8 of the NVRA addresses how states administer their systems for registering voters for federal elections and how they maintain voter registration lists for federal elections. It requires states to "complete, not later than 90 days prior to the date of a

primary or general election for Federal office, any program the purpose of which is to systematically remove the names or ineligible voters from the official lists of eligible voters." 52 U.S.C. § 20507(c)(2)(A).

H.B. 2243 does exactly what the NVRA prohibits: systematically removes voters within 90 days of a federal election. As discussed *supra*, Section 2 of H.B. 2243 requires county recorders to cancel an individual's voter registration if they "confirm" information that an individual is not a U.S. citizen and that individual does not provide DPOC within 35 days. *See* H.B. 2243 § 2. County recorders obtain such information each month from, *inter alia*, the Secretary of State's comparison of registered voters to the driver's license database, the comparison of properly registered voters who the county recorder "believe[s]" are not U.S. citizens to the SAVE database, the comparison of properly registered voters who have not provided DPOC to the SAVE database, and the comparison between properly registered voters who do not have DPOC on file to the myriad other government databases. *See id.* If such voters are matched to records indicating that they may not be U.S. citizens, H.B. 2243 requires county recorders to send a cancellation notice and cancel the registration if DPOC is not provided within 35 days. *See id.* H.B. 2243 requires such voter roll maintenance each month, without exception. *See id.*

This is just the sort of systematic program rejected by other courts. For example, in *Arcia v. Florida Secretary of State*, 772 F.3d 1335 (11th Cir. 2014), the Florida Secretary of State implemented two programs intended to remove the names of ineligible voters from the State's voter rolls prior to, and within 90 days of, the 2012 primary and general elections. *Id.* at 1339. One program utilized records from the Florida department of motor vehicles for suggestions of voters who may be non-citizens, *id.*, and the other program relied on the SAVE database "to compare the voter rolls with other state and federal databases." *Id.* at 1344. Reversing the district court's grant of summary judgment, the court concluded that the programs violated the NVRA's prohibition on systematic removal of ineligible voters because they "did not rely upon individualized information or investigation to determine which names from the voter registry to remove," and instead

was a "data-matching process" that was "followed by the mailing of notices." *Id.*

Similarly, in *North Carolina State Conference of the NAACP v. Bipartisan Board of Elections & Ethics Enforcement*, No. 1:16CV1274, 2018 WL 3748172, at *11 (M.D.N.C. Aug. 7, 2018), the court permanently enjoined counties from canceling voter registrations for changes of residency on the basis of mailings returned as undeliverable. The court found that the defendants' systematic process of removal (returned mail indicating failure of residence—akin to a database entry indicating lack of citizenship) did not account for individualized circumstances when establishing the basis for removal and provided inadequate opportunity for the voter to correct the record before the election. The court was particularly concerned that the statute shifted the burden to the voter "to prove their eligibility to vote within just days or weeks before the fall election." *Id.* at *7.

H.B. 2243 imposes systematic monthly checks of statewide or county voter registration databases against various governmental databases for proof of citizenship, including the SAVE database. *See Arcia*, 772 F.3d at 1344 (agreeing that program to remove non-citizens by checking names against the SAVE database was systematic and noting that "it is telling that the database that Secretary Detzner used before the general election—SAVE—stands for *Systematic* Alien Verification for Entitlements"). This automatic, methodological sweep of registration databases is precisely the type of "program the purpose of which is to systematically remove the names of ineligible voters from the official lists of eligible voters" that § 20507(c)(2)(A) prohibits.

### 2. H.B. 2243 Violates the Uniformity and Non-discrimination Mandate of Section 8 of the NVRA

Section 8(b) of the NVRA requires that "[a]ny State program or activity to protect the integrity of the electoral process by ensuring the maintenance of an accurate and current voter registration roll for elections for Federal office" must be "uniform, nondiscriminatory, and in compliance with the Voting Rights Act of 1965." 52 U.S.C. § 20507(b)(1). These requirements are violated where a voter-roll maintenance program singles out one group of voters for different treatment. *See United States v. Florida*, 870 F. Supp. 2d 1346, 1350 (N.D. Fla. 2012) (finding program that attempted to identify non-

citizens using Department of Highway Safety and Motor Vehicles database "probably ran afoul" of the NVRA's uniform and nondiscriminatory provision because it was "likely that the properly registered citizens who would be required to respond and provide documentation would be primarily newly naturalized citizens").

H.B. 2243's text and history leave no question that the statute violates the uniformity and nondiscrimination commands of the NVRA. For those accused of lacking citizenship, H.B. 2243 (1) allows an anyone-can-accuse, "reason to believe" inquiry and mandates systematic database matching (not applicable for accused non-residents); (2) demands almost immediate production of DPOC (not just a signature, as for accused non-residents); (3) results in full voter cancellation (not just being placed in inactive status, as for accused non-residents); and (4) requires referral for criminal investigation if there is no adequate response, with proof (unlike no referral, for accused non-residents).

These four differences are glaring on their own. But the fifth—and most egregious—is that only voters whose citizenship is questioned are subject to the shortened 35-day notice period, and will be purged before this election if they cannot provide DPOC within that time. This is bald non-uniformity, bald discrimination. *See Florida*, 870 F. Supp. 2d at 1350; *Project Vote v. Blackwell*, 455 F. Supp. 2d 694, 703 (N.D. Ohio 2006). The genesis of H.B. 2243 in H.B. 2617, and the change in treatment so as to purge only specified classes of voters before November, shows a clear violation of the NVRA.

### B. Irreparable Harm Is Guaranteed

The Ninth Circuit requires a plaintiff to show only a "threat of future harm," and does not "require that future harm be shown with certainty before an injunction may issue." *Nat'l Wildlife Fed'n v. Burlington N. R.R., Inc.*, 23 F.3d 1508, 1512 & n.8 (9th Cir. 1994). Here, that standard is far surpassed: absent preliminary relief, irreparable harm is certain.

H.B. 2243 puts Arizona's registered and prospective voters at imminent risk of disenfranchisement, which undeniably constitutes irreparable harm to them and those that seek to register and mobilize voters. The Supreme Court has long held that voting is among the most fundamental rights granted to United States citizens: "No right is more precious

in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live. Other rights, even the most basic, are illusory if the right to vote is undermined." *Wesberry v. Sanders*, 376 U.S. 1, 17 (1964); *see also Reynolds v. Sims*, 377 U.S. 533, 562, 565 (1964) ("[A]ny alleged infringement of the right of citizens to vote must be carefully and meticulously scrutinized."). And "[i]t is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). "When constitutional rights are threatened or impaired, irreparable injury is presumed." *Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012).

The November election is mere months away. H.B. 2243's September 24, 2022 effective date and the 35-day notice-before-cancellation period is such that, for voters who miss the window—whether because their mailed notice was lost or was not in their primary language, they were unable to gather DPOC in that short window, or for any other reason—there is no going back. Once an election occurs, "there can be no do-over and no redress." *League of Women Voters of N.C. v. N.C.* ("*LWV NC*"), 769 F.3d 224, 247 (4th Cir. 2014). Nor can community engagement and registration groups like Plaintiff go back and civically engage or re-register voters for that election (especially those who may have shied away out of fear of criminal investigation and failure to be able to garner the "proof" demanded by Arizona). *See, e.g.*, *id.* (affirming grant of preliminary injunction on provisions eliminating same-day registration and out-of-precinct voter challenges, on complaint brought by organizational plaintiff claiming provisions would directly impair the organizational plaintiffs' mission of civic engagement); *LWV NC*, No. 1:13-cv-00660-TDS-JEP (Aug. 12, 2013), ECF No. 1 (Complaint) ¶ 9; *N.C. State Conf. of NAACP*, 2018 WL 3748172, at *11 (granting permanent injunction on conduct that "would necessarily cause Plaintiffs NC NAACP and Moore County NAACP to divert more of their resources to, once again, challenging this unlawful conduct"); Tiwamangkala Decl. ¶¶ 8, 11-12, 14-16. And of course, by then the voter registration deadline for the November 2022 elections

will have passed, even if purged voters, *sua sponte*, attempted to re-register.

The removal of registered voters from the voter rolls and their inability to participate in the November 8, 2022 election, and the reduction in those willing to register—all in spite of Plaintiff's efforts, *see* Tiwamangkala Decl. ¶¶ 12-16—cannot be compensated by an action at law for money damages. Further, any remedy that requires delay until the likely conclusion of this litigation will be inadequate. Such a delay will certainly result in many Arizonans being removed from voter rolls within days of the November 2022 election. This is all irreparable harm of the precise sort that warrants preliminary relief.

Were more needed, Plaintiff will also be irreparably injured financially—because it will need to expend additional resources to educate voters about H.B. 2243's requirements, its investigation and prosecution mechanisms, their rights under the law, and to counteract the chilling effect H.B. 2243 will have on its would-be voter-constituents. Tiwamangkala Decl. ¶¶ 12-16. In this context, these financial harms are also irreparable. "If expenditures cannot be recouped, the resulting loss may be irreparable." *Philip Morris USA Inc. v. Scott*, 561 U.S. 1301, 1304 (2010) (Scalia, J., in chambers); *Chevron Corp. v. Donziger*, 833 F.3d 74, 142-43 (2d Cir. 2016); *Idaho v. Coeur d'Alene Tribe*, 794 F.3d 1039, 1046 (9th Cir. 2015) (recognizing that harm was irreparable where a tribe's "sovereign immunity likely would bar the State from recovering monetary damages incurred during the course" of litigation due to tribe's alleged violations of law). Here, of course, Plaintiff has no avenue to recoup from Arizona the expenses it will incur in seeking to educate and mobilize its constituents. Thus, Plaintiff's financial injury is also irreparable.

### C. The Remaining Preliminary Injunction Factors Strongly Support Preliminary Relief

The final two factors, the public interest and the balance of equities, also strongly favor preliminary relief. As discussed, Plaintiff and the communities it serves stand to suffer significant, irreparable harm from H.B. 2243's disenfranchisement scheme. *See supra* Section V.B. Plaintiff will not suffer these harms alone. Other communities of color, and the groups that serve them, will all similarly suffer irreparable harm. Furthermore,

"[b]y definition, the public interest favors permitting as many qualified voters to vote as possible." *LWV NC*, 769 F.3d at 247 (internal quotation marks and alterations omitted). Courts accordingly recognize that, with respect to voter purges and disenfranchisement, there is an extremely strong public interest served by an injunction. *See, e.g.*, *Obama for Am.*, 697 F.3d at 436-37 (finding public interest was served by enjoining statute that prevented non-military Ohio voters from voting early); *N.C. State Conf. of NAACP*, 2018 WL 3748172, at *11 (finding public interest favored an injunction, consistent with the NVRA, "to reduce the risk that a voter's registration might be erroneously canceled"). Moreover, the Supreme Court's *Purcell* principle counsels strongly against permitting actions—like H.B. 2243's voter purge—that seriously disrupt voter registration and strip the ability to vote (in many cases unknowingly) just before an election. 549 U.S. at 4.

On the other hand, the harm to the state's interests, if any, will be marginal at best. The voter fraud rationale for H.B. 2243 is pretextual and there is no legitimate harm Defendants can identify. *See supra* Section II.B. And no one has even tried, or hinted, at any justification for the *imminent* purge of a particular group of voters before the November election. Indeed, many of the county recorders stated that enjoining H.B. 2243 would preserve the status quo for the November election. *See, e.g.*, Steinbach Decl. ¶ 11 (email from counsel for Maricopa county recorder: "I suspect that there will be a motion for preliminary injunction filed, which if granted would preserve the status quo."); *id.* at ¶¶ 10, 13-15 (similar statements from other counties). There is no legitimate viable public interest for H.B. 2243 upending the status quo this close to an election.

## VI. CONCLUSION

Plaintiff respectfully requests that the Court grant a preliminary injunction prohibiting Defendants, and each of them, from implementing H.B. 2243 in any respect, including from sending notices of cancellation or removing or purging voters' registrations, pending final judgment in this lawsuit.

///

///

Dated: August 25, 2022

Respectfully submitted,

By *__/s/ Sadik Huseny__*

LATHAM & WATKINS LLP
Sadik Huseny (*pro hac vice*)
Amit Makker (*pro hac vice*)
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-6538
Telephone: (415) 391-0600
Facsimile: (415) 395-8095

ASIAN AMERICANS ADVANCING JUSTICE-AAJC
Niyati Shah (*pro hac vice*)
Terry Ao Minnis (*pro hac vice forthcoming*)
1620 L Street NW, Suite 1050
Washington, DC 20036
Telephone: (202) 296-2300
Facsimile: (202) 296-2318

SPENCER FANE
Andrew M. Federhar (No. 006567)
2415 East Camelback Road, Suite 600
Phoenix, AZ 85016
Telephone: (602) 333-5430
Facsimile: (602) 333-5431

*Attorneys for Plaintiff*