**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

EXHIBIT INDEX

| Exhibit | Document Description |
|---|---|
| Exhibit 1 | June 18, 2018 Consent Decree from *League of United Latin American Citizens of Arizona v. Reagan*, No. 2:17-cv-04102 (D. Ariz., Jun. 18, 2018) (Dkt. No. 37) |
| Exhibit 2 | Arizona House Bill 2492, Chapter 99 of the Session Laws from the Fifty-fifth Legislature Second Regular Session 2022 |
| Exhibit 3 | Video of the February 22, 2022 meeting of the Arizona House Committee on Rules, available at https://www.azleg.gov/videoplayer/?clientID=6361162879&eventID=2022021121 |
| Exhibit 4 | March 26, 2022 article from the Daily Independent titled "GOP lawmakers seek to reopen legal voting issue," available at https://www.yourvalley.net/stories/gop-lawmakers-seek-to-reopen-legal-voting-issue,293949 |
| Exhibit 5 | Governor Ducey's March 30, 2022 signing letter regarding H.B. 2492, available at https://azgovernor.gov/sites/default/files/hb2492_signing_letter.pdf |
| Exhibit 6 | Article from CNN dated December 1, 2020 titled "How one Trump-loving governor totally shut down the President's voter fraud claims," available at https://www.cnn.com/2020/12/01/politics/doug-ducey-donald-trump-arizona-voter-fraud-claims/index.html |
| Exhibit 7 | September 23, 2021 article from the Arizona Mirror titled "Arizona 'audit' finds Biden won (by more votes) and no evidence of fraud," available at |

| | |
|---|---|
| | https://www.azmirror.com/2021/09/23/arizona-audit-finds-biden-won-by-more-votes-and-no-evidence-of-fraud/ |
| Exhibit 8 | January 25, 2022 post from the Arizona Free Enterprise Club website titled "The Proliferation of the 'Federal Only Voter' List: How Arizona Ended up with 11,600 Voters in 2020 Who Have Never Proven Their Citizenship," available at https://azfree.org/blog/2022/01/25/the-proliferation-of-the-federal-only-voter-list-how-arizona-ended-up-with-11600-voters-in-2020-who-have-never-proven-their-citizenship/ |
| Exhibit 9 | February 8, 2022 post from the Arizona Free Enterprise Club website titled "How More Illegals Started Voting in AZ Elections and How House Bill 2492 Is Going to Fix It," available at https://azfree.org/blog/2022/02/08/how-more-illegals-started-voting-in-az-elections-and-how-house-bill-2492-is-going-to-fix-it/ |
| Exhibit 10 | August 1, 2022 letter from Arizona Attorney General Mark Brnovich to Karen Fann, President of the Arizona State Senate with the subject line "RE: Status of Deceased Voter Allegations – November 3, 2020 General Election," available at https://www.azag.gov/sites/default/files/2022-08/Letter%20to%20Fann%20-%20EIU%20Update%20080122.pdf |
| Exhibit 11 | Listing of General Effective Dates from the Arizona State Legislature website, indicating that the general effective date for all bills passed during Arizona's 55th legislative session is September 24, 2022, available at https://www.azleg.gov/general-effective-dates/ |
| Exhibit 12 | Arizona Senate Bill 1638, Chapter 174 of the Session Laws from the Fifty-fifth Legislature Second Regular Session 2022 |
| Exhibit 13 | Video of the February 9, 2022 meeting of the Arizona House Committee on Government & Elections, available at |

| | |
|---|---|
| | https://www.azleg.gov/videoplayer/?clientID=6361162879&eventID=2022021045 |
| Exhibit 14 | Senate Engrossed Arizona House Bill 2617 |
| Exhibit 15 | July 14, 2022 article from the Arizona Mirror titled "Voting advocates fear new law could disenfranchise some naturalized citizens," available at https://azmirror.com/2022/07/14/voting-advocates-fear-new-law-could-disenfranchise-some-naturalized-citizens/ |
| Exhibit 16 | March 30, 2022 article from the Phoenix New Times titled "'Extreme' Arizona Elections Bills Inching Closer to Law," available at https://www.phoenixnewtimes.com/news/extreme-arizona-elections-bills-inching-closer-to-law-13323436 |
| Exhibit 17 | May 29, 2022 article from the Daily Independent titled "Scottsdale lawmaker calls election bill veto 'shocking'," available at https://yourvalley.net/stories/governor-vetoes-elections-bill-sponsored-by-scottsdale-gop-lawmaker,305404 |
| Exhibit 18 | Governor Ducey's May 27, 2022 letter regarding his veto of H.B. 2617, available at https://www.azleg.gov/govlettr/55leg/2r/hb2617.pdf |
| Exhibit 19 | Screenshot of tweets dated May 27, 2022 by the Arizona Free Enterprise Club Twitter account (@azfec) |
| Exhibit 20 | Video of the June 22, 2022 floor session of the Arizona Senate, available at https://www.azleg.gov/videoplayer/?eventID=2022061052&startStreamAt=2847 |
| Exhibit 21 | U.S. House of Representatives, Committee on House Administration, Subcommittee on Elections, Report on Voting in America: Ensuring Free and Fair Access to the Ballot (July 2021), available at |

| | |
|---|---|
| | https://cha.house.gov/sites/democrats.cha.house.gov/files/2021_Voting%20in%20America_v5_web.pdf |
| Exhibit 22 | Politifact article dated October 13, 2013, evaluating the League of Women Voters of Florida's statement that "The U.S. Department of Homeland Security warned that the SAVE 'database is not a foolproof means of verifying (citizenship on) the voter rolls'" as "True," available at https://www.politifact.com/factchecks/2013/oct/30/league-women-voters-florida/league-women-voters-says-homeland-security-warned-/ |
| Exhibit 23 | Arizona House Bill 2243, Chapter 370 of the Session Laws from the Fifty-fifth Legislature Second Regular Session 2022 |
| Exhibit 24 | August 19, 2022 email from Bo Dul, counsel for Defendant Secretary of State Katie Hobbs in this action, responding to Amit Makker's August 18, 2022 email |
| Exhibit 25 | Listing of the Table of Sections Affected for the 55th Legislature 2nd Regular (2022) from the Arizona Legislative Council, available at https://www.azleg.gov/alisPDFs/council/TOSA_55th_2nd_Regular.pdf |
| Exhibit 26 | Listing of the Arizona State Senate Amended Fact Sheet for H.B. 2243, dated June 22, 2022, available at https://www.azleg.gov/legtext/55leg/2R/summary/S.2243GOV_ASPASSEDCOW.pdf |
| Exhibit 27 | Listing of 2022 delayed effective dates for session laws from the Arizona Legislative Council, available at https://www.azleg.gov/alisPDFs/council/2022_Delayed_effective_dates.pdf |
| Exhibit 28 | The B05003D data table, "Sex by Age by Nativity and Citizenship Status (Asian Alone)," filtered to Arizona, downloaded from data.census.gov |

| | |
|---|---|
| Exhibit 29 | The B05003E data table, "Sex by Age by Nativity and Citizenship Status (Native Hawaiian and Other Pacific Islander Alone)," filtered to Arizona, downloaded from data.census.gov |

# Exhibit 1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

League of United Latin American Citizens of Arizona; Arizona Students' Association,

Plaintiffs,

v.

Michele Reagan, in her official capacity as Secretary of State of Arizona; Adrian Fontes, in his official capacity as Maricopa County Recorder,

Defendants.

No. CV17-4102-PHX DGC

**CONSENT DECREE**

Before the Court is the Joint Motion Requesting Entry of Consent Decree, filed by Plaintiff League of United Latin American Citizens of Arizona ("LULAC-Arizona"), Plaintiff Arizona Students' Association ("ASA"), Defendant Michele Reagan, in her official capacity as Secretary of State of Arizona (the "Secretary"), and Defendant Adrian Fontes, in his official capacity as Maricopa County Recorder ("Recorder Fontes"). Doc. 36. All Plaintiffs and Defendants shall hereafter be referred to as the "Parties."

On November 7, 2017, LULAC-Arizona and ASA initiated this action against the Secretary and Recorder Fontes. The complaint alleged that Arizona's dual voter registration policies violate the First and Fourteenth Amendments to the United States Constitution. Specifically, LULAC-Arizona and ASA alleged that Arizona treats voter

Case 2:17-cv-04102-DGC Document 37 Filed 06/18/18 Page 2 of 16

registration applicants differently depending on whether they use Arizona's state registration form (the "State Form") or the national registration form (the "Federal Form"). At the time the lawsuit was filed, fourteen of Arizona's County Recorders rejected State Form applications submitted without valid documentary proof of citizenship ("DPOC"). Federal law required the County Recorders to accept Federal Form applications, even when they are submitted without DPOC. The Motor Vehicles Department ("MVD") Proxy Table was then electronically checked through an automated process to determine whether the Federal Form applicants had a valid driver's license, which indicates that DPOC is supposed to be on file with the MVD. Those with DPOC on file are eligible to vote in both state and federal elections ("Full Ballot Voter"). Those who did not have DPOC on file with the MVD were only able to vote in federal elections ("Fed Only Voter").

As a result, whether one who does not present valid DPOC is registered to vote in federal elections is entirely dependent on which form the applicant uses to register. Those using the Federal Form but not providing DPOC, are registered to vote in federal elections; and, depending on the results of the Secretary's automated review of the MVD database, may be registered to vote in state elections as well. But those using the State Form, and not providing valid DPOC, are not registered to vote in any elections because the application is rejected in its entirety. LULAC-Arizona and ASA alleged that this dual voter registration process violated the First and Fourteenth Amendments.

The Secretary denies that Arizona's voter registration policies violate the First and Fourteenth Amendments or are otherwise illegal under state or federal law. The Secretary asserts that Federal and State Form applicants are not similarly situated for equal protection purposes. The Secretary asserts that Arizona is constitutionally permitted to require those applying to register to vote using the State Form to personally provide DPOC at the time that they submit their State Form. The Secretary further asserts that there is no constitutional or statutory requirement that Arizona election officials register applicants for federal elections when they have chosen to use the State Form to register to vote rather than the Federal Form.

Nevertheless, the Secretary and Recorder Fontes desire to make it as easy possible for Arizona's citizens to register to vote, while remaining consistent with Arizona and federal law and also providing necessary safeguards to deter those who would commit voter registration fraud. Having reviewed the applicable law, the Secretary and Recorder Fontes have concluded that current technology allows the Secretary, Recorder Fontes, and the other Arizona County Recorders to treat State Form applications exactly as they treat Federal Form applications, and that because of current technology such treatment is consistent with the provisions of Arizona law, including the requirements of Proposition 200, codified at A.R.S. §§ 16-166(F) and 16-152(A)(23). The Secretary and Recorder Fontes agree that treating Federal Form and State Form applications the same will make it easier for Arizona's citizens to register to vote, while also providing important safeguards to prevent unlawful voter registration. Accordingly, on February 8, 2018, the Secretary and Recorder Fontes through their counsel notified counsel for LULAC-Arizona and ASA of their desire to enter into an agreement that will resolve the underlying litigation and also benefit Arizona's citizens.

The Parties have negotiated in good faith and agree to the entry of this Consent Decree as an appropriate resolution. Accordingly, the Parties stipulate and agree as follows:

**PRELIMINARY RECITALS**

1. LULAC-Arizona is the Arizona-based branch of the oldest and largest national Latino civil rights organization. LULAC is a non-profit membership organization with a presence in most of the fifty states. Founded in 1929, it works to advance the economic condition, educational attainment, political influence, health and civil rights, including voting rights, of the Hispanic population of the United States.

2. ASA is a student-led, non-partisan membership organization created to represent the collective interest of the over 140,000 university students and over 400,000 community college students in Arizona. ASA advocates at the local, state, and national levels for the interests of students. As a part of its mission, ASA encourages students throughout Arizona to register to vote through voter registration activity.

3. Michele Reagan is the Arizona Secretary of State. The Secretary of State is responsible for supervising voter registration throughout the state and providing binding regulations and guidelines for voter registration. A.R.S. § 16-142. Secretary Reagan was sued in her official capacity only.

4. Adrian Fontes is the Maricopa County Recorder, an elected countywide officer. Recorder Fontes is responsible for conducting voter registration in Maricopa County. A.R.S. §§ 16-131, -134. Recorder Fontes was sued in his official capacity only.

5. This action was brought by LULAC-Arizona and ASA to vindicate First and Fourteenth Amendment rights relating to voter registration.

6. Arizona's practice of treating Federal Form and State Form applications differently, described above, arose from past Arizona election officials' understanding of the effect of Proposition 200, which was passed by Arizona's voters in 2004 and codified at A.R.S. §§ 16-166(F), 16-152(A)(23), in conjunction with the technology available at the time. Since the passage of Prop. 200 in 2004, a new statewide voter registration database has been implemented and provides additional tools to election officials.

7. Arizona's voter registration technology, including its voter registration database, now allows DPOC already on file with the MVD database to be associated near-instantaneously with voter registration applications submitted without DPOC, irrespective of whether the applications are State Forms or Federal Forms.

8. The Secretary denies that prior practices, challenged in this lawsuit, were unlawful. By agreeing to this Consent Decree, the Secretary and Recorder Fontes seek to serve Arizona's citizens by (1) continuing to comply with Arizona law while (2) making the voter registration process using the State Form easier.

## DEFINITIONS

1. "ADOT" means the Arizona Department of Transportation, which is established pursuant to A.R.S. § 28-331. It has the responsibility to "provide for an integrated and balanced state transportation system." The Arizona Motor Vehicles Division is a division of ADOT. A.R.S. § 28-332(C).

2. "AHCCCS" means the Arizona Health Care Cost Containment System,

Case 2:17-cv-04102-DGC Document 37 Filed 06/18/18 Page 5 of 26

which is established pursuant to A.R.S. § 36-2902. AHCCCS is Arizona's Medicaid agency that offers health care programs to serve Arizona residents.

3. "Applicant" means an individual who has submitted an application to register to vote in the State of Arizona.

4. "AVID Database" means the voter registration database, currently being developed for the state of Arizona and intended to replace the current Database. The AVID Database is projected to be operational sometime in 2019 or early 2020, but shall be operational no later than July 1, 2020 except as provided in subparagraph (a), below.

(a) The date of July 1, 2020, contemplated for the operational function of the AVID Database, is contingent on the vendor with whom the Secretary has contracted to develop AVID fulfilling its obligations to have AVID operational in 2019 or early 2020 at the latest. Should the vendor be unable to meet this contingency, or should the implementation of the AVID Database otherwise be delayed, the Secretary shall notify the Court and the Parties to this Consent Decree, in writing, and shall indicate in writing the date by which the vendor believes that AVID will be operational. Plaintiffs retain the right to seek a remedy from the Court to enforce this agreement if the implementation of the AVID database is unduly delayed.

(b) The provisions in this consent decree that apply to the AVID database will also apply to any future voter registration system adopted by the Secretary of State's office.

5. "County Recorder" means the County Recorder of each of Arizona's fifteen counties, and includes all county election officials working in or in conjunction with their offices.

6. "Database" means the existing electronic storage system developed and administered by the Secretary that contains the official voter registration record for every voter in the state. *See* A.R.S. § 16-168(J).

7. "DES" means the Arizona Department of Economic Security, which is established pursuant to A.R.S. § 41-1952.

8. "Designated voter registration agencies" are agencies that are required to

provide voter registration services pursuant to the National Voter Registration Act.

9. "DHS" means the Arizona Department of Health Services, which is established pursuant to A.R.S. § 36-102.

10. "DPOC" means documentary proof of citizenship, and is limited to the forms of satisfactory evidence of citizenship listed in A.R.S. § 16-166(F).

11. "F-type License" means the designation that the MVD uses in its database to distinguish Arizona driver's license holders who, at the time that their driver's licenses were issued, were presumed by MVD to not be United States citizens.

12. "Fed Only Voter" means an individual who is registered to vote solely in Arizona elections for federal office.

13. "Federal Form" means the National Mail Voter Registration Form, provided by the U.S. Elections Assistance Commission and used to register to vote in elections for federal office, as well as the Federal Write-in Absentee Ballot and Federal Post Card Application as those terms are used in 52 U.S.C. §§ 20302 and 20303.

14. "Federal Office" means the office of President or Vice President; or of Senator or Representative in, or Delegate or Resident Commissioner to, the United States Congress. 52 U.S.C. § 20502(2).

15. "Full Ballot Voter" means an individual who is registered to vote in Arizona elections for federal, state, and local office.

16. "Guidance" means formal guidance on voter registration procedures that the Secretary of State will provide to the County Recorders pursuant to her role as chief election official responsible for prescribing uniform procedures for voting. *See* A.R.S. § 16-142. The Secretary will provide Plaintiffs' counsel with copies of her Guidance before it is sent to the County Recorders.

17. "MVD" means the Arizona Motor Vehicles Division.

18. "MVD database" means the electronic storage system developed and administered by the Arizona Motor Vehicle Department.

19. "MVD Proxy Table" means the MVD data provided to the Secretary of State that includes the nightly updates of MVD transactions that occurred in the past

twenty-four hours that MVD sends to the Secretary in batch form.

20. "Procedures Manual" means the State of Arizona Elections Procedures Manual, which provides the rules related to voting and the conduct of elections. A.R.S. § 16-452. The Secretary is required to develop the Procedures Manual in conjunction with the fifteen County Recorders. *Id*. The Procedures Manual has the force of law. A.R.S. § 16-452(C). The Procedures Manual, 2018 Edition, has been drafted by the Secretary and submitted to the Governor and Attorney General as required by law for their review. *Id*.

21. "Protected Voter Registration" means the program to ensure anonymity to survivors of stalking, domestic violence, and sexual assault through the Address Confidentiality Program provided by A.R.S. § 41-161, et seq., and certain other individuals pursuant to A.R.S. § 16-153.

22. "Secretary" means the Arizona Secretary of State and her office, as well as successors in office.

23. "State Form" means the options for voter registration created and provided by the State of Arizona and its agencies, including but not limited to the online registration available through Service Arizona, the paper application available on the Secretary of State's website, the paper application available at all County Recorder offices, and the Protected Voter Registration process.

24. "State Office" means any elected statewide, county-wide, or municipal public office, other than a Federal Office, for which a voter registered in the State of Arizona is eligible to vote.

**ORDER**

Accordingly, the Parties having freely given their consent, and the terms of the Consent Decree being fair, reasonable, and consistent with the requirements of state and federal law,

**IT IS ORDERED** as follows:

1. The Joint Motion for Approval of Consent Judgment (Doc. 36) is **granted.**

2. **The Procedures Manual.** The Parties are aware that the draft Procedures Manual, 2018 Edition has been submitted by the Secretary to Arizona's Governor

Case 2:17-cv-04102-DGC Document 37 Filed 06/18/18 Page 8 of 16

and Attorney General for their review as required by statute. *See* A.R.S. § 16-452(B). Within thirty days after entry of this Consent Decree, the Secretary shall revise the Procedures Manual to incorporate the terms of this Consent Decree ("Procedures Manual Revisions") and send the Procedures Manual Revisions, together with the Secretary's recommendation of approval, to the Governor and Attorney General for their review, *see* A.R.S. § 16-452(B), and also to Plaintiffs' counsel. If Plaintiffs determine that the Procedures Manual Revisions do not comply with this Consent Decree, Plaintiffs may seek review by this Court through the Court's procedures for motions. If the Governor and Attorney General do not approve the Procedures Manual Revisions or request modifications, the Secretary will send the Attorney General and/or Governor's rejections or proposed modifications to Plaintiffs' counsel. If those rejections or proposed modifications are in any respect inconsistent with this Consent Decree, Plaintiffs may use any available legal remedies to secure compliance with this Consent Decree.

2. **State Form Applications Submitted Without DPOC.** Within thirty days after entry of this Consent Decree, the Secretary shall, in writing:

a. provide guidance to the County Recorders to accept State Form applications submitted without DPOC;

b. provide guidance to the County Recorders to enter all such applications in the Database (or, in the case of Maricopa County and Pima County, to enter all such applications in their county voter registration databases and transmit such entries to the Database);

c. provide guidance to the County Recorders to immediately register the applicants for federal elections, provided the applicant is otherwise qualified and the voter registration form is sufficiently complete; and

d. check all State Form applications submitted without DPOC against the MVD database Proxy Table, via the automated processes in the

Database, to determine whether the MVD has DPOC on file for the applicants. If DPOC is located, the Secretary shall promptly notify the applicable County Recorder via the automated processes in the Database that the State Form applicant has DPOC on file with the MVD and so must be made a Full Ballot Voter via the automated process in the Database.

i. if the Secretary's check performed by the automated processes in the Database against the MVD database Proxy Table indicates that a State Form applicant holds an F-Type License, the Secretary shall promptly notify the applicable County Recorder of that fact via the automated processes of the Database. The automated processes of the Database will also flag this issue so that the County Recorder will know to change that applicant's voter registration status to "not eligible." The Secretary shall provide guidance to the County Recorders that the County Recorders shall notify the applicant by U.S. Mail within ten business days after receiving notice via the automated process in the database, according to information on file with the MVD database, that the applicant holds an F-Type License indicating non-citizenship and so will not be registered to vote. The notification from the County Recorder shall also inform the applicant that the applicant can provide valid DPOC to the County Recorder in order to become a Full Ballot Voter. The notification will be accompanied by the form described in Paragraph 3 (the "DPOC Submission Form"). The applicant may submit DPOC to the County Recorder through the process described in Paragraph 3 to become a Full Ballot Voter.

ii. if the Secretary's check via the automated features of the Database determines that a State Form applicant does not hold an F-Type License, but also does not have DPOC on file with the MVD, the Secretary shall promptly notify the applicable County Recorder of that result via the automated processes of the Database. The County Recorder shall notify these applicants by U.S. Mail within ten business days after receiving notice from the Secretary that (1) the County Recorder does not have the requisite DPOC to process their application; (2) they must submit DPOC if they wish to be a Full Ballot Voter; and, (3) until such time as they submit DPOC, they will be a Fed Only Voter and so will only be eligible to vote in Federal elections. The notification shall be accompanied by the form described in Paragraph 3 (the "DPOC Submission Form"). The applicant may submit DPOC to the County Recorder through the process described in Paragraph 3 to become a Full Ballot Voter. Until and unless the applicant submits valid DPOC, the County Recorders shall cause those voter registration applicants to be made Fed Only Voters.

3. **Provision of DPOC After the Submission of a State Form Application.** Applicants who do not submit DPOC with their State Form application and do not have DPOC on file with MVD, and are notified by the applicable County Recorder that they will be Fed Only Voters unless and until they submit DPOC, may submit valid DPOC to become a Full Ballot Voter. To do so, they shall submit their DPOC to the County Recorder with a form provided to them by that official. This form (the "DPOC Submission Form"), which shall be developed by the Secretary and the County Recorders within thirty days after entry of this Consent Decree, shall contain sufficient information to allow the County Recorder to link the voter registration applicant's DPOC

Case 2:17-cv-04102-DGC Document 37 Filed 06/18/18 Page 11 of 16

with his or her State Form application already on file in the Database.

A. Applicants who submit their State Form application at least twenty-nine days before an election as required by statute, A.R.S. §§ 16-120(A), -134(C), and whose valid DPOC with the DPOC Submission Form is received by their County Recorder by 5 p.m. local time on the Thursday before the election, will be made Full Ballot Voters by the County Recorder and may vote in the upcoming election as a Full Ballot Voter. The registrations of such applicants shall be deemed to have occurred on the date that they originally submitted their State Form application. If the County Recorder has already transmitted a Fed Only early ballot to that voter, the voter will have the option to vote either that Fed Only early ballot or else vote a provisional Full Ballot at the polling place or vote center and comply with the rules regarding provisional ballots.

B. Applicants who submit their State Form application at least twenty-nine days before an election, and whose valid DPOC is received by 5 p.m. local time on the Thursday before the election, but who do not submit the DPOC Submission Form, may be made Full Ballot Voters by the County Recorder if the County Recorder has sufficient information to link the voter registration applicant's DPOC with the applicant's State Form application already on file in the Database. If the County Recorder makes such an applicant a Full Ballot Voter, and if the County Recorder has already transmitted a Fed Only early ballot to that voter, the voter will have the option to vote either that Fed Only early ballot or else vote a provisional Full Ballot at the polling place or vote center and comply with the rules regarding provisional ballots.

C. Applicants who do not submit their State Form application at least twenty-nine days before an election as provided by statute, or whose valid DPOC is received by their County Recorder after 5 p.m. local time on the Thursday before the election, will not be made Full Ballot Voters for the upcoming election. The County Recorder shall make such applicants Full Ballot Voters within five business days after processing provisional ballots, and they shall be Full Ballot Voters for subsequent elections.

D. For all applicants who submit State Form applications without valid DPOC, but subsequently submit valid DPOC and do not submit the DPOC Submission

Case 2:17-cv-04102-DGC Document 37 Filed 06/18/18 Page 12 of 16

Form, the County Recorder may make the applicant a Full Ballot Voter if the County Recorder has sufficient information to link the voter registration applicant's DPOC with the applicant's State Form application already on file in the Database. If the County Recorder lacks sufficient information to link the DPOC to the voter's application in order to make the applicant a Full Ballot Voter, the County Recorder may follow up with the applicant to seek the missing information if the County Recorder has sufficient information to do so. Applicants who subsequently provide the missing information necessary to link their DPOC to their applications shall be made Full Ballot Voters by the County Recorder within ten business days.

4. **State Form Applications Submitted On or After January 1, 2017.** This Consent Decree will govern all voter registration applications submitted after entry of this Consent Decree, including applications submitted within thirty days after entry of this Consent Decree. However, within thirty days after entry of this Consent Decree, the Secretary shall also provide written guidance to all County Recorders except the Maricopa County Recorder that, pursuant to the Consent Decree, they may, at their discretion, implement the new procedures outlined in Paragraphs 2–3 of this Consent Decree for State Form applications dating back to January 1, 2017, provided that they have the capability to ensure that such applicants have not moved, become deceased, or otherwise subsequently already registered to vote. Any applicants whose applications were filed before entry of this Consent Decree who are newly registered as Fed Only or Full Ballot Voters as a result of that process will be given the proper notice of their new registration status by U.S. Mail.

Within ninety days of entry of this Consent Decree, the Maricopa County Recorder shall implement the new procedures outlined in Paragraphs 2–3 of this Consent Decree for State Form applications dating back to January 1, 2017. This process shall include: (1) entering all State Forms submitted without DPOC into the database and immediately registering those applicants for federal elections, (2) checking the applicants' status against the MVD database, and (3) sending the applicants notification of their new registration status.

Case 2:17-cv-04102-DGC Document 37 Filed 06/18/18 Page 13 of 16

5. **Federal Form Applications.** Within thirty days after entry of this Consent Decree, the Secretary shall provide written guidance to the County Recorders to promptly register all applicants who submit their Federal Form application with valid DPOC as Full Ballot Voters and promptly register all applicants who submit their Federal Form application without valid DPOC as Fed Only Voters. From the date of the entry of the Consent Decree, the Secretary shall also cause all new Federal Form applications submitted without DPOC to be checked against the MVD Proxy Table promptly upon entry into the Database, via the automated processes in the Database, to determine whether the MVD has DPOC on file for such Federal Form applicants, and take the following steps:

a. If this check determines that the MVD Proxy Table has DPOC on file for any Federal Form applicant, the Secretary shall promptly notify the applicable County Recorder via the automated process in the Database that the applicant has DPOC on file with MVD and so must be made a Full Ballot Voter via the automated process in the Database.

b. If this check determines that the MVD Proxy Table has information indicating that any Federal Form applicant holds an F-Type License, the Secretary shall promptly notify the applicable County Recorder of that fact via the automated processes of the Database and flag this record for the County Recorder to change that applicant's voter registration status to "not eligible." The County Recorder shall notify the applicant by U.S. Mail within ten business days after receiving notice from the Secretary that, according to information on file with the MVD database, the applicant holds an F-Type License indicating non-citizenship and so will not be registered to vote. The County Recorder's notice shall also inform the applicant that, if this information is not correct, the applicant may provide valid DPOC in order to become a Full Ballot Voter. The notification will be accompanied by the DPOC Submission Form described in Paragraph 3. The applicant may submit valid DPOC to the County Recorder through the process described in Paragraph 3 to become a Full Ballot Voter.

c. If this check determines for any applicant that the MVD database does not

Case 2:17-cv-04102-DGC Document 37 Filed 06/18/18 Page 14 of 16

have DPOC on file and also that the applicant does not hold an F-Type License, the Secretary shall promptly notify the applicable County Recorder of that result via the automated processes of the Database. The County Recorder shall notify these applicants by U.S. Mail within ten business days after receiving notice from the Secretary that (1) the County Recorder does not have the requisite DPOC to process their application; (2) they must submit valid DPOC if they wish to be a Full Ballot Voter; and, (3) until such time as they submit valid DPOC, they will be a Fed Only Voter and so will only be eligible to vote in Federal elections. The notification will be accompanied by the DPOC Submission Form described in Paragraph 3. The applicant may submit valid DPOC to the County Recorder through the process described in Paragraph 3 to become a Full Ballot Voter. Until and unless the applicant submits valid DPOC, the County Recorders shall cause those voter registration applicants to be made Fed Only Voters.

d. Federal Form applicants who subsequently submit valid DPOC shall be made Full Ballot Voters according to and in conformity with the process described in Paragraph 3.

6. **Registered Voters Who Move From One Arizona County to Another.** The AVID Database or another voter registration database similar to the AVID Database shall be operational as described, and according to the terms set forth, in the Definitions section of this consent decree. When the AVID Database is operational, the Secretary and County Recorders will be able to verify DPOC and append that information to applicants' voting records when those applicants change voter registration from one Arizona county to another. Consequently, once the AVID Database is operational and in use by the Secretary and the County Recorders, registered Full Ballot Voters will not be required to independently submit DPOC to their new County Recorder, so long as their DPOC is in the AVID Database.

7. **Application to Other Forms of Registration.** The procedures outlined above for processing voter registration applications submitted without valid DPOC will apply equally to all forms of voter registration, including voter registration through designated voter registration agencies, the Federal Post Card Application (FPCA), the

Case 2:17-cv-04102-DGC Document 37 Filed 06/18/18 Page 15 of 16

Federal Write-In Absentee Ballot, and the In-Person EZ Voter Registration system.

8. **Education of the Public.** The Secretary shall continue to make reasonable efforts to better educate the citizens of Arizona concerning their opportunities to register to vote, including opportunities presented by the Federal Form. The Secretary will provide Plaintiffs' counsel with a copy of the planned notice that she intends to place on her website. Within thirty days after the entry of this Consent Decree, the Secretary shall:

a. Update her website to explain that:

i. the State Form requires valid DPOC for state elections only;

ii. submission of a sufficiently complete State Form with valid DPOC will make the applicant a Full Ballot Voter;

iii. submission of a sufficiently complete State Form without DPOC will make the applicant a Fed Only Voter;

iv. the Federal Form does not require DPOC;

v. submission of the Federal Form without valid DPOC will make the applicant a Fed Only Voter; and

vi. submission of the Federal Form with valid DPOC will make the applicant a Full Ballot Voter.

b. Provide guidance to the County Recorders that they should provide the information required in this Section 8 on their websites;

c. Notify ADOT, DHS, AHCCCS, and DES of the changes in voter registration procedures outlined in this Consent Decree;

d. Within four months after the entry of this Consent Decree, the Secretary shall create a new State Form that explains that citizens who do not submit DPOC with their registration forms will be registered only for federal elections until the appropriate proof of citizenship is provided or acquired. The Secretary will provide notice to Plaintiffs' counsel regarding the form of the explanation described in the previous sentence. The Secretary will create the new State Form within three months if the Secretary determines that it is possible to do so. The Secretary shall provide guidance to the County Recorders and all State Offices that disseminate voter registration forms,

including designated voter registration agencies, that they should utilize the new State Form as soon as practicable. *See* A.R.S. § 16-352(C). Within thirty days after entry of the Consent Decree, the Secretary will provide written notice to the County Recorders that there will be changes made to the State Form within four months after the date the Consent Decree was entered.

10. **Continuing Jurisdiction**. The Court shall retain jurisdiction over this action until December 31, 2020 to enter such further relief as may be necessary for the effectuation of the terms of this Consent Decree.

11. **Attorneys' Fees and Costs.** The Parties will continue to confer regarding what amount, if any, the State Defendants should pay to Plaintiffs for their attorneys' fees and costs. If the Parties are unable to agree privately upon payment of fees and costs, Plaintiffs will file a motion for attorneys' fees and costs pursuant to 42 U.S.C. § 1988 within forty-five days after entry of this consent decree.

The Clerk of Court is directed to terminate this action.

Dated this 18th day of June, 2018.

David G. Campbell
United States District Judge

# Exhibit 2

House Engrossed

voter registration; verification; citizenship

State of Arizona
House of Representatives
Fifty-fifth Legislature
Second Regular Session
2022

# CHAPTER 99

# HOUSE BILL 2492

AN ACT

AMENDING SECTIONS 16-101, 16-112, 16-121 AND 16-121.01, ARIZONA REVISED STATUTES; AMENDING TITLE 16, CHAPTER 1, ARTICLE 2, ARIZONA REVISED STATUTES, BY ADDING SECTIONS 16-123 AND 16-127; AMENDING SECTION 16-134, ARIZONA REVISED STATUTES; AMENDING TITLE 16, CHAPTER 1, ARTICLE 3, ARIZONA REVISED STATUTES, BY ADDING SECTION 16-143; AMENDING SECTION 16-165, ARIZONA REVISED STATUTES; RELATING TO QUALIFICATION AND REGISTRATION OF ELECTORS.

(TEXT OF BILL BEGINS ON NEXT PAGE)

Be it enacted by the Legislature of the State of Arizona:

Section 1. Section 16-101, Arizona Revised Statutes, is amended to read:

16-101. Qualifications of registrant; definition

A. Every resident of ~~the~~ THIS state is qualified to register to vote if ~~he~~ THE RESIDENT:

1. Is a citizen of the United States AND HAS PROVIDED SATISFACTORY EVIDENCE OF CITIZENSHIP AS PRESCRIBED IN SECTION 16-166.

2. Will be eighteen years of age or more on or before the date of the regular general election next following his registration.

3. ~~Will have been~~ IS a resident of ~~the~~ THIS state twenty-nine days next preceding the election, except as provided in section 16-126.

4. Is able to write ~~his~~ THE RESIDENT'S name or make ~~his~~ THE RESIDENT'S mark, unless prevented from so doing by physical disability.

5. Has not been convicted of treason or a felony, unless restored to civil rights.

6. Has not been adjudicated an incapacitated person as defined in section 14-5101.

B. For THE purposes of this title, "resident" means an individual who has actual physical presence in this state, or for purposes of a political subdivision actual physical presence in the political subdivision, combined with an intent to remain. A temporary absence does not result in a loss of residence if the individual has an intent to return following his absence. An individual has only one residence for purposes of this title.

Sec. 2. Section 16-112, Arizona Revised Statutes, is amended to read:

16-112. Driver license voter registration

A. Every person who is applying for a driver license or renewal and who is otherwise qualified to register to vote ~~shall~~, at the same time and place, SHALL be ~~permitted~~ ALLOWED to register to vote by providing the information prescribed by section 16-152. The method used to register voters shall require only the minimum information necessary to prevent duplicate registrations, to enable elections officials to determine voter eligibility and to administer voter registration and election laws. A registration form shall be included for a person who is applying for a driver license renewal by mail. On ~~completion of~~ COMPLETING a form that contains at least the information prescribed by section 16-121.01~~, subsection A~~ and that may contain the information prescribed by section 16-152 and on receipt of that form by the county recorder from the department of transportation as prescribed by subsection D of this section, the applicant is presumed to be properly registered to vote. That presumption may be rebutted as provided in section 16-121.01~~, subsection B~~.

B. The director of the department of transportation and the secretary of state shall consult at least every two years regarding voter registration at driver license offices. The director of the department of transportation and the secretary of state ~~shall~~, after consultation with all county recorders, SHALL adopt rules to implement a system ~~permitting~~ ALLOWING driver license applicants to register to vote at the same time and place as they apply for driver licenses. ~~Such~~ THE rules shall:

1. Bring the license application and voter registration application forms into substantial conformity.

2. ~~Permit~~ ALLOW the transfer of driver license applications, including renewal and change of address, and voter registration information from the department of transportation to the voter registration rolls.

3. Respect all rules and statutes of this state concerning the confidentiality of driver license application information.

4. Provide for the manual or electronic generation and transmittal of voter registrations and provide for electronic generation of changes in voter registration information, including address, in conformity with the confidentiality requirements of the national voter registration act of 1993 (P.L. 103-31; 107 Stat. 77; ~~42~~ 52 United States Code ~~section 394~~ SECTIONS 20501 THROUGH 20511).

C. The department of transportation shall provide to applicants a statement that provides each eligibility requirement for voting, including citizenship, an attestation that the applicant meets each requirement, for the signature of the applicant under penalty of perjury and, in print that is identical to that used in the attestation, the following:

1. A description of the penalties provided by law for the submission of a false voter registration application.

2. A statement that if an applicant declines to register to vote the fact that the applicant has declined to register will remain confidential and will be used only for voter registration purposes.

3. A statement that if an applicant does register to vote the office at which the applicant submits a voter registration application will remain confidential and will be used only for voter registration purposes.

D. The department of transportation shall return or mail completed registrations to the county recorder of the county in which the applicant resides within five days after receipt of a completed registration.

Sec. 3. Section 16-121, Arizona Revised Statutes, is amended to read:

16-121. Qualified elector; definition

A. A person who is qualified to register to vote pursuant to section 16-101 and who is properly registered to vote ~~shall~~, if ~~he~~ THE PERSON is at least eighteen years of age on or before the date of the election AND HAS PROVIDED SATISFACTORY EVIDENCE OF CITIZENSHIP AS

PRESCRIBED IN SECTION 16-166, SHALL be deemed a qualified elector for any purpose for which such qualification is required by law, except as provided in section 16-126. A person continues to be a qualified elector until that person's registration is canceled pursuant to section 16-165 or until that person does not qualify as a resident as ~~prescribed by~~ DEFINED IN section 16-101, subsection B.

B. For purposes of subsection A of this section, a person who does not reside at a fixed, permanent or private structure shall be properly registered to vote if that person is qualified pursuant to section 16-101 and if that person's registration address is any of the following places located in this state:

1. A homeless shelter to which the registrant regularly returns.

2. The place at which the registrant is a resident.

3. The county courthouse in the county in which the registrant resides.

4. A general delivery address for a post office covering the location where the registrant is a resident.

C. A person who is otherwise qualified to register to vote shall not be refused registration or declared not qualified to vote because the person does not live in a permanent, private or fixed structure.

D. ~~As used in~~ FOR THE PURPOSES OF this section, "homeless shelter" means a supervised publicly or privately operated shelter designed to provide temporary living accommodations to individuals who lack a fixed, regular and adequate nighttime residence.

Sec. 4. Section 16-121.01, Arizona Revised Statutes, is amended to read:

16-121.01. Requirements for proper registration; violation; classification

A. A person is presumed to be properly registered to vote on completion of a registration form as prescribed by section 16-152 that contains at least the name, the residence address or the location, PROOF OF LOCATION OF RESIDENCE AS PRESCRIBED BY SECTION 16-123, the date AND PLACE of birth and the signature or other statement of the registrant as prescribed by section 16-152, subsection A, paragraph 20 and a checkmark or other appropriate ~~indicator that the person answered~~ MARK IN THE "yes" BOX NEXT to the question regarding citizenship. ANY APPLICATION FOR REGISTRATION, INCLUDING AN APPLICATION ON A FORM PRESCRIBED BY THE UNITED STATES ELECTION ASSISTANCE COMMISSION, MUST CONTAIN A CHECKMARK OR OTHER APPROPRIATE MARK IN THE "YES" BOX NEXT TO THE QUESTION REGARDING CITIZENSHIP AS A CONDITION OF BEING PROPERLY REGISTERED TO VOTE AS EITHER A VOTER WHO IS ELIGIBLE TO VOTE A FULL BALLOT OR A VOTER WHO IS ELIGIBLE TO VOTE ONLY WITH A BALLOT FOR FEDERAL OFFICES. The completed registration form must also contain the person's Arizona driver license number, the nonoperating identification license number issued pursuant to section 28-3165, the last four digits of the person's social security

number or the person's affirmation that if an Arizona driver license number, A nonoperating identification license number or the last four digits of the person's social security number is not provided, the person does not possess a valid Arizona driver or nonoperating identification license or a social security number and the person is hereby requesting that a unique identifying number be assigned by the secretary of state pursuant to section 16-152, subsection A, paragraph 12, subdivision (c). ANY APPLICATION THAT DOES NOT INCLUDE ALL OF THE INFORMATION REQUIRED TO BE ON THE REGISTRATION FORM PURSUANT TO SECTION 16-152 AND ANY APPLICATION THAT IS NOT SIGNED IS INCOMPLETE AND THE COUNTY RECORDER SHALL NOTIFY THE APPLICANT PURSUANT TO SECTION 16-134, SUBSECTION B, AND SHALL NOT REGISTER THE VOTER UNTIL ALL OF THE INFORMATION IS RETURNED.

B. The presumption in subsection A of this section may be rebutted only by clear and convincing evidence of any of the following:

1. That the registrant is not the person whose name appears on the register.

2. That the registrant has not resided in this state for twenty-nine days next preceding the election or other event for which the registrant's status as properly registered is in question.

3. That the registrant is not properly registered at an address permitted by section 16-121.

4. That the registrant is not a qualified registrant under section 16-101.

C. EXCEPT FOR A FORM PRODUCED BY THE UNITED STATES ELECTION ASSISTANCE COMMISSION, ANY APPLICATION FOR REGISTRATION SHALL BE ACCOMPANIED BY SATISFACTORY EVIDENCE OF CITIZENSHIP AS PRESCRIBED IN SECTION 16-166, SUBSECTION F, AND THE COUNTY RECORDER OR OTHER OFFICER IN CHARGE OF ELECTIONS SHALL REJECT ANY APPLICATION FOR REGISTRATION THAT IS NOT ACCOMPANIED BY SATISFACTORY EVIDENCE OF CITIZENSHIP. A COUNTY RECORDER OR OTHER OFFICER IN CHARGE OF ELECTIONS WHO KNOWINGLY FAILS TO REJECT AN APPLICATION FOR REGISTRATION AS PRESCRIBED BY THIS SUBSECTION IS GUILTY OF A CLASS 6 FELONY. THE COUNTY RECORDER OR OTHER OFFICER IN CHARGE OF ELECTIONS SHALL SEND A NOTICE TO THE APPLICANT AS PRESCRIBED IN SECTION 16-134, SUBSECTION B.

D. WITHIN TEN DAYS AFTER RECEIVING AN APPLICATION FOR REGISTRATION ON A FORM PRODUCED BY THE UNITED STATES ELECTION ASSISTANCE COMMISSION THAT IS NOT ACCOMPANIED BY SATISFACTORY EVIDENCE OF CITIZENSHIP, THE COUNTY RECORDER OR OTHER OFFICER IN CHARGE OF ELECTIONS SHALL USE ALL AVAILABLE RESOURCES TO VERIFY THE CITIZENSHIP STATUS OF THE APPLICANT AND AT A MINIMUM SHALL COMPARE THE INFORMATION AVAILABLE ON THE APPLICATION FOR REGISTRATION WITH THE FOLLOWING, PROVIDED THE COUNTY HAS ACCESS:

1. THE DEPARTMENT OF TRANSPORTATION DATABASES OF ARIZONA DRIVER LICENSES OR NONOPERATING IDENTIFICATION LICENSES.

2. THE SOCIAL SECURITY ADMINISTRATION DATABASES.

3. THE UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES SYSTEMATIC ALIEN VERIFICATION FOR ENTITLEMENTS PROGRAM, IF PRACTICABLE.

4. A NATIONAL ASSOCIATION FOR PUBLIC HEALTH STATISTICS AND INFORMATION SYSTEMS ELECTRONIC VERIFICATION OF VITAL EVENTS SYSTEM.

5. ANY OTHER STATE, CITY, TOWN, COUNTY OR FEDERAL DATABASE AND ANY OTHER DATABASE RELATING TO VOTER REGISTRATION TO WHICH THE COUNTY RECORDER OR OFFICER IN CHARGE OF ELECTIONS HAS ACCESS, INCLUDING AN ELECTRONIC REGISTRATION INFORMATION CENTER DATABASE.

E. AFTER COMPLYING WITH SUBSECTION D OF THIS SECTION, IF THE COUNTY RECORDER OR OTHER OFFICER IN CHARGE OF ELECTIONS MATCHES THE APPLICANT WITH INFORMATION THAT VERIFIES THE APPLICANT IS A UNITED STATES CITIZEN, IS OTHERWISE QUALIFIED AS PRESCRIBED BY SECTION 16-101 AND HAS MET THE OTHER REQUIREMENTS OF THIS SECTION, THE APPLICANT SHALL BE PROPERLY REGISTERED. IF THE COUNTY RECORDER OR OTHER OFFICER IN CHARGE OF ELECTIONS MATCHES THE APPLICANT WITH INFORMATION THAT THE APPLICANT IS NOT A UNITED STATES CITIZEN, THE COUNTY RECORDER OR OTHER OFFICER IN CHARGE OF ELECTIONS SHALL REJECT THE APPLICATION, NOTIFY THE APPLICANT THAT THE APPLICATION WAS REJECTED BECAUSE THE APPLICANT IS NOT A UNITED STATES CITIZEN AND FORWARD THE APPLICATION TO THE COUNTY ATTORNEY AND ATTORNEY GENERAL FOR INVESTIGATION. IF THE COUNTY RECORDER OR OTHER OFFICER IN CHARGE OF ELECTIONS IS UNABLE TO MATCH THE APPLICANT WITH APPROPRIATE CITIZENSHIP INFORMATION, THE COUNTY RECORDER OR OTHER OFFICER IN CHARGE OF ELECTIONS SHALL NOTIFY THE APPLICANT THAT THE COUNTY RECORDER OR OTHER OFFICER IN CHARGE OF ELECTIONS COULD NOT VERIFY THAT THE APPLICANT IS A UNITED STATES CITIZEN AND THAT THE APPLICANT WILL NOT BE QUALIFIED TO VOTE IN A PRESIDENTIAL ELECTION OR BY MAIL WITH AN EARLY BALLOT IN ANY ELECTION UNTIL SATISFACTORY EVIDENCE OF CITIZENSHIP IS PROVIDED.

F. THE COUNTY RECORDER OR OTHER OFFICER IN CHARGE OF ELECTIONS SHALL RECORD THE EFFORTS MADE TO VERIFY AN APPLICANT'S CITIZENSHIP STATUS AS PRESCRIBED IN SUBSECTIONS D AND E OF THIS SECTION. IF THE COUNTY RECORDER OR OTHER OFFICER IN CHARGE OF ELECTIONS FAILS TO ATTEMPT TO VERIFY THE CITIZENSHIP STATUS OF AN APPLICANT PURSUANT TO SUBSECTIONS D AND E OF THIS SECTION AND THE COUNTY RECORDER OR OTHER OFFICER IN CHARGE OF ELECTIONS KNOWINGLY CAUSES THE APPLICANT TO BE REGISTERED AND IT IS LATER DETERMINED THAT THE APPLICANT WAS NOT A UNITED STATES CITIZEN AT THE TIME OF REGISTRATION, THE COUNTY RECORDER OR OTHER OFFICER IN CHARGE OF ELECTIONS IS GUILTY OF A CLASS 6 FELONY.

Sec. 5. Title 16, chapter 1, article 2, Arizona Revised Statutes, is amended by adding sections 16-123 and 16-127, to read:

16-123. Proof of location of residence

EXCEPT FOR PERSONS WHO REGISTER PURSUANT TO SECTION 16-103, A PERSON WHO REGISTERS TO VOTE SHALL PROVIDE AN IDENTIFYING DOCUMENT THAT ESTABLISHES PROOF OF LOCATION OF RESIDENCE. ANY OF THE IDENTIFYING DOCUMENTS PRESCRIBED IN SECTION 16-579, SUBSECTION A, PARAGRAPH 1 CONSTITUTES SATISFACTORY PROOF OF LOCATION OF RESIDENCE. COMPLIANCE WITH

THIS SECTION DOES NOT SATISFY THE RESIDENCY REQUIREMENTS IN SECTION 16-101 OR 16-593 AND ONLY CONSTITUTES CONFIRMATION OF THE ADDRESS ON THE APPLICANT'S APPLICATION AT THE TIME OF REGISTRATION. A VALID AND UNEXPIRED ARIZONA DRIVER LICENSE OR NONOPERATING IDENTIFICATION NUMBER THAT IS PROPERLY VERIFIED BY THE COUNTY RECORDER SATISFIES THE REQUIREMENTS OF THIS SECTION.

16-127. Federal only voters; early ballot; eligibility; exemption

A. NOTWITHSTANDING ANY OTHER LAW:

1. A PERSON WHO HAS REGISTERED TO VOTE AND WHO HAS NOT PROVIDED SATISFACTORY EVIDENCE OF CITIZENSHIP AS PRESCRIBED BY SECTION 16-166, SUBSECTION F IS NOT ELIGIBLE TO VOTE IN PRESIDENTIAL ELECTIONS.

2. A PERSON WHO HAS NOT PROVIDED SATISFACTORY EVIDENCE OF CITIZENSHIP PURSUANT TO SECTION 16-166, SUBSECTION F AND WHO IS ELIGIBLE TO VOTE ONLY FOR FEDERAL OFFICES IS NOT ELIGIBLE TO RECEIVE AN EARLY BALLOT BY MAIL.

B. THIS SECTION DOES NOT APPLY TO AN ABSENT UNIFORMED SERVICES VOTER OR OVERSEAS VOTER AS DEFINED IN THE UNIFORMED AND OVERSEAS CITIZENS ABSENTEE VOTING ACT (P.L. 99-410; 100 STAT. 924; 52 UNITED STATES CODE SECTION 20310), AS AMENDED BY THE RONALD W. REAGAN NATIONAL DEFENSE AUTHORIZATION ACT FOR FISCAL YEAR 2005 (P.L. 108-375).

Sec. 6. Section 16-134, Arizona Revised Statutes, is amended to read:

16-134. Return of registrations made outside office of county recorder; incomplete or illegible forms

A. A county recorder shall authorize persons to accept registration forms, shall designate places for receipt of registration forms and shall designate additional locations for distribution of voter registration forms. Public assistance agencies and disabilities agencies as defined in section 16-140 shall return or mail completed voter registrations to the county recorder of the county in which the applicant resides within five days after receipt of those registrations.

B. If the information on the registration form is incomplete or illegible and the county recorder is not able to process the registration form, the county recorder shall notify the applicant within ten business days of receipt of the registration form, shall specify the missing or illegible information and, if the missing or illegible information includes any of the information prescribed by section 16-121.01, subsection A OR C, shall state that the registration cannot be completed until the information is supplied. If the missing or illegible information is supplied before 7:00 p.m. on election day, that person is deemed to have been registered on the date the registration was first received.

C. In the case of registration by mail, a voter registration is valid for an election if it complies with either of the following:

1. The form is postmarked twenty-nine days or more before an election and is received by the county recorder by 7:00 p.m. on the day of that election.

2. The registration is dated twenty-nine days or more before an election and is received by the county recorder by first class mail within five days after the last day to register to vote in that election.

D. The date of registration entered for registration forms that are received by the county recorder from persons, groups or agencies that are not authorized to accept registrations pursuant to subsection A of this section and that do not bear a legible postmark date or an otherwise reliable date shall be the date that those forms are received by the county recorder.

Sec. 7. Title 16, chapter 1, article 3, Arizona Revised Statutes, is amended by adding section 16-143, to read:

16-143. Federal only voters; attorney general; investigation; report

A. THE SECRETARY OF STATE AND EACH COUNTY RECORDER SHALL MAKE AVAILABLE TO THE ATTORNEY GENERAL A LIST OF ALL INDIVIDUALS WHO ARE REGISTERED TO VOTE AND WHO HAVE NOT PROVIDED SATISFACTORY EVIDENCE OF CITIZENSHIP PURSUANT TO SECTION 16-166 AND SHALL PROVIDE, ON OR BEFORE OCTOBER 31, 2022, THE APPLICATIONS OF INDIVIDUALS WHO ARE REGISTERED TO VOTE AND WHO HAVE NOT PROVIDED SATISFACTORY EVIDENCE OF CITIZENSHIP PURSUANT TO SECTION 16-166.

B. THE ATTORNEY GENERAL SHALL USE ALL AVAILABLE RESOURCES TO VERIFY THE CITIZENSHIP STATUS OF THE APPLICANT AND AT A MINIMUM SHALL COMPARE THE INFORMATION AVAILABLE ON THE APPLICATION FOR REGISTRATION WITH THE FOLLOWING:

1. THE DEPARTMENT OF TRANSPORTATION DATABASES OF ARIZONA DRIVER LICENSES OR NONOPERATING IDENTIFICATION LICENSES.

2. THE SOCIAL SECURITY ADMINISTRATION DATABASES.

3. THE UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES SYSTEMATIC ALIEN VERIFICATION FOR ENTITLEMENTS PROGRAM, IF PRACTICABLE.

4. A NATIONAL ASSOCIATION FOR PUBLIC HEALTH STATISTICS AND INFORMATION SYSTEMS ELECTRONIC VERIFICATION OF VITAL EVENTS SYSTEM.

5. ANY OTHER STATE, CITY, TOWN, COUNTY OR FEDERAL DATABASE AND ANY OTHER DATABASE RELATING TO VOTER REGISTRATION TO WHICH THE COUNTY RECORDER OR OFFICER IN CHARGE OF ELECTIONS HAS ACCESS, INCLUDING AN ELECTRONIC REGISTRATION INFORMATION CENTER DATABASE.

C. THE SECRETARY OF STATE SHALL PROVIDE THE ATTORNEY GENERAL ACCESS TO THE UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES SYSTEMATIC ALIEN VERIFICATION FOR ENTITLEMENTS PROGRAM FOR THE PURPOSES OF THIS SECTION.

D. THE ATTORNEY GENERAL SHALL PROSECUTE INDIVIDUALS WHO ARE FOUND TO NOT BE UNITED STATES CITIZENS PURSUANT TO SECTION 16-182.

E. THE ATTORNEY GENERAL SHALL SUBMIT A REPORT TO THE SECRETARY OF STATE, THE PRESIDENT OF THE SENATE, AND THE SPEAKER OF THE HOUSE OF

REPRESENTATIVES ON OR BEFORE MARCH 31, 2023 DETAILING ALL FINDINGS RELATING TO THE CITIZENSHIP STATUS OF INDIVIDUALS WHO ARE REGISTERED TO VOTE AND WHO HAVE NOT PROVIDED SATISFACTORY EVIDENCE OF CITIZENSHIP PURSUANT TO SECTION 16-166.

Sec. 8. Section 16-165, Arizona Revised Statutes, is amended to read:

16-165. Causes for cancellation

A. The county recorder shall cancel a registration:

1. At the request of the person registered.

2. When the county recorder knows of the death of the person registered.

3. If the person has been adjudicated an incapacitated person as defined in section 14-5101.

4. When the person registered has been convicted of a felony, and the judgment of conviction has not been reversed or set aside. The county recorder shall cancel the registration on receipt of notice of a felony conviction from the court or from the secretary of state or when reported by the elector on a signed juror questionnaire that is completed pursuant to section 21-314.

5. On production of a certified copy of a judgment directing a cancellation to be made.

6. Promptly after the election if the person registered has applied for a ballot pursuant to section 16-126.

7. When a person has been on the inactive voter list and has not voted during the time periods prescribed in section 16-166, subsection C.

8. When the county recorder receives written information from the person registered that the person has a change of residence within the county and the person does not complete and return a new registration form within twenty-nine days after the county recorder mails notification of the need to complete and return a new registration form with current information.

9. When the county recorder receives written information from the person registered that the person has a change of address outside the county.

10. WHEN THE COUNTY RECORDER RECEIVES AND CONFIRMS INFORMATION THAT THE PERSON REGISTERED IS NOT A UNITED STATES CITIZEN.

B. If the county recorder cancels a registration pursuant to subsection A, paragraph 8 of this section, the county recorder shall send the person notice that the registration has been cancelled and a registration form with the information described in section 16-131, subsection C attached to the form.

C. When proceedings in the superior court or the United States district court result in a person being declared incapable of taking care of himself and managing his property, and for whom a guardian of the person and estate is appointed, result in such person being committed as

an insane person or result in a person being convicted of a felony, the clerk of the superior court in the county in which those proceedings occurred shall file with the secretary of state an official notice of that fact. The secretary of state shall notify the appropriate county recorder and the recorder shall cancel the name of the person on the register. Such notice shall name the person covered, shall give the person's date and place of birth if available, the person's social security number, if available, the person's usual place of residence, the person's address and the date of the notice, and shall be filed with the recorder of the county where the person last resided.

D. Each month the department of health services shall transmit to the secretary of state without charge a record of the death of every resident of the state reported to the department within the preceding month. This record shall include only the name of the decedent, the decedent's date of birth, the decedent's date of death, the decedent's social security number, if available, the decedent's usual legal residence at the time of death and, if available, the decedent's father's name or mother's maiden name. The secretary of state shall use the record for the sole purpose of canceling the names of deceased persons from the statewide voter registration database. In addition, the department of health services shall annually provide to the secretary of state from the statewide electronic death registration system without charge a record of all deaths of residents of this state that are reported to the department of health services. The records transmitted by the department of health services shall include only the name of the decedent, the decedent's date of birth, the decedent's social security number, if available, the decedent's usual legal residence at the time of death and, if available, the decedent's father's name or mother's maiden name. The secretary of state shall compare the records of deaths with the statewide voter registration database. Public access to the records is prohibited. Use of information from the records for purposes other than those required by this section is prohibited. The name of each deceased person shall promptly be canceled from the statewide voter registration database and the secretary of state shall notify the appropriate county recorder and the recorder shall cancel the name of the person from the register.

Sec. 9. Severability

If a provision of this act or its application to any person or circumstance is held invalid, the invalidity does not affect other provisions or applications of the act that can be given effect without the invalid provision or application, and to this end the provisions of this act are severable.

APPROVED BY THE GOVERNOR MARCH 30, 2022.

FILED IN THE OFFICE OF THE SECRETARY OF STATE MARCH 30, 2022.

# Exhibit 3

February 22, 2022 meeting of the Arizona House Committee on Rules, available at https://www.azleg.gov/videoplayer/?clientID=6361162879&eventID=2022021121.

The referenced section of the meeting can be found starting at approximately 7 minutes and 19 seconds into the video

# Exhibit 4

DAILY INDEPENDENT
(/)

Select a newspaper

MAIN MENU

SUBSCRIBER EXCLUSIVE

# GOP lawmakers seek to reopen legal voting issue

Posted Saturday, March 26, 2022 9:00 am



**By Howard Fischer (/browse.html?byline=Howard%20Fischer)**
**Mail (mailto:azcapmedia@gmail.com) | Twitter: @azcapmedia (https://twitter.com/azcapmedia)**

PHOENIX — Republican state lawmakers are pushing to reopen a legal issue on which the U.S. Supreme Court ruled against Arizona nine years ago.

And their own attorneys are telling them they're likely to lose again.

Legislation that has been approved on a party-line vote by both the House and Senate would require election officials to try to verify the citizenship of anyone seeking to register to vote using a form provided by the federal Election Assistance Commission. And if there is no corroboration or the person doesn't provide proof, they cannot cast a ballot for president.

At the very least, that would affect more than 31,000 people who are registered using that federal form.

Only thing is, the nation's high court rejected pretty much precisely that. And even Jennifer Holder, the attorney for the House Rules Committee, told lawmakers the measure is illegal and the state would be courting a new lawsuit.

The staff attorney in the Senate provided the same advice.

But that's only part of the problem.

The wording of the measure says that anyone who wants to vote in any race at all must first provide proof of citizenship. And that could force many Arizonans who have been voting for years without problems to start digging around for a birth certificate or other acceptable documentation.

That's related to driver's licenses. In general, they are considered proof of citizenship to register to vote.

Only thing is, that citizenship proof to get a license wasn't required until 1996. So any license originally issued before then does not mean the holder is a citizen.

The Motor Vehicle Division says about 192,000 individuals who have one those pre-1996 licenses and haven't re-registered since and provided proof of citizenship. They all could have their voter registrations purged.

Rep. Jake Hoffman, R-Queen Creek, the author of HB 2492, tells Capitol Media Services that it is legal, even with that 2013 U.S. Supreme Court decision — and the opinion of the House and Senate attorneys — to the contrary.

He also said that the issue of those with pre-1996 licenses affects the voting ability only those people who use the federal voter registration form, not everyone else.

But the Citizens Clean Elections Commission says that is far from clear.

In a letter to Gov. Doug Ducey, all five commissioners — Republican, Democratic and independent — pointed out that when voters adopted proof-of-citizenship requirements in 2004 they specifically said that anyone already registered did not have to re-register — and provide proof of citizenship — until they moved from one county to another. That precluded disenfranchising everyone who already was on the voter rolls.

But Tom Collins, the commission's executive director, said Hoffman did not include that same kind of provision in HB 2492. That, he said, suggests that lots of Arizonans who are still driving on licenses first issued in 1996, before there was proof of citizenship, will find themselves disenfranchised.

Hoffman, however, disputes that contention.

The legislation is closely linked to the "Stop the Steal" movement that insists that Donald Trump actually outpolled Joe Biden in Arizona.

Much of those efforts are based on various claims, all unproven, that the elections process itself was flawed, with everything from fake ballots being injected into the system to tabulation equipment being reprogammed by outside sources. And some are unconvinced despite findings this past week that the counting machines in Maricopa County were never connected to the internet.



(https://yourvalleybanners.creativecirclemedia.com/www/delivery/ck.php?oaparams=2__bannerid=1388__zoneid=12__cb=6ecf59a800__oadest=https%3A%2F%2Fwww.yourvalley.net%2Fwestvalleyfavorites%2F)

This legislation, however, stems from the idea that people not in this country legally voted and that may have influenced the official outcome which showed Biden won Arizona by 10,457 votes.

But the actual tally from Maricopa County found that 4,484 ballots were cast by people who were entitled to vote only in federal races because they had not proven citizenship. There were another 1,942 from Pima County.

And even assuming none of those actually were citizens who simply chose to register with the federal form, and assuming that all of them had voted for Biden, that would not have been enough to change the outcome.

Hoffman, in pushing the bill through the House, said the measure has merit.

"This bill does nothing other than to ensure that non-citizens are not voting in Arizona elections and American elections, which I might say one could classify non-citizens voting as foreign influence in our elections," he said.

But that gets to the question of whether his solution is legal.

In its 2013 ruling, the U.S. Supreme Court said Arizona remains free to enforce its 2004 law and demand proof of citizenship from those wanting to vote in state and local elections.

But the justices said that Congress, in enacting the National Voter Registration Act, clearly intended to allow people who use a form created by the Election Assistance Commission to vote in races for federal offices. That form requires only an avowal of citizenship.

The House and Senate attorneys said the legislation absolutely conflicts with that ruling.

That didn't seem to matter to the Republicans who decided to approve it anyway. And Speaker Pro-tem Travis Grantham, R-Gilbert, seems anxious to provoke yet another lawsuit.

"We fight for local control of our elections," he said in voting for the measure despite the opinion of the House attorney.

"Yet when there's an overreach by the federal government we're willing to accept it because they're allowed to preempt us because this court says this," Grantham said. "I think this is a fight worth having. I may lose."

Hoffman said he doesn't think that would be the outcome.

"HB 2492 is an incredibly well-crafted piece of legislation that is on sound legal footing and broadly supported by voters of all political parties," he said. Nor is he worried about a litigation.

"I am confident that should Democrats challenge HB 2492 in court it will only serve to further reinforce its clear constitutionality," Hoffman said.

And there's something else.

He contends that the 2013 court ruling requires only that those using the federal form be allowed to vote for members of Congress.

But Hoffman said the U.S. Constitution gives the legislature to decide how presidential electors are chosen. And that, he said, leaves Arizona free to decide that only those people who can prove citizenship can vote in presidential races.

"This distinction has yet to be presented to the court," he said. "So any assertion that (HB 2492) is prima facie unconstitutional based on this provision is patently false."

The measure is now headed to Gov. Doug Ducey. His press aide said the governor does not comment on legislation until he has a chance to review it.



**Howard Fischer**

**@azcapmedia (https://twitter.com/azcapmedia)**

**@azcapmedia (https://twitter.com/azcapmedia)**

**Mr. Fischer, a longtime award-winning Arizona journalist, is founder and operator of Capitol Media Services.**

**Subscribers make this story possible.**

**Support the journalists of Independent Newsmedia (https://www.yourvalley.net/subscribe/?lcid=293949).**

## Keywords

Hoffman, election, HB 2492

## Comments

NO COMMENTS ON THIS ITEM PLEASE LOG IN TO COMMENT BY CLICKING HERE (/LOGIN.HTML?REFERER=%2FSTORIES%2FGOP-LAWMAKERS-SEEK-TO-REOPEN-LEGAL-VOTING-ISSUE%2C293949)

**OTHER ITEMS THAT MAY INTEREST YOU**

**Permit approved for expansion of Scottsdale marijuana cultivation facility (/stories/permit-approved-for-expansion-of-scottsdale-marijuana-cultivation-facility,322863)**

**Surprise residents speak out against housing project (/stories/surprise-residents-speak-out-against-housing-project,322786)**

**Report: Kyrene School District failed to respond to anti-Semitic harassment (/stories/report-kyrene-school-district-failed-to-respond-to-anti-semitic-harassment,322704)**

**'Enclave on Rennick' apartments planned in Apache Junction (/stories/enclave-on-rennick-apartments-planned-in-apache-junction,322178)**

**MOST POPULAR STORIES IN DAILY INDEPENDENT**

**The Thumb gets 'thumbs up' for family, pet-friendly environment (/stories/the-thumb-gets-thumbs-up-for-family-pet-friendly-environment,322577)**

**Apache Junction police getting new Tasers, body-worn cameras (/stories/apache-junction-police-getting-new-tasers-body-worn-cameras,322159)**

**Another busy agenda for Buckeye P & Z (/stories/another-busy-agenda-for-buckeye-p-z,322608)**

**Trial date delayed for WV shooter suspect (/stories/trial-date-delayed-for-wv-shooter-suspect,322595)**





(https://yourvalleybanners.creativecirclemedia.com/www/delivery/ck.php?
_cb=21200e9305__oadest=https%3A%2F%2Fconsumers4q




(https://yourvalleybanners.creativecirclemedia.com/www/delivery/ck.php?
_cb=48395ca602__oadest=https%3A%2F%2Fconsumers4q




(https://yourvalleybanners.creativecirclemedia.com/www/delivery/ck.php?
oaparams=2__bannerid=1388__zoneid=218__cb=8ed93a013d__oadest=https%3A%2F%2Fwww.yourva


**FREE NEWSLETTER**

# Register for our free newsletter

DON'T MISS A BEAT: Simply submit your e-mail address below, click on the opt-in email link and watch your inbox for news from the Daily Independent at YourValley.net. Thank you for reading!

## Daily Independent at YourValley.net

Sign up for the latest news from around the Phoenix area delivered Monday through Friday.

Email Required

SUBSCRIBE




MOST RECENT

## October lineup set for downtown Glendale music series (/stories/october-lineup-set-for-downtown-glendale-music-series,322926)

The live music lineup for October's downtown series in Glendale is out now.

## Scottsdale approves police pay increases to stay competitive (/stories/scottsdale-approves-police-pay-increases-to-stay-competitive,322916)

## Thomas Barry (/stories/thomas-barry,322919)

## SD Gov. Kristi Noem weighs response to ethics complaints (/stories/sd-gov-kristi-noem-weighs-response-to-ethics-complaints,322920)

## Phoenix Zoo's 'gentle giant' Pete dies at 20 (/stories/phoenix-zoos-gentle-giant-pete-dies-at-20,322915)

DAILY INDEPENDENT

**Tweets from @AzNewsmedia**

Daily Independent Retweeted

**Melissa Rosequist**
@mrosequist_ · Aug 23

Kavanagh defends police videotaping law as news groups file suit #AZNEWSMEDIA
yourvalley.net/scottsdale-ind...

yourvalley.net
Kavanagh defends police videotaping law as news groups file suit

Daily Independent
2,780 likes

Like Page
Sign Up

**Daily Independent**
about a minute ago

The live music lineup for October's downtown series in #Glendale is out now. #AZNEWSMEDIA Glendale Independent Historic Downtown Glendale Visit Glendale



YOURVALLEY.NET
**October lineup set for downtown…**

*Celebrating & Connecting*
*Our Communities*

YourValley.net (/)
623-972-6101
17220 N Boswell Blvd
Suite 230E
Sun City AZ 85373

Email: azdelivery@iniusa.org (mailto:azdelivery@iniusa.org)

**OUR SERVICES**

Advertising (/advertising/)
Find Your Local Newspaper (/racks-and-dealers/)
Our History (/our-history/)
Public Notices (http://www.publicnoticeads.com/AZ/)
About Us (/about/index.html)
Start a print subscription to the Daily Independent (/start_a_print_subscription_to_the_daily_independent/index.html)
Print With Us (/valley_newspapers/)
Contact Us (/contact-us/index.html)
Our Journalists (/our-journalists/)
Privacy Policy (/privacy-policy/)
Work for Us (/stories/join-our-teams,73431)
Our Vision & Values (/stories/our-vision-and-values,86397)
Start a digital subscription to YourValley.net (/subscribe-today/)

**OUR COMMUNITIES**

Anthem (/stories/anthem,73440)
Buckeye (/stories/buckeye,73441)
Florence (/stories/florence,195634)
Glendale (/stories/glendale,73415)
Goodyear (/stories/goodyear,73445)
Mesa (/stories/mesa,73447)
Queen Creek (/stories/queen-creek,73418)
Sun City (/stories/sun-city,73420)
Surprise (/stories/surprise,73423)
Youngtown (/stories/youngtown,73448)
Apache Junction (/stories/apache-junction,73414)
El Mirage (/stories/el-mirage,73442)
Gilbert (/stories/gilbert,73443)
Gold Canyon (/stories/gold-canyon,73444)
Litchfield Park (/stories/litchfield-park,73446)
Peoria (/stories/peoria,73417)
Scottsdale (/stories/scottsdale,73419)
Sun City West (/stories/sun-city-west,73421)
Town of Paradise Valley (/stories/town-of-paradise-valley,73416)
Tempe (/stories/tempe,208255)

© COPYRIGHT 2022 INDEPENDENT NEWSMEDIA INC.

POWERED BY CREATIVE CIRCLE MEDIA SOLUTIONS (HTTP://CREATIVECIRCLEMEDIA.COM)

# Exhibit 5

STATE OF ARIZONA
OFFICE OF THE GOVERNOR

DOUGLAS A. DUCEY
GOVERNOR

EXECUTIVE OFFICE

March 30, 2022

The Honorable Katie Hobbs
Secretary of State
1700 W. Washington, 7th Floor
Phoenix, AZ 85007

RE: House Bill 2492 voter registration; verification; citizenship

Dear Secretary Hobbs,

Today I signed H.B. 2492.

Arizona has a proud history of making voting accessible. The state is a leader in secure mail-in voting, on-site early voting and allowing counties to establish voting day polling locations that best serve their communities. Arizonans also value election integrity, which can and should exist in tandem to, not in conflict with, access to the ballot box.

In 2004, Arizona voters displayed their desire to have secure elections with the passage of Proposition 200, which required evidence of citizenship in order to register to vote. Importantly, anyone who was registered to vote in Arizona prior to Prop 200's passage was deemed to have provided satisfactory evidence of citizenship and not required to resubmit evidence of citizenship. H.B. 2492 *does not* disturb the safe harbor granted to Arizona voters who registered to vote prior to Prop 200's passage.

What H.B. 2492 *does* address is a growing number of new registrants participating in elections who have not provided evidence of citizenship. In 2014, when the federal form was first used to register Arizona voters who failed to provide evidence of citizenship, a mere 21 voters statewide voted using that method in the primary election. In the 2020 general election, that number climbed to over 11,600. In just Maricopa County alone, there are currently 13,042 active registered voters who have not provided evidence of citizenship to vote through use of the federal form.

Federal law prohibits non-citizens from voting in federal elections. Arizona law prohibits non-citizens from voting for all state and local offices, *and* requires proof of citizenship. H.B. 2492 provides clarity to Arizona law on how officials process federal form voter registration applications that lack evidence of citizenship. Furthermore, H.B. 2492 ensures that the Attorney General's office has the data needed to properly determine if a person who has registered with the federal form is in fact a non-citizen. Under H.B. 2492, a person who registers with the federal form and who is found to not be a United States citizen will be prosecuted under our existing statutes.

Election integrity means counting every lawful vote and prohibiting any attempt to illegally cast a vote. H.B. 2492 is a balanced approach that honors Arizona's history of making voting accessible without sacrificing security in our elections.

Sincerely,

Douglas A. Ducey
Governor
State of Arizona

cc: The Honorable Karen Fann
The Honorable Rusty Bowers
The Honorable Warren Petersen
The Honorable Nancy Barto

# Exhibit 6

THE POINT
WITH CHRIS CILLIZZA

# How one Trump-loving governor totally shut down the President's voter fraud claims

Analysis by Chris Cillizza, CNN Editor-at-large
Updated 10:57 AM ET, Tue December 1, 2020



CNN politics Audio Live TV Log In

**(CNN) —** In the month since the presidential election, President Donald Trump has repeatedly argued that Arizona's vote was somehow fraudulent because, uh, he lost.

"Such total corruption," Trump tweeted Monday as the state's Republican governor, Doug Ducey, certified President-elect Joe Biden's narrow win in the state. "So sad for our country!"

Ducey decided to fight back. And he used Trump's favorite medium to do it.

In a nine-tweet thread on Twitter, the Arizona governor laid out -- in clear terms -- Arizona's election laws, asserted that those rules were followed and affirmed his faith in the result. (Biden won the state by more than 10,000 votes.)

Here's the key bit:

*"In Arizona, we have some of the strongest election laws in the country, laws that prioritize accountability and clearly lay out procedures for conducting, canvassing, and even contesting the results of an election. We've got ID at the polls. We review EVERY signature (every single one) on early ballots — by hand — unlike other states that use computers. Prohibitions on ballot harvesting. Bipartisan poll observers. Clear deadlines, including no ballots allowed after Election Day."*

Ducey also noted that in order to delay the certification -- as Trump insisted he should -- specific counties in the state would have to decline to certify their results. "ALL 15 counties in Arizona — counties run by both parties — certified their results," tweeted Ducey.

---




**THE POINT -- NOW ON YOUTUBE!**

**In each episode of his weekly YouTube show, Chris Cillizza will delve a little deeper into the surreal world of politics. Click to subscribe!**

---

While it is difficult to respond to Trump's allegations -- because they are so incredibly vague by their very nature (*We were cheated! Fraud!*) -- Ducey does an excellent job of it here. His point is simple: Arizona isn't new to early voting. Its has voter ID, which means that you cannot cast a vote unless you also display a form of identification. There was no evidence of fraud. Therefore, Ducey is simply doing the job the state's Constitution lays out for him.

It's a simple -- yet total -- rebuke. And it's all the more effective because it is coming from a governor who long touted his close relationship with Trump.

CNN politics Audio Live TV Log In

*"When there's a need in Arizona I talk to him (Trump) directly. My senior staff knows this. We've had so much outreach, personally, from both the president and the vice president that I had to change the ringtone on my phone. And it rings 'Hail to the Chief' because I didn't want to miss another phone call from the White House to help the state of Arizona."*

Local 12 News reporter Brahm Resnik caught what seemed to be an incoming call with the "Hail to the Chief" ringtone while Ducey was certifying Arizona's results -- which Ducey declined.

And because there is a tweet for everything, here is Trump endorsing Ducey for reelection in 2018:

*"Governor Doug Ducey of Arizona is doing a great job. It would be really nice to show your support tomorrow by voting for him in Tuesdays Primary. Doug is strong on Crime, the Border, and our Second Amendment. Loves our Military & our Vets. He has my full and complete Endorsement."*

Trump's decision to turn on Ducey is, of course, not surprising. Trump's allies only remain as such if they are willing to say and do everything he asks. The second they step out of line, he hammers them. (Witness Trump's ongoing savaging of Georgia Gov. Brian Kemp, who paid more homage to this President than almost any other governor in the country.)

What's more surprising and, candidly, refreshing is Ducey's willingness to stand up to Trump's barbs. There has been very little political courage on display among Republicans amid Trump's ongoing attempts to use false claims and conspiracy theories to raise doubts about the election results in the minds of Americans. Ducey, at least, is willing to go public with the fact that Arizona's election was fair -- even if it didn't produce the result he wanted.

This is what leadership looks like. More Republicans, especially in Congress, should follow Ducey's lead if they want to preserve the GOP beyond the Trump years.

Search CNN...

Log In

Live TV

Audio

US

World

Politics

☰ CNN politics Audio Live TV Log In

Opinion

Health

Entertainment

Tech

Style

Travel

Sports

Videos

Audio

CNN Underscored

Weather

More

CNN politics

FOLLOW CNN POLITICS

Terms of Use Privacy Policy Do Not Sell or Share My Personal Information Ad Choices

About Us CNN Store Newsletters Transcripts License Footage CNN Newsource Sitemap

© 2022 Cable News Network. A Warner Bros. Discovery Company. All Rights Reserved.
CNN Sans ™ & © 2016 Cable News Network.

CNN politics Audio Live TV Log In

# Exhibit 7

ELECTION 2020 ELECTIONS LAW & GOVERNMENT POLITICS

# Arizona 'audit' finds Biden won (by more votes) and no evidence of fraud

BY: **JEREMY DUDA** - SEPTEMBER 23, 2021 9:07 PM



Maricopa County ballots from the 2020 general election are examined and recounted by contractors hired by the Arizona Senate in an audit at the Veterans Memorial Coliseum in Phoenix on May 24, 2021. Photo by David Wallace | Arizona Republic/pool photo

After months of work and some $6 million spent, a so-called audit that Trump supporters claimed would show that the election had been stolen from the defeated president found that Joe Biden actually won Arizona by more votes than the official tally – and it found no conclusive evidence that the election had been influenced by fraud.

GET THE MORNING HEADLINES DELIVERED TO YOUR INBOX SUBSCRIBE

Draft reports from the review that Senate President Karen Fann commissioned of Maricopa County's election results declared that a hand count of nearly 2.1 million ballots from the November 2020 election found Donald Trump had 261 fewer votes than the county's official canvass gave him, while Biden had 99 more. All told, Biden gained 360 votes in the Senate "audit" hand count — which was criticized by election experts as fundamentally flawed — giving him a victory of 45,469 votes in Maricopa County.

Official canvasses had Biden winning the county by 45,109 and the state by 10,457 votes.

20210919 - Maricopa County Forensic Audit - Volume I - Executive Summar

9/24/2021

Document 1 of 6 59%

20210830 - Maricopa County Forensic Audit - Volume II - Methodology and

9/23/2021

Document 1 of 15 59%

20210919 - Maricopa County Forensic_Audit - Volume III - Results Details

9/23/2021

Document 1 of 91 59%

The "audit" team is scheduled to unveil its findings to the Senate at 1 p.m. on Friday. But three draft reports that began circulating on Thursday show what audit critics have long argued – that the election was conducted fairly and the votes counted accurately.

"This means the tabulation equipment counted the ballots as they were designed to do, and the results reflect the will of the voters. That should be the end of the story. Everything else is just noise," Jack Sellers, chairman of the Maricopa County Board of Supervisors, said in a press statement Thursday night.

The audit reports also showed no evidence of fraud or malfeasance that might have changed the election outcome in Arizona.

The reports make a number of claims about ballots that might be problematic for different reasons. But it leaves the issues open-ended and makes no conclusive statements. The findings suggest that the audit team did not investigate those claims more deeply to determine their validity before compiling the reports.

For example, one section claimed that the review found 10,342 "potential voters" who had voted in multiple counties in Arizona, based on voters with identical first and last names, middle initials and birth years. The report said it's possible for multiple people to share those details, but that the list "should be fully reviewed."

The report does not state why the audit team did not conduct such a review.

State law permits voters to request that their early ballots be sent to a temporary address.

The draft report also claims that 23,344 early ballots were cast by people who shouldn't have received them because they moved – a conclusion reached by comparing the names of voters who cast ballots with information from a third-party data vendor. Another section claims 9,041 people returned more ballots than they'd received, though the report acknowledges that there could be legitimate explanations for why the records said that.

The executive summary of the report – which did not mention the results of the hand-recount that took more than 3 months to complete – also concedes that many of the alleged concerns the review found could have been allayed if the county had cooperated with the audit. The county has steadfastly refused to cooperate or participate, to the point of refusing to even answer questions about election policies and procedures. That has presented a problem for the audit team, which has no background in elections work.

"Had Maricopa County chosen to cooperate with the audit, the majority of these obstacles would have easily been overcome. By the County withholding some subpoena items, their unwillingness to answer questions as is normal between auditor and auditee, and in some cases actively interfering with audit research, the County prevented a complete audit," the summary read.

Sellers said there was a good reason the county refused to cooperate.

"How could we cooperate with an inquiry that was led by people who have no idea how to run any election, let alone one in the second largest voting district in the United States? The Board approved the election plan, we hired and supported our election experts, and they produced a well-run and accurate election in accordance with Arizona law," he said in his press statement.

It's unclear whether or how the final reports that audit team leader Doug Logan, CEO of the Florida-based company Cyber Ninjas, will present to the Senate on Friday will be different from the draft reports. Two spokespeople did not respond to inquiries from the *Arizona Mirror*, nor did Logan, who has almost entirely refused to speak with news media since Fann chose him to lead the audit in March.

Sen. Wendy Rogers, R-Flagstaff, one of the legislature's most fervent advocates of the audit, claimed on Twitter that she'd spoken with Logan and that he told her the leaked drafts that were circulating Thursday night were only drafts and were partial reports.

"Tomorrow's hearing will render findings of great consequence," Rogers tweeted.

If Logan's findings were in error, it wouldn't be the first time. He has a documented history of making demonstrably false statements that were disproven by election records he already had in his possession.

During a presentation in July to Fann and Senate Judiciary Chairman Warren Petersen, Logan claimed the audit found 74,000 votes cast by people who had submitted early ballots but whom records did not show had requested them. The votes were actually cast at in-person early voting centers after the deadline to request early ballots by mail, which Logan could have easily found for himself based on the county's master list of people who voted in the election, which he had.

In a note appended to a section about mail-in ballots being received without any record of them being sent, Logan's team wrote that the claim was "unintentionally misleading" and was intended only to serve as advocacy for door-to-door canvassing of voters to determine if they really voted.

The results of the hand count, whatever they are, were the result of a process that election experts have long described as flawed and highly error-prone. The audit team, which had no practical experience in elections-related work and often displayed a lack of knowledge about basic election processes and procedures, spun ballots on turntables while workers counted the votes in the races for president and U.S. Senate.

SUPPORT NEWS YOU TRUST.

DONATE

---

REPUBLISH

*Our stories may be republished online or in print under Creative Commons license CC BY-NC-ND 4.0. We ask that you edit only for style or to shorten, provide proper attribution and link to our web site. Please see our republishing guidelines for use of photos and graphics.*

---



## JEREMY DUDA

Jeremy Duda is a Phoenix native and began his career in journalism in 2003 after graduating from the University of Arizona. Jeremy Duda previously served as the Mirror's associate Editor. Prior to joining the Arizona Mirror, he worked at the Arizona Capitol Times, where he spent eight years covering the Governor's Office and two years as editor of the Yellow Sheet Report. Before that, he wrote for the Hobbs News-Sun of Hobbs, NM, and the Daily Herald of Provo, Utah. Jeremy is also the author of the history book "If This Be Treason: the American Rogues and Rebels Who Walked the Line Between Dissent and Betrayal."

MORE FROM AUTHOR

---

## RELATED NEWS




**Arizona 'audit': A multitude of unsubstantiated claims and...**

BY **JEREMY DUDA**

September 24, 2021



**'We have the watch': Stories from inside NORAD on 9/11**

BY **EMMA ATHENA**

September 11, 2021

INSIGHTFUL. INVESTIGATIVE. INDEPENDENT.

DEMOCRACY TOOLKIT

AZM

Amplifying the voices of Arizonans whose stories are unheard; shining a light on the relationships between people, power and policy; and holding public officials to account.

DEIJ Policy | Ethics Policy | Privacy Policy

Our stories may be republished online or in print under Creative Commons license CC BY-NC-ND 4.0. We ask that you edit only for style or to shorten, provide proper attribution and link to our web site.

© Arizona Mirror, 2022

# Exhibit 8

# The Proliferation of the "Federal Only Voter" List: How Arizona Ended up with 11,600 Voters in 2020 Who Have Never Proven Their Citizenship

by admin | Jan 25, 2022 | Elections, News and Updates



Most people paying attention to elections in Arizona have likely heard of Federal Only voters, but few probably know the complicated history of how we began bifurcating our voter registration system and allowing individuals to vote in federal elections, even if they haven't proven they are a US citizen.

## History

In 2004, Arizona voters overwhelmingly approved Proposition 200 which, in part, created the requirement that "the county recorder shall reject any application for registration that is not

accompanied by satisfactory evidence of United States citizenship." (A.R.S § 16-166(F)). At that time, Arizona was under what was known as preclearance, where the Department of Justice essentially held veto power over state election laws. The Documented Proof of Citizenship (DPOC) provision of Prop 200, however, did receive preclearance by the DOJ and went into effect in 2005. Arizona was immediately sued.

The problem was that in 1993 Congress passed the National Voter Registration Act (NVRA) which, among other mandates, created a federal voter registration form that each state must "accept and use."

The Election Assistance Commission (EAC) was given the authority to design this federal voter registration form, on which they were required to provide state specific instructions to account for the different requirements of each of the 50 states. Arizona's DPOC requirement, however, was left out and only a box remained for applicants to attest to their citizenship status – an honor system.

The suit brought against the state argued that this NVRA requirement to "accept and use" the federal form preempts Arizona from requiring any information from applicants beyond what is requested on the federal form. After years in and out of the courts, the case made its way to the US Supreme Court.

In 2013 the 7-2 decision of *Inter Tribal Council* held that the NVRA does preempt Arizona's DPOC requirement, and that Arizona may not request additional information beyond that which is required on the federal form and must, assuming the application is complete and the applicant is qualified, register an applicant to vote in federal elections.

Following this decision, Secretary of State Ken Bennet bifurcated our voter registration system to prevent individuals using federal forms from being registered to vote in all Arizona elections. And, importantly, Arizona continued to reject applications for registration made on the state voter registration form that did not include DPOC.

But Arizona was sued yet again in 2017 by the League of United Latin American Citizens (LULAC), this time alleging that by accepting federal forms for registration without DPOC (as the Supreme Court required), but rejecting state forms (as the same Court affirmed we could), Arizona was violating the 14th Amendment's Equal Protection Clause by treating applicants differently. Instead of going to trial, Secretary of State Michelle Reagan and Maricopa County Recorder Adrian Fontes agreed to settle the case with LULAC and enter into what is called a Consent Decree (a settlement that comes with the power of a court order).

In the settlement, Arizona maintained that it was not violating the Equal Protection Clause and that the practice of rejecting state forms for registration was not unconstitutional or preempted by federal law. However, the state agreed that it could accept these forms and register the

applicants as federal only voters and stay within the requirements of A.R.S § 16-166(F). In other words, they agreed in court that they could accept forms while somehow complying with Prop 200's mandate to reject them.

As a result, the practice in 2005 of rejecting all forms that did not include DPOC is now the opposite. Since 2019, Arizona has been registering applicants who use the state voter registration form or the federal form without DPOC as federal only voters, despite Arizona law requiring them to be rejected.

## Impact

In 2018, over 1,700 individuals voted in elections for federal office who had not provided DPOC. In 2020, the first election with the 2017 Consent Decree in effect, that number grew to more than 11,600. As of now, more than 36,000 individuals are registered to vote in elections for federal office, yet they have never provided DPOC. To contextualize these numbers, the 2020 statewide margin of victory for the Presidential election in Arizona was 10,457 votes.

## Solution

As can be seen, this is a complex issue – a ballot proposition, federal law, the US Constitution, lawsuits, a Supreme Court ruling, a Consent Decree, a federal voter registration form, and a state voter registration form. All intertwine and have, over the past two decades, whittled away at Prop 200 and led to the complete proliferation of a Federal Only voter list, allowing individuals who have not proven they are citizens to vote in our elections.

However, there is a solution that walks the fine legal line and ensures Arizona asserts its Constitutional authority to determine the qualifications of voters and safeguards our registration process. That solution is HB2492, sponsored by Rep. Jake Hoffman.

Next week, we will break down the provisions of the bill and outline how it will help restore the integrity of our voter rolls.

## Help Stop Illegals from Voting!

U.S Citizenship is a qualification for voting in both the Arizona constitution and Arizona law. Arizona voters overwhelmingly passed Proposition 200 in 2004 to ensure only US Citizens could register to vote by requiring that "the county recorder shall reject any application for registration that is not accompanied by satisfactory evidence of United States citizenship."

Unfortunately, through the well-funded lawfare of the left, this requirement has been whittled away and the Federal Only Voter list has exploded. HB2492 will safeguard our voter rolls by ensuring only qualified, U.S Citizens are registered to vote, are able vote in Presidential elections, and eligible to vote by mail.

**Will you sign our petition to PROTECT our voter registration process and SUPPORT HB2492?**

**SIGN THE PETITION**

Search

## Recent Posts

Prop 128 and 129 Are Necessary Reforms to Arizona's Ballot Measure Process

Arizonans Should Protect Their Wallets and Our State's Economy by Voting Yes on Prop 132

The Russiagate Hoax Lawyer's Lawsuit Against Voter Roll Maintenance Actually Makes the Case for Why We Need It

Arizona Free Enterprise Club Releases Next Round of Endorsements

Senator Sinema Should Stand with the People of Arizona and Reject the Inflation Reduction Act

## Recent Comments

## Archives

August 2022

July 2022

June 2022

May 2022

April 2022

March 2022

February 2022

January 2022

December 2021

November 2021

October 2021

September 2021

August 2021

July 2021

June 2021

May 2021

April 2021

March 2021

February 2021

January 2021

December 2020

November 2020

October 2020

September 2020

August 2020

July 2020

June 2020

May 2020

April 2020

March 2020

February 2020

January 2020

December 2019

November 2019

October 2019

September 2019

August 2019

July 2019

June 2019

May 2019

April 2019

March 2019

February 2019

January 2019

December 2018

November 2018

October 2018

September 2018

August 2018

July 2018

June 2018

May 2018

April 2018

March 2018

February 2018

January 2018

December 2017

November 2017

October 2017

September 2017

August 2017

July 2017

June 2017

May 2017

April 2017

March 2017

February 2017

January 2017

December 2016

November 2016

October 2016

September 2016

August 2016

July 2016

June 2016

May 2016

April 2016

March 2016

January 2016

December 2015

November 2015

October 2015

September 2015

August 2015

July 2015

June 2015

May 2015

April 2015

March 2015

February 2015

January 2015

December 2014

November 2014

October 2014

September 2014

August 2014

July 2014

June 2014

May 2014

April 2014

March 2014

February 2014

January 2014

November 2013

May 2012

April 2012

March 2012

February 2012

December 2011

November 2011

September 2011

August 2011

July 2011

June 2011

May 2011

April 2011

March 2011

February 2011

January 2011

December 2010

November 2010

October 2010

September 2010

August 2010

June 2010

April 2010

March 2010

January 2010

November 2009

October 2009

September 2009

August 2009

July 2009

## Categories

Corporate Welfare

Elections

Free Market

Misc

News and Updates

Prop 306

Regulatory

Tax

Uncategorized

## Meta

Log in

Entries feed

Comments feed

WordPress.org

## ABOUT US

The AZ Free Enterprise Club advocates for free markets and economic growth. Help us today in the endeavor to keep Arizona strong and vibrant.

## Contact Us

**Address:**

PO Box 32935 Phoenix, 85064

**Phone:**

602-385-0757

**Email:**

info@azfree.org

All Rights Reserved | Arizona Free Enterprise Club

# Exhibit 9

ARIZONA free enterprise CLUB

# How More Illegals Started Voting in AZ Elections and How House Bill 2492 Is Going to Fix It

by admin | Feb 8, 2022 | Elections, News and Updates




Two weeks ago, we outlined the history of the federal only voter list. As a summary, in 2004 Arizona voters approved Prop 200 which required county recorders to reject any application for registration that did not include Documentary Proof of Citizenship (DPOC). After passage, Arizona did reject applications without DPOC—those made on both the state voter registration form and federal voter registration form established by the National Voter Registration Act (NVRA) in 1993.

In 2014, Arizona began accepting federal voter registration forms that did not include DPOC and registering voters as “Federal Only Voters” eligible to vote for President, U.S House, and U.S. Senate following the 7-2 Supreme Court decision, *Inter Tribal Council*, deciding that the NVRA preempts Prop 200’s DPOC requirement.

Then, in 2019, Arizona began accepting all applications for registration that did not include DPOC after Secretary of State Michelle Reagan and Maricopa Recorder Adrian Fontes entered into a consent decree with the League of United Latin American Citizens (LULAC) agreeing that the state could accept applications for registration without DPOC and somehow stay in compliance with the Prop 200 requirement to the contrary – to reject them.

HB2492 tackles this complicated issue with five main provisions.

**First, HB2492 mandates that county recorders shall reject any application for registration made on our own state voter registration form that does not include DPOC.** If an election official accepts one of these applications, he or she is guilty of a class 5 felony.

Our power to do this is affirmed several times. In *Inter Tribal Council* Justice Scalia, for the court, writes, “States retain the flexibility to design and use their own registration forms.”

Additionally, the Elections Assistance Commission (EAC), to whom Congress delegated power to design the federal registration form, in 2006 responded to a request by Arizona to include our DPOC requirement on the federal form by affirming that “Arizona may apply Proposition 200 requirements to the use of its state registration form in Federal elections (if the form meets the minimum requirements of the National Voter Registration Act (NVRA).”

**Second, HB2492 requires election officials to check a multitude of databases to determine the citizenship status of an applicant using the federal form who did not include DPOC.** Again, in *Inter Tribal Council,* Justice Scalia writes that the NVRA “does not preclude States from ‘deny[ing] registration based on information in their possession establishing the applicant’s ineligibility’”.

Further, a 2014 response from the EAC on an additional request to include the DPOC requirement on the federal form acknowledged that the NVRA does not prevent us from rejecting applications if we ascertain information indicating the applicant is not a U.S citizen and outlines several databases states can use to check for the information. HB2492 utilizes each of these databases recommended by the EAC.

**Third, depending on what is found from the database checks there are three possible outcomes.** If the election official finds the applicant in a database and confirms that the applicant is a U.S. citizen, the applicant would be properly registered to vote. However, if the election official finds in a database that the applicant is not a U.S. citizen, the election official would be required to reject the application and inform the Attorney General and county attorney because the applicant lied on a voter registration form, which is a crime. Lastly, if election officials cannot find the applicant in any database, they are required to send a notice to the applicant requesting DPOC within 30 days.

**Fourth, HB2492 makes DPOC a requirement to vote in Presidential elections.** The power of states over the conduct of Presidential elections is plenary. Article II, Section 1, Clause 2 of the US Constitution states that "Each State shall appoint, in such Manner as the Legislature thereof may direct, a Number of Electors, equal to the whole Number of Senators and Representatives to which the State may be entitled in the Congress."

Going back further in court precedent, Chief Justice Fuller writes,"it is seen that from the formation of the government until now the practical construction of the clause has conceded plenary power to the state legislatures in the matter of the appointment of electors." *McPherson v. Blacker*, 146 U.S. 1 (1892).

**Fifth, HB2492 would make DPOC a requirement to vote early by mail.** There is no right to vote by mail and as recognized by Justice Alito in *Brnovich v DNC*, "Arizona law generally makes it easy to vote." And when the "totality of circumstances" is considered, HB2492 would not place a significant burden on voters by requiring DPOC to vote early by mail.

Taken together, each of these five provisions will largely prevent individuals from being registered if they do not provide DPOC and, as for persons already on the Federal Only Voter list, assert our constitutional power to prevent these individuals from voting for Presidential electors and from voting by mail.

## Help Stop Illegals from Voting!

U.S Citizenship is a qualification for voting in both the Arizona constitution and Arizona law. Arizona voters overwhelmingly passed Proposition 200 in 2004 to ensure only US Citizens could register to vote by requiring that "the county recorder shall reject any application for registration that is not accompanied by satisfactory evidence of United States citizenship."

Unfortunately, through the well-funded lawfare of the left, this requirement has been whittled away and the Federal Only Voter list has exploded. HB2492 will safeguard our voter rolls by ensuring only qualified, U.S Citizens are registered to vote, are able vote in Presidential elections, and eligible to vote by mail.

**Will you sign our petition to PROTECT our voter registration process and SUPPORT HB2492?**

**SIGN THE PETITION**

Search

## Recent Posts

Prop 128 and 129 Are Necessary Reforms to Arizona's Ballot Measure Process

Arizonans Should Protect Their Wallets and Our State's Economy by Voting Yes on Prop 132

The Russiagate Hoax Lawyer's Lawsuit Against Voter Roll Maintenance Actually Makes the Case for Why We Need It

Arizona Free Enterprise Club Releases Next Round of Endorsements

Senator Sinema Should Stand with the People of Arizona and Reject the Inflation Reduction Act

## Recent Comments

## Archives

August 2022

July 2022

June 2022

May 2022

April 2022

March 2022

February 2022

January 2022

December 2021

November 2021

October 2021

September 2021

August 2021

July 2021

June 2021

May 2021

April 2021

March 2021

February 2021

January 2021

December 2020

November 2020

October 2020

September 2020

August 2020

July 2020

June 2020

May 2020

April 2020

March 2020

February 2020

January 2020

December 2019

November 2019

October 2019

September 2019

August 2019

July 2019

June 2019

May 2019

April 2019

March 2019

February 2019

January 2019

December 2018

November 2018

October 2018

September 2018

August 2018

July 2018

June 2018

May 2018

April 2018

March 2018

February 2018

January 2018

December 2017

November 2017

October 2017

September 2017

August 2017

July 2017

June 2017

May 2017

April 2017

March 2017

February 2017

January 2017

December 2016

November 2016

October 2016

September 2016

August 2016

July 2016

June 2016

May 2016

April 2016

March 2016

January 2016

December 2015

November 2015

October 2015

September 2015

August 2015

July 2015

June 2015

May 2015

April 2015

March 2015

February 2015

January 2015

December 2014

November 2014

October 2014

September 2014

August 2014

July 2014

June 2014

May 2014

April 2014

March 2014

February 2014

January 2014

November 2013

May 2012

April 2012

March 2012

February 2012

December 2011

November 2011

September 2011

August 2011

July 2011

June 2011

May 2011

April 2011

March 2011

February 2011

January 2011

December 2010

November 2010

October 2010

September 2010

August 2010

June 2010

April 2010

March 2010

January 2010

November 2009

October 2009

September 2009

August 2009

July 2009

## Categories

Corporate Welfare

Elections

Free Market

Misc

News and Updates

Prop 306

Regulatory

Tax

Uncategorized

## Meta

Log in

Entries feed

Comments feed

WordPress.org

## ABOUT US

The AZ Free Enterprise Club advocates for free markets and economic growth. Help us today in the endeavor to keep Arizona strong and vibrant.

## Contact Us

**Address:**

PO Box 32935 Phoenix, 85064

**Phone:**

602-385-0757

**Email:**

info@azfree.org

All Rights Reserved | Arizona Free Enterprise Club

# Exhibit 10

MARK BRNOVICH
ATTORNEY GENERAL

OFFICE OF THE ATTORNEY GENERAL
STATE OF ARIZONA

August 1, 2022

The Honorable Karen Fann
Arizona State Senate
1700 West Washington, Room 205
Phoenix, Arizona 85007

RE: Status of Deceased Voter Allegations - November 3, 2020 General Election

Dear President Fann:

On April 6, 2022, I forwarded my first report responding to complaints received by our office from the Arizona State Senate and numerous other concerned individuals alleging election failures and potential misconduct that may have occurred in 2020. We concluded that the 2020 election in Maricopa County revealed certain vulnerabilities that should be addressed. As noted in the report, the work of the Attorney General's Election Integrity Unit (EIU) remains ongoing.

This letter serves as notice that we have now concluded our criminal investigation related to deceased voter allegations. Specifically, we received numerous complaints regarding allegations of dead voters during the 2020 elections, including those presented to us by you on September 24, 2021, following the completion of the Cyber Ninjas' audit. This specific complaint alleged that 282 individuals who were deceased prior to October 5, 2020, voted in the November 3, 2020 general election. After spending hundreds of hours reviewing these allegations, our investigators were able to determine that only one of the 282 individuals on the list was deceased at the time of the election. All other persons listed as deceased were found to be current voters.

Our agents investigated all individuals that Cyber Ninjas reported as dead, and many were very surprised to learn they were allegedly deceased. In addition, we received dead voter reports from other sources that were also reviewed. Three reports were submitted to the EIU that combined alleged 409 dead voters. One additional report, making no distinction between dead voters and dead registrants, included 5,943 registrations. Once again, these claims were thoroughly investigated and resulted in only a handful of potential cases. Some were so absurd the names and birthdates didn't even match the deceased, and others included dates of death after the election. While our office has successfully prosecuted other instances of dead voters, these cases were ultimately determined to be isolated instances.

We supported the Arizona Senate's ability to conduct an audit of Maricopa County's elections and understand the importance of reviewing the results. However, allegations of widespread deceased voters from the Senate Audit and other complaints received by the EIU are insufficient and not corroborated.

Respectfully yours,

Mark Brnovich
Attorney General

# Exhibit 11

# GENERAL EFFECTIVE DATES

| Year | Session | Effective Date | Notes |
|---|---|---|---|
| **2022** | | | |
| | Fifty-fifth Legislature - Second Regular Session | 09-24-2022 | |

| Year | Session | Effective Date | Notes |
|---|---|---|---|
| 2021 | | | |
| | Fifty-fifth Legislature - First Regular Session | 09-29-2021 | |
| | Fifty-fifth Legislature - First Special Session | 06-18-2021 | HB2001 Goes into effect at the signature of the Governor |
| 2020 | | | |
| | Fifty-fourth Legislature - Second Regular Session | 08-25-2020 | |
| 2019 | | | |
| | Fifty-fourth Legislature - First Regular Session | 08-27-2019 | |
| 2018 | | | |
| | Fifty-third Legislature - Second Regular Session | 08-03-2018 | |
| | Fifty-third Legislature - First Special Session | 04-26-2018 | |
| 2017 | | | |
| | Fifty-third Legislature - First Regular Session | 08-09-2017 | |
| 2016 | | | |
| | Fifty-second Legislature - Second Regular Session | 08-06-2016 | |
| 2015 | | | |
| | Fifty-second Legislature - First Special Session | 01-29-2016 | |
| | Fifty-second Legislature - First Regular Session | 07-03-2015 | |
| 2014 | | | |
| | Fifty-first Legislature - Second Special Session | 05-29-2014 | Effective upon the Governor's signature as both measures contained appropriations. |
| | Fifty-first Legislature - Second Regular Session | 07-24-2014 | |
| 2013 | | | |
| | Fifty-first Legislature - First Regular Session | 09-13-2013 | |
| | Fifty-first Legislature - First Special Session | 09-12-2013 | HB2001 and HB2008 were effective immediately according to Article 4, Part 1, Subsection 3 of the Arizona Constitution concerning General Appropriations. |
| 2012 | | | |
| | Fiftieth Legislature - Second Regular Session | 08-02-2012 | |

| Year | Session | Effective Date | Notes |
|---|---|---|---|
| 2011 | | | |
| | Fiftieth Legislature - Fourth Special Session | | |
| | Fiftieth Legislature - Third Special Session | | No Legislation |
| | Fiftieth Legislature - First Regular Session | 07-20-2011 | |
| | Fiftieth Legislature - Second Special Session | 05-17-2011 | |
| | Fiftieth Legislature - First Special Session | 01-21-2011 | |
| 2010 | | | |
| | Forty-ninth Legislature - Ninth Special Session | | |
| | Forty-ninth Legislature - Second Regular Session | 07-29-2010 | |
| | Forty-ninth Legislature - Eighth Special Session | 07-01-2010 | |
| | Forty-ninth Legislature - Seventh Special Session | 06-15-2010 | |
| | Forty-ninth Legislature - Sixth Special Session | 05-13-2010 | |
| 2009 | | | |
| | Forty-ninth Legislature - Fifth Special Session | 12-23-2009 | |
| | Forty-ninth Legislature - Fourth Special Session | 02-22-2010 | |
| | Forty-ninth Legislature - Third Special Session | 11-24-2009 | |
| | Forty-ninth Legislature - First Regular Session | 09-30-2009 | |
| | Forty-ninth Legislature - Second Special Session | 08-26-2009 | |
| | Forty-ninth Legislature - First Special Session | 05-02-2009 | SB1001 and SB1002 were effective immediately according to Article 4, Part 1, Subsection 3 of the Arizona Constitution concerning General Appropriations. |
| 2008 | | | |
| | Forty-eighth Legislature - Second Regular Session | 09-26-2008 | |
| 2007 | | | |
| | Forty-eighth Legislature - First Regular Session | 09-19-2007 | |

Session

| Year | Session | Effective Date | Notes |
|---|---|---|---|
| 2006 | | | |
| | Forty-seventh Legislature - Second Regular Session | 09-21-2006 | |
| | Forty-seventh Legislature - First Special Session | | No Legislation |
| 2005 | | | |
| | Forty-seventh Legislature - First Regular Session | 08-12-2005 | |
| 2004 | | | |
| | Forty-sixth Legislature - Second Regular Session | 08-25-2004 | |
| 2003 | | | |
| | Forty-sixth Legislature - Second Special Session | 03-13-2004 | |
| | Forty-sixth Legislature - First Regular Session | 09-18-2003 | |
| | Forty-sixth Legislature - First Special Session | 06-16-2003 | |
| 2002 | | | |
| | Forty-fifth Legislature - Sixth Special Session | 12-05-2002 | |
| | Forty-fifth Legislature - Fifth Special Session | 10-31-2002 | |
| | Forty-fifth Legislature - Second Regular Session | 08-22-2002 | |
| | Forty-fifth Legislature - Fourth Special Session | | No Legislation |
| | Forty-fifth Legislature - Third Special Session | 06-19-2002 | |
| 2001 | | | |
| | Forty-fifth Legislature - Second Special Session | 03-20-2002 | |
| | Forty-fifth Legislature - First Special Session | 09-28-2001 | |
| | Forty-fifth Legislature - First Regular Session | 08-09-2001 | |
| 2000 | | | |
| | Forty-fourth Legislature - Seventh Special Session | 12-14-2000 | |

| Year | Session | Effective Date | Notes |
|---|---|---|---|
| | Forty-fourth Legislature - Sixth Special Session | 10-20-2000 | |
| | Forty-fourth Legislature - Fifth Special Session | | (HB#2003-- 06/30/2000 SB#1007---Ballot Proposition 11/27/2000) |
| | Forty-fourth Legislature - Second Regular Session | 07-18-2000 | |
| | Forty-fourth Legislature - Fourth Special Session | 05-18-2000 | |
| **1999** | | | |
| | Forty-fourth Legislature - Third Special Session | | No Legislation |
| | Forty-fourth Legislature - Second Special Session | 09-21-1999 | |
| | Forty-fourth Legislature - First Regular Session | 08-06-1999 | |
| | Forty-fourth Legislature - First Special Session | 07-07-1999 | |
| **1998** | | | |
| | Forty-third Legislature - Sixth Special Session | 12-28-1998 | |
| | Forty-third Legislature - Fifth Special Session | 10-07-1998 | |
| | Forty-third Legislature - Second Regular Session | 08-21-1998 | |
| | Forty-third Legislature - Fourth Special Session | 08-13-1998 | |
| | Forty-third Legislature - Third Special Session | 07-08-1998 | |
| **1997** | | | |
| | Forty-third Legislature - Second Special Session | 02-13-1998 | |
| | Forty-third Legislature - First Regular Session | 07-21-1997 | |
| | Forty-third Legislature - First Special Session | 06-26-1997 | |
| **1996** | | | |
| | Forty-second Legislature - Seventh Special Session | 10-17-1996 | |
| | Forty-second Legislature - Sixth Special Session | 09-25-1996 | |
| | [illegible] | | |

| Year | Session | Effective Date | Notes |
|---|---|---|---|
| | Forty-second Legislature - Second Regular Session | 07-20-1996 | |
| | Forty-second Legislature - Fifth Special Session | 06-24-1996 | |
| **1995** | | | |
| | Forty-second Legislature - Fourth Special Session | 03-13-1996 | |
| | Forty-second Legislature - Third Special Session | 10-17-1995 | |
| | Forty-second Legislature - First Regular Session | 07-13-1995 | |
| | Forty-Second Legislature - Second Special Session | 06-27-1995 | |
| | Forty-Second Legislature - First Special Session | 06-15-1995 | |
| **1994** | | | |
| | Forty-first Legislature - Ninth Special Session | 09-16-1994 | |
| | Forty-first Legislature - Second Regular Session | 07-17-1994 | |
| | Forty-first Legislature - Eighth Special Session | 06-29-1994 | |
| **1993** | | | |
| | Forty-first Legislature - Seventh Special Session | 03-18-1994 | |
| | Forty-first Legislature - Sixth Special Session | 12-10-1994 | |
| | Forty-first Legislature - Fifth Special Session | 12-28-1993 | |
| | Forty-first Legislature - Fourth Special Session | 09-02-1993 | |
| | Forty-first Legislature - Third Special Session | | No Legislation |
| | Forty-first Legislature - First Regular Session | 07-17-1993 | |
| | Forty-first Legislature - Second Special Session | 06-15-1993 | |
| | Forty-first Legislature - First Special Session | 06-03-1993 | |
| **1992** | | | |

| Year | Session | Effective Date | Notes |
|---|---|---|---|
| | Fortieth Legislature - Ninth Special Session | 09-30-1992 | |
| | Fortieth Legislature - Second Regular Session | 09-30-1992 | |
| | Fortieth Legislature - Eighth Special Session | 09-26-1992 | |
| | Fortieth Legislature - Sixth Special Session | | No Legislation |
| | Fortieth Legislature - Seventh Special Session | 06-30-1992 | |
| | Fortieth Legislature - Fifth Special Session | 05-21-1992 | |
| **1991** | | | |
| | Fortieth Legislature - Fourth Special Session | 03-16-1992 | |
| | Fortieth Legislature - Third Special Session | 02-06-1992 | |
| | Fortieth Legislature - Second Special Session | 09-17-1991 | |
| | Fortieth Legislature - First Regular Session | 09-21-1991 | |
| | Fortieth Legislature - First Special Session | 05-04-1991 | |
| **1990** | | | |
| | Thirty-ninth Legislature - Fifth Special Session | 11-19-1990 | |
| | Thirty-ninth Legislature - Third Special Session | 09-27-1990 | |
| | Thirty-ninth Legislature - Second Regular Session | 09-27-1990 | |
| | Thirty-ninth Legislature - Fourth Special Session | | Referred to the ballot by the people and was rejected by the people at the 1990 General Election 11-19-90 |
| **1989** | | | |
| | Thirty-ninth Legislature - Second Special Session | 02-21-1990 | |
| | Thirty-ninth Legislature - First Special Session | 12-22-1989 | |
| | Thirty-ninth Legislature - First Regular Session | 09-15-1989 | |

© 2022 Arizona State Legislature. All Rights Reserved

# Exhibit 12

House Engrossed Senate Bill

early ballots; visually impaired voters

State of Arizona
Senate
Fifty-fifth Legislature
Second Regular Session
2022

## CHAPTER 174

# SENATE BILL 1638

AN ACT

AMENDING SECTION 16-127, ARIZONA REVISED STATUTES, AS ADDED BY LAWS 2022, CHAPTER 99, SECTION 5; AMENDING SECTIONS 16-442.01 AND 16-541, ARIZONA REVISED STATUTES; RELATING TO EARLY VOTING.

(TEXT OF BILL BEGINS ON NEXT PAGE)

Be it enacted by the Legislature of the State of Arizona:

Section 1. Section 16-127, Arizona Revised Statutes, as added by Laws 2022, chapter 99, section 5, is amended to read:

16-127. Federal only voters; early ballot; eligibility; exemption

A. Notwithstanding any other law:

1. A person who has registered to vote and who has not provided satisfactory evidence of citizenship as prescribed by section 16-166~~, subsection F~~ is not eligible to vote in presidential elections.

2. A person who has not provided satisfactory evidence of citizenship pursuant to section 16-166~~, subsection F~~ and who is eligible to vote only for federal offices is not eligible to receive an early ballot by mail.

B. This section does not apply to an absent uniformed services voter or overseas voter as defined in the uniformed and overseas citizens absentee voting act (P.L. 99-410; 100 Stat. 924; 52 United States Code section 20310), as amended by the Ronald W. Reagan national defense authorization act for fiscal year 2005 (P.L. 108-375).

Sec. 2. Section 16-442.01, Arizona Revised Statutes, is amended to read:

16-442.01. Accessible voting technology; recommendations; certification; applicability

A. On completion of the certification process pursuant to this section and section 16-442, the secretary of state shall require that voting systems that are used by entities that are governed by section 16-204, but not including cities and towns with a population of less than twenty thousand persons, provide persons who are blind or visually impaired with access to voting that is equivalent to that provided to persons who are not blind or visually impaired AND SHALL PROVIDE AN ACCESSIBLE VOTE BY UNITED STATES MAIL OPTION FOR PERSONS WHO ARE BLIND OR HAVE A VISUAL IMPAIRMENT.

B. For the purposes of this section:

1. A voting system that provides the voter with the ability to cast and verify by both visual and nonvisual methods all of the selections that were made by that voter is deemed to provide equivalent access.

2. Nonvisual methods for casting and verifying a selection made on a voting system include the use of synthesized speech, braille and other output methods that do not require sight.

C. The secretary of state shall consult with and obtain recommendations regarding voting systems from nonprofit organizations that represent persons who are blind or visually impaired, persons with expertise in accessible software, hardware and other technology, county and local election officials and other persons deemed appropriate by the secretary of state. After receiving recommendations, the secretary of state shall submit to the committee established pursuant to section 16-442

one or more voting systems that provide equivalent access pursuant to this section for possible certification for use in this state.

D. Subsection A of this section applies to voting systems that are purchased or upgraded on or after January 1, 2006.

Sec. 3. Section 16-541, Arizona Revised Statutes, is amended to read:

16-541. Early voting

A. Any election called pursuant to the laws of this state shall provide for early voting, INCLUDING VOTING BY THE USE OF AN ACCESSIBLE VOTE BY UNITED STATES MAIL OPTION FOR PERSONS WHO ARE BLIND OR HAVE A VISUAL IMPAIRMENT. Any qualified elector may vote by early ballot.

B. A qualified elector of a special district organized pursuant to title 48 shall be permitted to vote early in any special district mail ballot election as provided in article 8.1 of this chapter.

Sec. 4. Effective date

A. Laws 2022, chapter 99 is effective from and after December 31, 2022.

B. Section 16-127, Arizona Revised Statutes, as amended by this act, is effective from and after December 31, 2022.

APPROVED BY THE GOVERNOR APRIL 22, 2022.

FILED IN THE OFFICE OF THE SECRETARY OF STATE APRIL 22, 2022.

# Exhibit 13

February 9, 2022 meeting of the Arizona House Committee on Government & Elections, available at

https://www.azleg.gov/videoplayer/?clientID=6361162879&eventID=2022021045.

The referenced section of the meeting can be found starting at approximately 2 hours and 58 minutes into the video

# Exhibit 14

Senate Engrossed House Bill

voter registration; cancellations; causes

State of Arizona
House of Representatives
Fifty-fifth Legislature
Second Regular Session
2022

# HOUSE BILL 2617

AN ACT

AMENDING SECTION 16-165, ARIZONA REVISED STATUTES, AS AMENDED BY LAWS 2022, CHAPTER 99, SECTION 8; AMENDING SECTION 21-314, ARIZONA REVISED STATUTES; RELATING TO VOTER REGISTRATION.

(TEXT OF BILL BEGINS ON NEXT PAGE)

Be it enacted by the Legislature of the State of Arizona:

Section 1. Section 16-165, Arizona Revised Statutes, as amended by Laws 2022, chapter 99, section 8, is amended to read:

16-165. Causes for cancellation; report

A. The county recorder shall cancel a registration:

1. At the request of the person registered.

2. When the county recorder ~~knows of the death of~~ IS INFORMED AND CONFIRMS THAT the person registered IS DEAD.

3. If the person has been adjudicated an incapacitated person as defined in section 14-5101.

4. When the person registered has been convicted of a felony, and the judgment of conviction has not been reversed or set aside. The county recorder shall cancel the registration on receipt of notice of a felony conviction from the court or from the secretary of state or when reported by the elector on a signed juror questionnaire that is completed pursuant to section 21-314.

5. On production of a certified copy of a judgment directing a cancellation to be made.

6. Promptly after the election if the person registered has applied for a ballot pursuant to section 16-126.

7. When a person has been on the inactive voter list and has not voted during the time periods prescribed in section 16-166, subsection C.

8. When the county recorder receives written information from the person registered that the person has a change of residence within the county and the person does not complete and return a new registration form within twenty-nine days after the county recorder mails notification of the need to complete and return a new registration form with current information.

9. When the county recorder receives written information from the person registered that the person has a change of address outside the county.

~~10. When the county recorder receives and confirms information that the person registered is not a United States citizen.~~

10. WHEN THE COUNTY RECORDER RECEIVES AND CONFIRMS INFORMATION THAT THE PERSON REGISTERED:

(a) IS NOT A UNITED STATES CITIZEN, INCLUDING WHEN THE COUNTY RECORDER RECEIVES A SUMMARY REPORT FROM THE JURY COMMISSIONER OR JURY MANAGER PURSUANT TO SECTION 21-314 INDICATING THAT A PERSON WHO IS REGISTERED TO VOTE HAS STATED THAT THE PERSON IS NOT A UNITED STATES CITIZEN.

(b) HAS BEEN ISSUED A DRIVER LICENSE OR THE EQUIVALENT OF AN ARIZONA NONOPERATING IDENTIFICATION LICENSE FROM ANOTHER STATE. THE DEPARTMENT OF TRANSPORTATION SHALL FURNISH MONTHLY TO THE SECRETARY OF STATE A LIST OF PERSONS WHO THE DEPARTMENT HAS BEEN NOTIFIED HAVE BEEN ISSUED A DRIVER LICENSE OR THE EQUIVALENT OF AN ARIZONA NONOPERATING

IDENTIFICATION LICENSE IN ANOTHER STATE. WITHIN TEN DAYS AFTER RECEIVING THE LIST OF PERSONS FROM THE DEPARTMENT OF TRANSPORTATION, THE SECRETARY OF STATE SHALL PROVIDE TO THE APPROPRIATE COUNTY RECORDER A LIST OF REGISTERED VOTERS IN THAT COUNTY WHO HAVE BEEN ISSUED A DRIVER LICENSE OR THE EQUIVALENT OF AN ARIZONA NONOPERATING IDENTIFICATION LICENSE FROM ANOTHER STATE.

(c) IS OTHERWISE NOT A QUALIFIED ELECTOR AS PRESCRIBED BY SECTION 16-101 IF THE COUNTY RECORDER CONFIRMS THE INFORMATION THAT PROVIDES THE BASIS FOR DETERMINING THAT THE PERSON IS NOT A QUALIFIED ELECTOR.

B. If the county recorder cancels a registration pursuant to subsection A, paragraph 8 of this section, the county recorder shall send the person notice that the registration has been ~~cancelled~~ CANCELED and a registration form with the information described in section 16-131, subsection C attached to the form.

C. BEFORE THE COUNTY RECORDER CANCELS A REGISTRATION:

1. PURSUANT TO SUBSECTION A, PARAGRAPH 10, SUBDIVISION (a) OF THIS SECTION, THE COUNTY RECORDER SHALL SEND THE PERSON NOTICE THAT THE REGISTRATION WILL BE CANCELED IN NINETY DAYS UNLESS THE PERSON PROVIDES SATISFACTORY EVIDENCE THAT THE PERSON IS QUALIFIED. IF THE PERSON REGISTERED DOES NOT PROVIDE SATISFACTORY EVIDENCE WITHIN NINETY DAYS, THE COUNTY RECORDER SHALL CANCEL THE REGISTRATION AND NOTIFY THE COUNTY ATTORNEY AND ATTORNEY GENERAL FOR POSSIBLE INVESTIGATION.

2. PURSUANT TO SUBSECTION A, PARAGRAPH 10, SUBDIVISION (b) OF THIS SECTION, THE COUNTY RECORDER SHALL SEND NOTICE THAT THE REGISTRATION WILL BE CANCELED IN NINETY DAYS UNLESS THE PERSON PROVIDES SATISFACTORY EVIDENCE THAT THE PERSON IS QUALIFIED. THE COUNTY RECORDER SHALL INCLUDE IN THE NOTICE THE REASON FOR THE CANCELLATION AND SHALL SEND IT TO BOTH OF THE FOLLOWING:

(a) THE ADDRESS IN THE PERSON'S VOTER REGISTRATION FILE.

(b) THE ADDRESS SHOWN IN THE DEPARTMENT OF TRANSPORTATION'S RECORDS FROM THE ISSUANCE OF A DRIVER LICENSE OR OTHER STATE-ISSUED IDENTIFICATION IN ANOTHER STATE, IF ACCESSIBLE.

3. PURSUANT TO SUBSECTION A, PARAGRAPH 10, SUBDIVISION (c) OF THIS SECTION, THE COUNTY RECORDER SHALL SEND THE PERSON NOTICE THAT THE REGISTRATION WILL BE CANCELED IN NINETY DAYS UNLESS THE PERSON PROVIDES SATISFACTORY EVIDENCE THAT THE PERSON IS QUALIFIED. IF THE PERSON REGISTERED DOES NOT PROVIDE SATISFACTORY EVIDENCE WITHIN NINETY DAYS, THE COUNTY RECORDER SHALL CANCEL THE REGISTRATION.

~~C.~~ D. When proceedings in the superior court or the United States district court result in a person being declared incapable of taking care of himself and managing his property, and for whom a guardian of the person and estate is appointed, result in such person being committed as an insane person or result in a person being convicted of a felony, the clerk of the superior court in the county in which those proceedings occurred shall file with the secretary of state an official notice of that

fact. The secretary of state shall notify the appropriate county recorder and the recorder shall cancel the name of the person on the register. Such notice shall name the person covered, shall give the person's date and place of birth if available, the person's social security number, if available, the person's usual place of residence, the person's address and the date of the notice, and shall be filed with the recorder of the county where the person last resided.

~~D.~~ E. Each month the department of health services shall transmit to the secretary of state without charge a record of the death of every resident of the state reported to the department within the preceding month. This record shall include only the name of the decedent, the decedent's date of birth, the decedent's date of death, the decedent's social security number, if available, the decedent's usual legal residence at the time of death and, if available, the decedent's father's name or mother's maiden name. The secretary of state shall use the record for the sole purpose of canceling the names of deceased persons from the statewide voter registration database. In addition, the department of health services shall annually provide to the secretary of state from the statewide electronic death registration system without charge a record of all deaths of residents of this state that are reported to the department of health services. The records transmitted by the department of health services shall include only the name of the decedent, the decedent's date of birth, the decedent's social security number, if available, the decedent's usual legal residence at the time of death and, if available, the decedent's father's name or mother's maiden name. The secretary of state shall compare the records of deaths with the statewide voter registration database. Public access to the records is prohibited. Use of information from the records for purposes other than those required by this section is prohibited. The name of each deceased person shall promptly be canceled from the statewide voter registration database and the secretary of state shall notify the appropriate county recorder and the recorder shall cancel the name of the person from the register.

F. EACH MONTH THE SECRETARY OF STATE SHALL COMPARE THE STATEWIDE VOTER REGISTRATION DATABASE TO THE DRIVER LICENSE DATABASE MAINTAINED BY THE DEPARTMENT OF TRANSPORTATION. THE SECRETARY OF STATE SHALL NOTIFY THE APPROPRIATE COUNTY RECORDER IF A PERSON WHO IS REGISTERED TO VOTE IN THAT COUNTY HAS CHANGED THE PERSON'S RESIDENCE ADDRESS OR IS NOT A UNITED STATES CITIZEN.

G. TO THE EXTENT PRACTICABLE, EACH MONTH THE COUNTY RECORDER SHALL COMPARE THE COUNTY'S VOTER REGISTRATION DATABASE TO THE SOCIAL SECURITY ADMINISTRATION DATABASE.

H. TO THE EXTENT PRACTICABLE, EACH MONTH THE COUNTY RECORDER SHALL COMPARE PERSONS WHO ARE REGISTERED TO VOTE IN THAT COUNTY AND WHO THE COUNTY RECORDER HAS REASON TO BELIEVE ARE NOT UNITED STATES CITIZENS WITH THE SYSTEMATIC ALIEN VERIFICATION FOR ENTITLEMENTS PROGRAM MAINTAINED BY

THE UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES TO VERIFY THE CITIZENSHIP STATUS OF THE PERSONS REGISTERED.

I. FOR PERSONS WHO ARE REGISTERED TO VOTE WITHOUT SATISFACTORY EVIDENCE OF CITIZENSHIP AS PRESCRIBED BY SECTION 16-166, THE COUNTY RECORDER SHALL COMPARE THE ELECTRONIC VERIFICATION OF VITAL EVENTS SYSTEM MAINTAINED BY A NATIONAL ASSOCIATION FOR PUBLIC HEALTH STATISTICS AND INFORMATION SYSTEMS, IF ACCESSIBLE, WITH THE INFORMATION ON THE PERSON'S VOTER REGISTRATION FILE.

J. THE COUNTY RECORDER SHALL REGULARLY REVIEW RELEVANT CITY, TOWN, COUNTY, STATE AND FEDERAL DATABASES TO WHICH THE COUNTY RECORDER HAS ACCESS TO ENSURE THAT PERSONS WHO ARE REGISTERED TO VOTE ARE QUALIFIED ELECTORS PURSUANT TO SECTION 16-101.

K. THE SECRETARY OF STATE SHALL REPORT TO THE LEGISLATURE AT THE END OF EACH QUARTER THE NUMBER OF DEATHS REPORTED TO THE SECRETARY OF STATE BY THE DEPARTMENT OF HEALTH SERVICES AND THE NUMBER OF VOTER REGISTRATION CANCELLATION NOTICES ISSUED BY THE SECRETARY OF STATE TO THE COUNTY RECORDERS AS A RESULT OF THOSE REPORTS.

Sec. 2. Section 21-314, Arizona Revised Statutes, is amended to read:

21-314. Juror questionnaire

A. The jury commissioner or jury manager shall use a questionnaire to determine whether a person is qualified to serve or has valid grounds to be excused or postponed from service. The jury commissioner or jury manager may require additional information from the person to make this determination. The jury commissioner or jury manager may determine juror qualifications, excuses and postponements at the same time.

B. The jury commissioner or jury manager may destroy the fully answered questionnaire ninety days after the commissioner or manager receives it.

C. The juror questionnaire may be included in the same mailing as the summons to attend the court as a juror or the questionnaire may be mailed before the summons.

D. The jury commissioner or jury manager may investigate the accuracy of the answers to the questionnaire and may call on law enforcement agencies and the county attorney for assistance in an investigation.

E. THE JURY COMMISSIONER OR JURY MANAGER SHALL FORWARD TO THE SECRETARY OF STATE AND THE COUNTY RECORDER A SUMMARY REPORT DERIVED FROM JURY QUESTIONNAIRE DATA THAT CONTAINS INFORMATION THAT INDICATES THAT A PERSON IS NOT A UNITED STATES CITIZEN OR DOES NOT RESIDE IN THE COUNTY. THE REPORT SHALL ONLY CONTAIN THE INFORMATION THAT IS NECESSARY FOR THE COUNTY RECORDER TO ACCURATELY IDENTIFY THE PERSON IN THE VOTER REGISTRATION DATABASE.