LATHAM & WATKINS LLP
Sadik Huseny (pro hac vice)
*sadik.huseny@lw.com*
Amit Makker (pro hac vice)
*amit.makker@lw.com*
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-6538
Telephone: (415) 391-0600
Facsimile: (415) 395-8095

ASIAN AMERICANS ADVANCING JUSTICE-AAJC
Niyati Shah (pro hac vice)
*nshah@advancingjustice-aajc.org*
Terry Ao Minnis (pro hac vice)
*tminnis@advancingjustice-aajc.org*
1620 L Street NW, Suite 1050
Washington, DC 20036
Telephone: (202) 296-2300
Facsimile: (202) 296-2318

SPENCER FANE
Andrew M. Federhar (No. 006567)
*afederhar@spencerfane.com*
2415 East Camelback Road, Suite 600
Phoenix, AZ 85016
Telephone: (602) 333-5430
Facsimile: (602) 333-5431

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA

Arizona Asian American Native Hawaiian And Pacific Islander For Equity Coalition,

Plaintiff,

vs.

Katie Hobbs, in her official capacity as Arizona Secretary of State; et al.,

Defendants.

Case No.: CV-22-01381-PHX-SRB

**OPPOSITION TO THE STATE'S CONSOLIDATED MOTION TO DISMISS PLAINTIFFS' COMPLAINTS UNDER RULES 12(B)(1) AND (B)(6)**

## TABLE OF CONTENTS


Page

I. INTRODUCTION ..... 1

II. LEGAL STANDARD AND PROCEDURAL POSTURE ..... 2

III. ARGUMENT ..... 2

A. The AG Does Not Establish That It Has Standing To Dismiss Plaintiff's Claims Against Other Defendants ..... 2

B. The AG's Article III Standing Challenges Fail ..... 3

1. Plaintiff Has Organizational Standing To Bring Its Claims ..... 3

2. Plaintiff's Claims Are Ripe For Adjudication ..... 4

C. The AG's Attack On Plaintiff's NVRA Claims Rests On False Premises And Fails To Address Plaintiff's Actual Allegations ..... 6

D. The AG's Challenges To Plaintiff's Constitutional Claims Fail ..... 7

1. Plaintiff Adequately Alleges Its Undue Burden Claims ..... 7

a. The AG Mischaracterizes The Alleged Burdens ..... 7

b. The Purported State Interests Are Pretextual And Do Not Justify The Burdens Imposed ..... 9

2. Plaintiff Adequately Alleges Its Procedural Due Process Claims ..... 10

3. Plaintiff Adequately Alleges Its Equal Protection Claims ..... 11

a. The Laws Facially Discriminate Based On National Origin, Warranting Strict Scrutiny ..... 12

b. Plaintiff Adequately Alleges Discriminatory Intent ..... 13

c. Plaintiff Has Sufficiently Pled The Arbitrary and Disparate Treatment of Applicants ..... 15

E. The AG's Challenge To Plaintiff's Civil Rights Act Claim Fails ..... 15

1. Plaintiff Has A Private Right Of Action ..... 15

2. State Laws Are Not Immune To § 10101 Claims ..... 16

3. Place of Birth is Immaterial to Determining Voter Eligibility ..... 17

IV. CONCLUSION ..... 17

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Abbott v. Perez*,
138 S. Ct. 2305 (2018) .......... 15

*AIDS Healthcare Found. v. Douglas*,
457 F. App'x 676 (9th Cir. 2011) .......... 15

*Anderson v. Celebrezze*,
460 U.S. 780 .......... 7, 11

*Arce v. Douglas*,
793 F.3d 968 (9th Cir. 2015) .......... 13, 14

*Arcia v. Fla. Sec'y of State*,
772 F.3d 1335 (11th Cir. 2014) .......... 5, 13

*Ariz. Democratic Party v. Hobbs*,
18 F.4th 1179 (9th Cir. 2021) .......... 9, 10

*Ariz. Right to Life PAC v. Bayless*,
320 F.3d 1002 (9th Cir. 2003) .......... 4

*Associated Builders & Contractors of Cal. Coop. Comm., Inc. v. Becerra*,
231 F. Supp. 3d 810 (S.D. Cal. 2017) .......... 4

*Buckley v. Am. Constitutional Law Found., Inc.*,
525 U.S. 182 (1999) (O'Connor, J. concurring) .......... 8

*Burdick v. Takushi*,
504 U.S. 428 (1992) .......... 11

*Burroughs v. United States*,
290 U.S. 534 (1934) .......... 6

*Cnty. of Santa Clara v. Trump*,
250 F. Supp. 3d 497 (N.D. Cal. 2017) .......... 5

*Condon v. Reno*,
913 F. Supp. 946 (D.S.C. 1995) .......... 16

*Cont'l Ins. Co. v. Daikin Applied Am., Inc.*,
No. 17-cv-552, 2019 WL 6873797 (D. Minn. Dec. 17, 2019) .......... 5

Page(s)

*Crawford v. Marion Cnty. Election Bd.*,
553 U.S. 181 (2008)........................................8, 10

*Davis v. Commonwealth Election Comm'n*,
No. 1-14-CV-00002, 2014 WL 2111065 (D. N. Mar. I. May 20, 2014), *aff'd*, 844 F.3d 1087 (9th Cir. 2016)........................................16

*Dekom v. New York*,
No. 12-CV-1318 JS ARL, 2013 WL 3095010 (E.D.N.Y. June 18, 2013), *aff'd*, 583 F. App'x 15 (2d Cir. 2014)........................................16

*Dudum v. Arntz*,
640 F.3d 1098 (9th Cir. 2011)........................................7

*Fair Employment Council of Greater Washington, Inc. v. BMC Marketing Corp.*,
28 F.3d 1268 (D.C. Cir. 1994)........................................3, 4

*Fair Housing of Marin v. Combs*,
285 F.3d 899 (9th Cir. 2002)........................................4

*Fish v. Schwab*,
957 F.3d 1105 (10th Cir. 2020), *cert. denied*, 141 S. Ct. 965 (2020)........................................9, 10

*Fisher v. Univ. of Tex.*,
570 U.S. 297 (2013)........................................13

*Fla. State Conf. of N.A.A.C.P. v. Browning*,
522 F.3d 1153 (11th Cir. 2008)........................................4, 5

*Flemming v. Nestor*,
363 U.S. 603 (1960)........................................15

*Frank v. Walker*,
768 F.3d 744 (7th Cir. 2014)........................................9

*Freeman v. City of Santa Ana*,
68 F.3d 1180 (9th Cir. 1995)........................................11, 12

*Friendly House v. Whiting*,
No. CV 10-1061, 2010 WL 11452277 (D. Ariz. Oct. 8, 2010)........................................5

*U.S. ex rel. Giles v. Sardie*,
191 F. Supp. 2d 1117 (C.D. Cal. 2000)........................................3

*Gonzalez v. Arizona*,
677 F.3d 383 (9th Cir. 2012) (*en banc*)........................................8, 14

TABLE OF AUTHORITIES

Page(s)

*Jackson Water Works, Inc. v. Pub. Utils. Comm'n of State of Cal.*,
793 F.2d 1090 (9th Cir. 1986) .......... 11

*La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*,
624 F.3d 1083 (9th Cir. 2010) .......... 3

*League of Women Voters of Fla., Inc. v. Lee*,
No. 4:21CV186-MW/MAF, 2022 WL 969538 (N.D. Fla. Mar. 31, 2022) .......... 15

*Mantin v. Broadcast Music, Inc.*,
248 F.2d 530 (9th Cir. 1957) .......... 2

*Martin v. Crittendon*,
347 F. Supp. 3d 1302 (N.D. Ga. 2018) .......... 17

*Mecinas v. Hobbs*,
30 F.4th 890 (9th Cir. 2022) .......... 2, 7

*Miller v. Johnson*,
115 S. Ct. 2475 (1995) .......... 15

*Mitchell v. Washington*,
818 F.3d 436 (9th Cir. 2016) .......... 12

*Nat'l Council of La Raza v. Cegavske*,
800 F.3d 1032 (9th Cir. 2015) .......... 4

*Ohio Coal. for the Homeless v. Husted*,
837 F.3d 612 (6th Cir. 2016) .......... 16

*Oregon v. Mitchell*,
400 U.S. 112 (1970) .......... 6

*Organization for Black Struggle v. Ashcroft*,
493 F. Supp. 3d 790 (W.D. Mo. 2020) .......... 16

*Commonwealth of Pennsylvania v. State of W. Virginia*,
262 U.S. 553 (1923), *aff'd*, 263 U.S. 350 (1923) .......... 5

*Painter v. Katerra Inc.*,
No. CV-21-00308, 2021 WL 2589736 (D. Ariz. Apr. 5, 2021) .......... 3

*Pers. Adm'r of Mass. v. Feeney*,
442 U.S. 256 (1979) .......... 11, 13

TABLE OF AUTHORITIES

Page(s)

*Puppies 'N Love v. City of Phx.*,
No. CV-14-00073, 2014 WL 1329296 (D. Ariz. Apr. 2, 2014) .................................... 5

*Reddix v. Lucky*,
252 F.2d 930 (5th Cir. 1958) ......................................................................................... 16

*Reg'l Rail Reorg. Act Cases*,
419 U.S. 102 (1974)......................................................................................................... 4

*Reynolds v. Sims*,
377 U.S. 533 (1964)....................................................................................................... 11

*Rodriguez v. City of San Jose*,
930 F.3d 1123 (9th Cir. 2019) ........................................................................................ 4

*San Luis & Delta-Mendoza Water Auth. v. Salazar*,
638 F.3d 1163 (9th Cir. 2011) ........................................................................................ 4

*Sanders Cnty. Republican Cent. Comm. v. Bullock*,
698 F.3d 741 (9th Cir. 2012) ........................................................................................... 8

*Schwier v. Cox*,
340 F.3d 1284 (11th Cir. 2003) ............................................................................... 15, 16

*Sixth Dist. of Afr. Methodist Episcopal Church v. Kemp*,
574 F. Supp. 3d 1260 (N.D. Ga. 2021)......................................................................... 17

*Soltysik v. Padilla*,
910 F.3d 438 (9th Cir. 2018) ................................................................................... 2, 7, 9

*Taylor v. Howe*,
225 F.3d 993 (8th Cir. 2000) ......................................................................................... 16

*Texas v. United States*,
523 U.S. 296 (1998)......................................................................................................... 5

*Thomas v. Anchorage Equal Rights Commission*,
220 F.3d 1134 (9th Cir. 2000) ........................................................................................ 4

*United States v. Alvarez*,
567 U.S. 709 (2012) (Breyer, J. concurring) ................................................................. 8

*United States v. Stevens*,
559 U.S. 460 (2010)......................................................................................................... 5

TABLE OF AUTHORITIES

Page(s)

*Veasey v. Abbot*,
830 F.3d 216 (5th Cir. 2016) .......... 15

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*,
429 U.S. 252 (1977) .......... 12, 13, 14, 15

*Voting Rights Coalition v. Wilson*,
60 F.3d 1411 (9th Cir. 1995), *cert. denied*, 516 U.S. 1093 (1996) .......... 6

*Yick Wo v. Hopkins*,
118 U.S. 356 (1886) .......... 13

**STATUTES**

A.R.S.
§ 16-101 .......... 17
§ 16-127(a)(1) .......... 6
§ 16-166 .......... 17

42 U.S.C. § 1971 .......... 15

52 U.S.C.
§ 10101(a)(2)(B) .......... 17
§ 20501(a)(3) .......... 6

H.B. 2243
§ 2 .......... 6
§ 2(H) .......... 12

H.B. 2492
§ 4(A) .......... 12
§ 5 .......... 6

**CONSTITUTIONAL PROVISIONS**

Ariz. Const. Article VII, § 2, cl. A .......... 17

**OTHER AUTHORITIES**

H.R. Rep. No. 85–291 (1957) .......... 16

Arizona Asian American Native Hawaiian and Pacific Islander For Equity Coalition ("Plaintiff") hereby opposes Defendant Attorney General Brnovich's ("AG") Consolidated Motion to Dismiss Plaintiffs' Complaints (Dkts. 64-1, 65).

## I. INTRODUCTION

The AG's 30-page motion to dismiss the separate *Mi Familia Vota* consolidated cases—which it also files, without leave of court, as its responsive pleading in this case—is an exercise of generalized arguments and misdirection that only affirms the strength of Plaintiff's claims. The AG largely ignores the voter purge scheme of H.B. 2243 (a focal point of Plaintiff's specific claims), instead making sweeping arguments that lump together different plaintiffs, different allegations, and different challenged laws. In many instances, the AG does not address Plaintiff's Complaint at all, and where it attempts to do so, the AG ignores the Complaint's specific allegations and claims. And the motion is riddled with legal error: citation of inapt law, mischaracterizations of the law and facts, and misapplication of the law to the facts.

The approach is not accidental. Just over a month ago, Plaintiff was forced to file a motion for preliminary injunction in this case because the Arizona legislature passed H.B. 2243 with an effective date of September 24, allowing for the first "35-day-notice-of-purge" period to occur just before the November election. Dkt. 32. In response, <u>AG counsel called Plaintiff's counsel and stated that H.B. 2243's effective date was indeed September 24 but that Plaintiff need not worry</u>—because the AG was sure no County Recorder could really implement any voter purge before November. Plaintiff was not so sure, and would not withdraw its PI motion on such assertions. The AG could then have easily filed an opposition, making any of the arguments it now raises regarding a claimed lack of "standing" or "ripeness" or the failure to state a claim. Instead, the AG expressly agreed—as did the Secretary of State and the 15 County Recorder defendants, many of whom had told Plaintiff that absent court order they would implement H.B. 2243 on its effective date of September 24, 2022—to a broad prohibition of all actions until January 1, 2023. And the Court issued an order cementing such prohibitions at Dkt. 54.

The point here is not waiver: the PI stipulation the AG entered into preserved its right to challenge Plaintiff's Complaint. Dkt. 53. Rather, the history and context explain why there is so little of *this Plaintiff*, *this Plaintiff's Complaint*, and *this Plaintiff's specific claims* in the AG's motion. The AG has nothing to say of substance—just as it had nothing to say when Plaintiff filed its PI motion.

Plaintiff respectfully requests that the Court deny the AG's motion to dismiss.

## II. LEGAL STANDARD AND PROCEDURAL POSTURE

On a motion to dismiss, a court must "accept the plaintiffs' allegations as true and construe them in the light most favorable to plaintiffs." *Soltysik v. Padilla*, 910 F.3d 438, 444 (9th Cir. 2018). The same standard applies to 12(b)(1) motions. *See Mecinas v. Hobbs*, 30 F.4th 890, 895-96 (9th Cir. 2022).

To date, none of the other sixteen defendants in this case have filed a motion to dismiss Plaintiff's Complaint—or even a two-sentence joinder to the AG's motion. Indeed, the Secretary of State and the County Recorders each filed an Answer (or Answer joinders) to the Complaint, which bolster many of Plaintiff's factual allegations. Dkt. 60, 63, 73, 75-76, 78-82, 84-88.

## III. ARGUMENT

### A. The AG Does Not Establish That It Has Standing To Dismiss Plaintiff's Claims Against Other Defendants

As a general matter, a movant has no standing to seek dismissal of an action with respect to non-moving defendants. *Mantin v. Broadcast Music, Inc.*, 248 F.2d 530, 531 (9th Cir. 1957) (dismissal of complaint as to non-moving defendants improper because "the moving defendants, obviously, had no standing to seek dismissal of the action as to the nonmoving defendants"). The AG does not address or seek to limit this threshold issue in any respect, and indeed even states that the County Recorder Defendants are the primary Defendants here: "[a]ll of the challenged provisions of HB 2492 and 2243 are implemented and enforced by the County Recorders—not the Secretary of State or Attorney General (neither of whom can register or de-register *anyone*)." Mot. at 11. The AG's motion thus fails at inception to have all claims in this case dismissed.

### B. The AG's Article III Standing Challenges Fail

#### 1. Plaintiff Has Organizational Standing To Bring Its Claims

An organization has standing when it suffers "both a diversion of resources and a frustration of its mission." *La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1088 (9th Cir. 2010). The AG does not address, and thereby concedes, that H.B. 2492 and H.B. 2243 have frustrated Plaintiff's mission. *Painter v. Katerra Inc.*, No. CV-21-00308, 2021 WL 2589736, at *3 n.4 (D. Ariz. Apr. 5, 2021) (explaining that arguments not raised in opening brief may not be raised on reply). The AG cannot raise this waived issue (or any other such issue) for the first time in reply. *U.S. ex rel. Giles v. Sardie*, 191 F. Supp. 2d 1117, 1127 (C.D. Cal. 2000).

As to diversion of resources, the AG addresses (generally) only one of Plaintiff's many allegations—and gets it wrong. Plaintiff specifically alleges how H.B. 2492's and H.B. 2243's documentary proof of citizenship (DPOC), documentary proof of residency (DPOR), birthplace requirements, voter purges, and investigation and prosecution procedures have impaired "its ability to conduct community-based voter registration and mobilization," and the "limited and valuable resources" it has or will need to divert towards combatting these effects, including the hiring of new staff. Compl. ¶¶ 30-32, 101-12. Contrary to the AG's arguments, Plaintiff has and will divert resources away from other projects towards training staff, canvassers, and volunteers, and will divert funds towards its collaboration with Island Liaison to help constituents obtain necessary documentation to comply with the new statutes. *Id.* And while the AG argues that Plaintiff's reduction in its voter registration goals is "not fairly traceable to the new legislation," Mot. at 10, Plaintiff's allegations, taken as true, establish otherwise. *Id.* ¶¶ 30-32.

Courts have repeatedly found diversion of resources—and standing—where organizations have redistributed funds, staff, or time to counteract a law's effects.[1] The

---

[1] The cases cited by the AG to support its "self-inflicted" argument are inapposite. In *Fair Employment Council of Greater Washington, Inc. v. BMC Marketing Corp.*, the court held that the plaintiff *had* standing, but rejected the argument that standing attached to plaintiff's "own budgetary choice" to spend money sending "testers" to ferret out instances of

Complaint thus undeniably establishes that Plaintiff has organizational standing. *See, e.g.*, *Nat'l Council of La Raza v. Cegavske*, 800 F.3d 1032, 1040 (9th Cir. 2015) (standing where an organization "expend[s] additional resources that they would not otherwise have expended, and in ways that they would not have expended them"); *Fair Housing of Marin v. Combs*, 285 F.3d 899, 905 (9th Cir. 2002) (standing where plaintiff spent more money to support its volunteer services and distribute new literature, and was unable to undertake other efforts); *Fla. State Conf. of N.A.A.C.P. v. Browning*, 522 F.3d 1153, 1166 (11th Cir. 2008) (standing where plaintiffs reasonably anticipated having to "divert personnel and time to educating volunteers and voters" and to resolving absences on registration rolls).[2]

**2. Plaintiff's Claims Are Ripe For Adjudication**

"The Supreme Court has long held that where the enforcement of a statute is certain, a pre-enforcement challenge will not be rejected on ripeness grounds." *Browning*, 522 F.3d at 1164 (citing *Reg'l Rail Reorg. Act Cases*, 419 U.S. 102, 143 (1974)). Ripeness depends on two factors: "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *San Luis & Delta-Mendoza Water Auth. v. Salazar*, 638 F.3d 1163, 1173 (9th Cir. 2011) (where plaintiff is not the "target of enforcement," whether it has plans to violate the law is irrelevant).[3] Plaintiff satisfies both.

First, the issues are fit for judicial determination because Plaintiff has already suffered injury and will continue to suffer injury once these laws go into effect. Compl. ¶¶ 101-12. Moreover, no defendant disputes it will fully enforce H.B. 2492 and H.B. 2243, and will prepare to do so. That more than suffices. *See Ariz. Right to Life PAC v. Bayless*, 320 F.3d 1002, 1007 n.6 (9th Cir. 2003) (plaintiff that has suffered harm "dispenses with

---

discrimination. 28 F.3d 1268, 1276-77 (D.C. Cir. 1994). Plaintiff's goal reduction here in response to H.B. 2492 is nothing like that. *See Browning*, 522 F.3d at 1166. *Rodriguez v. City of San Jose*, 930 F.3d 1123 (9th Cir. 2019) is also distinguishable because Plaintiff here alleges that it decreased its registration goal *as a result of* H.B. 2492. *Cf. id.* at 1136.

[2] Plaintiff also filed a declaration, as part of its PI motion, establishing injury. Dkt. 33.

[3] The AG misstates and misapplies this long-established standard. Mot. at 12-13. Because Plaintiff is not the target of enforcement under the challenged laws, *Thomas v. Anchorage Equal Rights Commission*, 220 F.3d 1134 (9th Cir. 2000) and like cases are inapposite.

any ripeness concerns"); *Associated Builders & Contractors of Cal. Coop. Comm., Inc. v. Becerra*, 231 F. Supp. 3d 810, 818 (S.D. Cal. 2017) (case ripe where defendants conceded they would enforce law that would financially harm the plaintiff).[4]

The AG nevertheless argues that Plaintiff's challenges are "speculative" and not fit for a judicial decision until after voters have been disenfranchised. That is meritless. Even putting aside that this argument is inapplicable to a number of the challenged provisions (or to Plaintiff's purely legal arguments, such as its NVRA claim), *see Browning*, 522 F.3d at 1164, it is likely and foreseeable that registered and would-be voters here will be wrongfully denied the right to vote based on database mismatches, and improper, vague language. Compl. ¶¶ 12, 58-61, 73, 86; *see United States v. Stevens*, 559 U.S. 460, 480 (2010) ("We would not uphold an unconstitutional statute merely because the Government promised to use it responsibly."). Likely and foreseeable injuries are not speculative, but fit for judicial decision now. *See Puppies 'N Love v. City of Phx.*, No. CV-14-00073, 2014 WL 1329296, at *2-3 (D. Ariz. Apr. 2, 2014) (injuries not speculative where ordinance implicated plaintiff's business model); *cf. Arcia v. Fla. Sec'y of State*, 772 F.3d 1335, 1341 (11th Cir. 2014) ("realistic probability that [plaintiffs] would be misidentified due to unintentional mistakes in the … data-matching process" made voter purge case ripe).[5]

Second, "withholding review would result in direct and immediate hardship" to Plaintiff because so long as these laws remain on the books it will suffer injury. Compl. ¶¶ 101-12; *Friendly House*, 2010 WL 11452277, at *8 (finding allegations that organization would suffer injury upon enactment satisfied hardship prong). The AG ignores these hardships, and states only that Plaintiff's "speculative" allegations about

---

[4] *See also, e.g.*, *Friendly House v. Whiting*, No. CV 10-1061, 2010 WL 11452277, at *8 (D. Ariz. Oct. 8, 2010) (case was ripe where plaintiffs "allege[d] that they will be subject to an organizational injury as a result of the enforcement of an unconstitutional enactment"); *Pa. v. W. Va.*, 262 U.S. 553, 592-95 (1923) (suits were ripe even though the law had not "been tested in actual practice" because "[o]ne does not have to await the consummation of threatened injury to obtain preventive relief"), *aff'd*, 263 U.S. 350 (1923).

[5] *Texas v. United States*, 523 U.S. 296 (1998), which deals with laws coming into play only if very specific events occur, *id.* at 300, is also inapposite. *See, e.g.*, *Cont'l Ins. Co. v. Daikin Applied Am., Inc.*, No. 17-cv-552, 2019 WL 6873797, at *4 (D. Minn. Dec. 17, 2019); *Cnty. of Santa Clara v. Trump*, 250 F. Supp. 3d 497, 529-30 (N.D. Cal. 2017).

database mismatches and bad faith mean Plaintiff will not face hardship if made to wait. Mot. at 13-14. This argument fails for the reasons explained above.

There are no legitimate Article III challenges to Plaintiff's ability to bring this case.

**C. The AG's Attack On Plaintiff's NVRA Claims Rests On False Premises And Fails To Address Plaintiff's Actual Allegations**

The AG's attacks on Plaintiff's NVRA claims are demonstrative of the AG's overall approach in its motion: faulty legal premises, the misstatement or avoidance of controlling law, and feigned ignorance of the allegations in Plaintiff's Complaint.

First, the AG starts with the incorrect assertion that the two laws being challenged "regulate only state and presidential elections." Mot. at 22 (citing H.B. 2492 § 5; A.R.S. § 16-127(a)(1)). That is not true. The AG does not once cite, or even mention, H.B. 2243—a focal point of this Plaintiff's claims—which acts to cancel *any* voter's registration that does not provide DPOC within 35 days. H.B. 2243 § 2. <u>There is no carve-out for federal-only/congressional-only voters in H.B. 2243</u>. As such, Plaintiff's allegations that H.B. 2243 § 2 violates the NVRA are uncontroverted. Compl. ¶¶ 168-69, 171-72.

Second, contrary to the AG's assertion, the NVRA *does* apply to presidential elections according to binding precedent the AG fails to cite for the Court. *See Voting Rights Coalition v. Wilson*, 60 F.3d 1411, 1413-14 (9th Cir. 1995), *cert. denied*, 516 U.S. 1093 (1996) (NVRA constitutional; Congress has broad power over presidential elections) This binding precedent closes the door on the AG's entire challenge to Plaintiff's NVRA claims. Moreover, the Supreme Court has held that Congress may pass laws regulating presidential elections. *See Oregon v. Mitchell*, 400 U.S. 112, 117-18 (1970). The Court stated, "[i]t cannot be seriously contended that Congress has less power over the conduct of presidential elections than it has over congressional elections." *Id.* at 124 & n.6; *see also Burroughs v. United States*, 290 U.S. 534, 544-45 (1934) (stating that limiting Congress's powers over presidential elections to just time "is without warrant").[6]

---

[6] The AG also asserts in a footnote that the NVRA could not be an exercise of Congress's authority under the Fourteenth and Fifteenth Amendments due to a "lack of detailed findings." Mot. at 23 n.7. This ignores *codified* findings that refer to "discriminatory and unfair registration" that harm groups like "racial minorities." 52 U.S.C. § 20501(a)(3).

Third, the AG appears to argue that the NVRA claims fail as a matter of law because of some failing in Plaintiff's Complaint, but never once cites to anything problematic or missing in the Complaint. *See* Mot. at 24-25. There is no such failing, as the detailed allegations make clear. *See* Compl. ¶¶ 156-74; Dkt. 32 at 11-14. Nor did the AG flag as required any such alleged pleading infirmities in meet and confer, prior to filing, thus waiving its ability to do so now. LRCiv 12.1(c).

### D. The AG's Challenges To Plaintiff's Constitutional Claims Fail

#### 1. Plaintiff Adequately Alleges Its Undue Burden Claims

While the AG correctly notes that the *Anderson/Burdick* sliding-scale test applies to Plaintiff's undue burden claims, the AG fails to apply that framework faithfully. Mot. at 14. The AG again follows the same playbook: it ignores Plaintiff's allegations, mischaracterizes the burdens imposed by the challenged laws, and then purports to create speculative state interests justifying those burdens.[7] The approach fails. The factual issues inherent in the *Anderson/Burdick* test as to both the magnitude of the burdens and the validity of the purported justifications for the laws preclude dismissal. *See, e.g.*, *Mecinas*, 30 F.4th at 904-05; *Soltysik*, 910 F.3d at 448-49 (a state's "speculative concern" cannot "justify *any* regulation that burdens a plaintiff's rights, especially where that burden is more than de minimis").

##### a. The AG Mischaracterizes The Alleged Burdens

Ignoring Plaintiff's actual allegations, the AG chooses to address the burdens *it* thinks Plaintiff should have alleged. That is not how it works. A court "must first consider the character and magnitude *of the asserted injury* to the rights protected by the First and Fourteenth Amendments *that the plaintiff seeks to vindicate*." *Anderson v. Celebrezze*, 460 U.S. 780, 789 (emphases added).

---

[7] The AG cites *Dudum v. Arntz*, 640 F.3d 1098, 1106 (9th Cir. 2011) for the proposition that "voting regulations are rarely subjected to strict scrutiny." Mot. at 14. But *Anderson/Burdick* is a sliding-scale, and Ninth Circuit law—including *Dudum*—establishes even "where a burden is not severe enough to warrant strict scrutiny review [it may be] serious enough to require an assessment of whether alternative methods would advance the proffered government interests." 640 F.3d at 1114 n.27.

For example, Plaintiff asserts burdens on First Amendment rights: that H.B. 2492 and H.B. 2243, individually and together, create a scheme that chills naturalized citizens and other voters of color from registering to vote, including with threat of criminal prosecution. *See, e.g.*, Compl. ¶¶ 10, 12, 63, 70, 80, 86-87, 94, 98, 104, 109, 112, 116. The laws go directly to the fundamental right to vote, chilling would-be voters from registering, and not simply to "the electoral process, imposing only indirect and less substantial burdens on communication." *Buckley v. Am. Constitutional Law Found., Inc.*, 525 U.S. 182, 216 (1999) (O'Connor, J. concurring). Moreover, "[t]he threat to infringement of such First Amendment rights is at its greatest when, as here, the state employs its criminalizing powers." *Sanders Cnty. Republican Cent. Comm. v. Bullock*, 698 F.3d 741, 745 (9th Cir. 2012); *see also United States v. Alvarez*, 567 U.S. 709, 733 (2012) (Breyer, J. concurring) ("[T]he threat of criminal prosecution . . . can inhibit the speaker from making [protected] statements, thereby 'chilling' a kind of speech that lies at the First Amendment's heart."). But the AG *ignores* these allegations entirely, and thus, once again, waives any argument as to the issue. This alone is dispositive.

The AG's attempt to create its own straw-man "burdens" fares no better. At the threshold, the cases the AG relies on in fact strongly counsel *against* dismissal because the decisions, which turned on a voter's ultimate ability to vote, came after opportunities to develop the record—*Crawford* at summary judgment and *Gonzalez* after trial. *See Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 187-88 (2008); *Gonzalez v. Arizona*, 677 F.3d 383, 389 (9th Cir. 2012) (*en banc*). Here, too, Plaintiff must be allowed to develop a record, but sufficiently alleged that the two statutes prevent registration or remove voters from voter rolls, barring their ability to cast a ballot.

Plaintiff has also pleaded that the burdens imposed fall disproportionately on identifiable segments of the population, that the fees associated with obtaining the necessary documents are particularly burdensome on those segments, and that the entire scheme created by H.B. 2492 and H.B. 2243 substantially burdens the fundamental right to vote for specific segments of voters. *See, e.g.*, Compl. ¶¶ 60-61, 73, 78, 80, 83-98. As

alleged in the Complaint, in Maricopa County alone 96,000 registration forms were rejected because DPOC was not initially provided. *Id.* ¶ 89. This is indicative of the burdens that will be imposed here, and that they will burden specific segments of the electorate. And the constitutional concerns are amplified because Plaintiff has alleged that the burdens disproportionately fall "on an identifiable segment of voters." *Ariz. Democratic Party v. Hobbs ("Hobbs III")*, 18 F.4th 1179, 1190 (9th Cir. 2021) (quotation omitted). This is more than sufficient at this stage.[8]

**b. The Purported State Interests Are Pretextual And Do Not Justify The Burdens Imposed**

The AG alludes to the State's interests of "reducing administrative burdens," "securing its elections," and "maintaining voter confidence" as justifying the substantial burdens imposed by these laws. Mot. at 16. The AG cites a number of out-of-circuit cases to argue that essentially the State may make up its interests post-hoc so long as they can be said to be valid interests.[9] *See id.* But as explained above, the burdens imposed here are "more than de minimis," and in the Ninth Circuit, the Court may not simply accept the State's "speculative" interests without evidence. *Soltysik*, 910 F.3d at 448-49. Further, the Ninth Circuit requires weighing "the legitimacy and strength of each of [the interests put forward by the State as justifications], and . . . consider[ing] the extent to which those interests make it necessary to burden the plaintiff's rights." *Hobbs III*, 18 F.4th at 1187.

As noted above, the AG has ignored numerous burdens alleged by Plaintiff, and therefore has not presented precise interests as justifications for each of these burdens. Even the interests raised make no sense. For example, how do the new monthly database

---

[8] *Fish v. Schwab* is instructive. 957 F.3d 1105 (10th Cir. 2020), *cert. denied*, 141 S. Ct. 965 (2020). There, the court also reviewed the burdens imposed by a law requiring DPOC to register: "[b]ased primarily on the district court's finding that 31,089 applicants were prevented from registering to vote because of the DPOC requirement, . . . that the burden imposed on the right to vote by the DPOC requirement was significant and requires heightened scrutiny." *Id.* at 1127-28. And it rejected the counterargument—like the AG's here (*see* Mot. at 15-16)—that the burden of requiring all registrants to provide DPOC "compares favorably to the burden . . . found insubstantial in *Crawford*." *Id.* at 1128.

[9] The AG mischaracterizes even this law. For example, the AG asserts that "*Anderson/Burdick* treats the State's interests as a 'legislative fact.' *Frank v. Walker*, 768 F.3d 744, 750 (7th Cir. 2014)." But *Frank* never makes such a broad statement.

checks for citizenship imposed by H.B. 2243 *reduce* administrative burdens? "However slight that burden may appear, as *Harper* demonstrates, it must be justified by relevant and legitimate state interests sufficiently weighty to justify the limitation." *Crawford*, 553 U.S. at 191. The AG has not put forward precise interests weighty enough to justify any of the limitations imposed by the challenged laws.

**2. Plaintiff Adequately Alleges Its Procedural Due Process Claims**

The AG starts from the incorrect premise that Plaintiff asserts a "freestanding procedural due process claim[]" outside the *Anderson/Burdick* framework. Mot. at 16. But the Complaint specifically cites *Anderson/Burdick*. Compl. ¶ 136. Putting aside the faulty foundation, and assuming *Anderson/Burdick* is the sole test for Plaintiff's claims here, the AG then makes the leap that Plaintiff's procedural due process claims rise and fall with its undue burden claims. Mot. at 17. The AG is wrong here too.

In *Hobbs III*, the undue burden and procedural due process claim were one and the same. 18 F.4th at 1181, 1195 ("Plaintiffs do not argue that their procedural due process claim differs in some material way from their substantive claim . . . ."). Here, Plaintiff's claims differ in material ways. Whereas Plaintiff's undue burden claims are primarily premised on the burdens caused by unnecessary documentation during registration and voter purges and the chilling effect of those provisions, Plaintiff's procedural due process claims are premised on the stripping of voting rights with insufficient notice and insufficient opportunity to cure. *See* Compl. ¶¶ 113-118, 134-142. The challenged aspects of these laws levy significant and severe procedural burdens. In some cases, voters won't know what is happening before they try to vote and find they are not on the rolls or are being prosecuted. *Cf. Fish*, 957 F.3d at 1127-32.

Moreover, though it invokes *Anderson/Burdick*, the AG identifies no state interests for the procedural burdens the laws create. The AG advances no specific interests related to stripping already-registered voters who have not provided DPOC of their eligibility to vote in presidential elections and to use mail ballots without an opportunity to cure. Voting for president is a "national interest" that "is greater than any interest of an individual State,"

yet Arizona seeks to disrupt it. *Anderson*, 460 U.S. at 795 (quotation omitted). And the AG certainly advances no specific interests why Arizona requires voters properly on the rolls to keep proving their citizenship, much less limit those accused of being non-citizens to only a 35-day response period—a provision called out only in this Plaintiff's Complaint and entirely ignored by the AG—given that it typically takes much longer to obtain proper documentation.[10] *See* Compl. at 1, ¶¶ 12-13, 17-18, 60, 93. Absent any "precise interests" for these burdens, the laws are unconstitutional. *Anderson*, 460 U.S. at 789.[11]

### 3. Plaintiff Adequately Alleges Its Equal Protection Claims

A statutory scheme violates equal protection if its classifications infringe on a fundamental right, target a suspect class, or have no rational basis. *See Jackson Water Works, Inc. v. Pub. Utils. Comm'n of State of Cal.*, 793 F.2d 1090, 1092-94 (9th Cir. 1986). "The first step in equal protection analysis is to identify the [defendants'] classification of groups," which a plaintiff can do by showing that "the law is applied in a discriminatory manner or imposes different burdens on different classes of people." *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1187 (9th Cir. 1995). "The next step is to determine the level of scrutiny." *Id.* (citation omitted). A facial classification based on a suspect class, like national origin or race, "regardless of purported motivation, is presumptively invalid," and "[t]his rule applies as well to a classification that is ostensibly neutral but is an obvious pretext for racial discrimination." *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 272 (1979). Also, "when a neutral law has a disparate impact upon a group that has historically been the victim of discrimination, an unconstitutional purpose may still be at work," so courts must inquire "whether the adverse effect reflects invidious [] discrimination." *Id.* at

[10] Likewise, the AG advances no specific interests related to cancelling a voter's registration without notice or an opportunity to cure, or for not allowing an applicant to contest or cure a determination that they are not a citizen and starting criminal proceedings against them. Compl. ¶¶ 95-98; Mot. at 16.

[11] The AG relies on inapt "liberty interest" prisoner cases to suggest that voting springs only from state law, and therefore state law may impose any level of procedural burdens. *See* Mot. at 17. Instead, voting is a fundamental right protected by the Constitution, including the Due Process Clause of the Fourteenth Amendment, and state law must yield when it violates the Constitution. *See, e.g.*, *Anderson*, 460 U.S. at 786-89; *Burdick v. Takushi*, 504 U.S. 428, 433-34 (1992); *Reynolds v. Sims*, 377 U.S. 533, 561-62 (1964).

273-74. In such cases, a plaintiff is not required "to prove that the challenged action rested solely on racially discriminatory purposes." *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977).

**a. The Laws Facially Discriminate Based On National Origin, Warranting Strict Scrutiny**

Because Plaintiff sufficiently pleads that the laws classify and discriminate on the basis of national origin, *see, e.g.*, Compl. ¶¶ 86-87, 94-96, 128-130, the AG bears the burden of showing that the laws meet strict scrutiny. *Freeman*, 68 F.3d at 1187. The AG did not attempt to do so, *see* Mot. at 17-18, so its Motion fails as to these claims.

Plaintiff alleges that both laws facially discriminate by classifying registrants by national origin and using that information ostensibly as a factor in verifying their citizenship. *See Mitchell v. Washington*, 818 F.3d 436, 445-46 (9th Cir. 2016) (holding that even a "benign" use of a suspect classification is subject to strict scrutiny if it is a "factor in a government decision"). Accordingly, Plaintiff "need not make an extrinsic showing of discriminatory animus or a discriminatory effect to trigger strict scrutiny." *Id.*

The AG asserts that both laws are "not facially discriminatory whatsoever." Mot. at 18. Not so. H.B. 2492 § 4(A) requires registrants to provide their national origin, *see* Compl. ¶¶ 87, 94, 128, and the AG's post-hoc rationalizations confirm that this will be used to discriminate. The AG explains that this Birthplace Requirement "***facilitates ascertaining*** if a registrant is a U.S. Citizen." Mot. at 7 (emphasis added); *see also, e.g.*, Mot. at 19 n.6, 28 (noting that birthplace "helps define what sort of proof can serve to demonstrate citizenship"). Thus, the AG ***admits*** that the State classifies registrants based on their stated national origin and ***acknowledges*** that this information is used to ascertain whether a voter is a citizen. *See* Compl. ¶ 128. H.B. 2243 § 2(H) requires county recorders to compare a registered voter against the Systematic Alien Verification for Entitlements (SAVE) Program every month, if the county recorder "has reason to believe" such voter is not a U.S. citizen. *Id.* ¶ 85. Under this provision, the *only* database checked is the SAVE database, meaning the "reason to believe" standard is only relevant to and only ever applied

to voters born outside the United States—meaning it applies based on voters' national origin. *See id.* ¶¶ 86, 96, 130. Thus, H.B. 2243 facially discriminates and can only be applied in a discriminatory manner to systematically remove naturalized citizens from the voter rolls through an unreliable "data-matching process." *See Arcia*, 772 F.3d at 1344; *see also Feeney*, 442 U.S. at 272; *Yick Wo v. Hopkins*, 118 U.S. 356, 373-74 (1886).

The AG also argues that "[b]oth statutes require *all* persons—no matter their race or national origin—to provide POC and POR and satisfy the other statutory requirements." Mot. at 18. But this does not address the Birthplace requirement and the AG's own admission that the State then treats applicants differently based on that information. Nor does it address the inherently unequal application of the SAVE database checks. This is facial discrimination and strict scrutiny applies. Consequently, the Court may not uncritically accept the AG's assertion that national origin is used in a permissible way. *See Fisher v. Univ. of Tex.*, 570 U.S. 297, 310-14 (2013).

**b. Plaintiff Adequately Alleges Discriminatory Intent**

Without discussing a single allegation in the Complaint, the AG falsely asserts that Plaintiff has not pleaded a discriminatory purpose. Mot. at 20-22. In fact, the Complaint repeatedly references and describes the discriminatory purpose behind these laws. *See, e.g.*, Compl. ¶¶ 11, 15, 18, 49, 54, 61, 88, 92, 131, 147, 148, 150. Under *Arlington Heights* and its five factors—the proper analysis, which the AG fails to address—this is more than enough to allege a discriminatory purpose under the Fourteenth and Fifteenth Amendments. *Arce v. Douglas*, 793 F.3d 968, 978 (9th Cir. 2015) (a claim with "any indication of discriminatory motive" survives a motion to dismiss).

*Arlington Heights* instructs that a plaintiff need not prove that "the discriminatory purpose was the sole purpose of the challenged action, but only that it was a 'motivating factor.'" *Arce*, 793 F.3d at 977 (quoting *Arlington Heights*, 429 U.S. at 265-66). Courts examine five non-exhaustive factors to make this determination:

> (1) the impact of the official action and whether it bears more heavily on one race than another; (2) the historical background of the decision; (3) the specific sequence of events leading to the challenged action; (4) the defendant's departures from

> normal procedures or substantive conclusions; and (5) the relevant legislative or administrative history.

*Arce*, 793 F.3d at 977. The Complaint contains allegations supporting each factor.

First, "the impact of" H.B. 2492 and H.B. 2243 "bears more heavily on" naturalized persons and persons of color, revealing the laws' discriminatory purpose. *Arlington Heights*, 429 U.S. at 266. The Complaint is replete with allegations of this—none of which are addressed by the AG. *See, e.g.*, Compl. ¶¶ 1, 7, 18, 49, 54, 61, 89-90, 93-98.

Second, the recent legislative sessions in Arizona have passed some of the most restrictive voter laws in the country, and Arizona has a "long history of discrimination" against groups of color in voting, including with respect to similar discriminatory provisions of these new laws. *Gonzalez*, 677 F.3d at 442-44 (Pregerson, J. concurring in part and dissenting in part); *see also* Compl. ¶¶ 2, 3, 8-9.

Third, both laws were passed shortly after the 2020 election. In response to claims of voter fraud, Governor Ducey publicly rejected that notion. Compl. ¶¶ 8-9. A partisan audit found no evidence of voter fraud, which the AG confirmed in his own report. *Id.* ¶¶ 9 n.3, 53. Thus, while Plaintiff indeed "believe[s] that voter fraud is not an issue in Arizona," Mot. at 21, Arizona officials *also believe* that voter fraud is not an issue, supported by the Legislature's own audit. *Id.* ¶¶ 9, 53. And yet both the lobbying group behind H.B. 2492 and the Governor directly stated, or insinuated, that there was voter fraud among those who had not provided DPOC, as pretextual justification. *Id.* ¶ 49, 54.

Finally, the legislative history and abandonment of normal procedures in passing these laws also indicate discriminatory motives. As to H.B. 2243, Governor Ducey vetoed the prior iteration of it (H.B. 2617) for lacking "sufficient due process" protections. Compl. ¶ 58. In response, in the last two days of the legislative session, the Senate amended H.B. 2243 to include a modified version of H.B. 2617, it passed the House, and was then signed into law. *Id.* In making the amendment, its sponsor stated the "amendment is basically what was House Bill 2617," but that it addresses the Governor's concerns. *Id.* ¶ 59. The sponsor, however, failed to mention a substantial change: that the amendment reduced the

response period to provide DPOC from H.B. 2617's 90 days to only 35 days for those accused of lacking U.S. citizenship (which predominantly will be naturalized citizens and persons of color), affording these voters even less due process protections. *Id.* ¶¶ 60, 90, 93. This indicates a discriminatory purpose. *League of Women Voters of Fla., Inc. v. Lee*, No. 4:21CV186-MW/MAF, 2022 WL 969538 at *32-33 (N.D. Fla. Mar. 31, 2022) (a bill being passed in an "unusual manner" supported striking it down). And as to H.B. 2492, staff attorneys advised the Legislature that the law would violate the NVRA and the Supreme Court *ITCA* opinion—but they passed it anyway. Compl. ¶ 48; *cf. Veasey v. Abbot*, 830 F.3d 216, 236 (5th Cir. 2016) (striking down an in-person identification voting law where "the Legislature was advised of the likely discriminatory impact").[12]

#### c. Plaintiff Has Sufficiently Pled The Arbitrary and Disparate Treatment of Applicants

Plaintiff has also plausibly pled the laws' classifications are not rationally related to the state's legitimate interests. *AIDS Healthcare Found. v. Douglas*, 457 F. App'x 676, 678 (9th Cir. 2011) (reversing dismissal where plaintiff "plausibly pled" law irrationally distinguished plaintiff). Plaintiff alleged that the justifications for the laws are pretextual and that the laws are designed to harm a politically unpopular group. *See* Compl. ¶¶ 7-9, 49, 54, 88, 94, 96, 122-23,[13] 130. No more is needed.

## B. The AG's Challenge To Plaintiff's Civil Rights Act Claim Fails

### 1. Plaintiff Has A Private Right Of Action

Courts have long recognized a private right of action to bring a Section 10101 (formerly 42 U.S.C. § 1971) claim. *See, e.g., Schwier v. Cox*, 340 F.3d 1284, 1294-97

---

[12] The AG addresses none of this, instead saying the Legislature is owed a "presumption of good faith." Mot. at 21. Not so. The "presumption of good faith" applies *only* in "redistricting cases." *Abbott v. Perez*, 138 S. Ct. 2305, 2311 (2018) (citing *Miller v. Johnson*, 115 S. Ct. 2475 (1995)). Further, when "there is a proof that discriminatory purpose has been a motivating factor" in a legislature's decision—as here—"judicial deference [to legislators] is no longer justified." *Arlington Heights*, 429 U.S. at 265-66. Likewise, the *Nestor* evidentiary burden is inapplicable because it is only employed when examining whether a statute was passed for a "punitive purpose," which Plaintiff does not allege here. Mot. at 21; *see Flemming v. Nestor*, 363 U.S. 603, 617-19 (1960).

[13] The Secretary of State admits that "HB 2492 treats voters who register using the Federal Form differently from voters who register using the State Form and requires rejection . . . if a voter submits a State Form without DPOC." Dkt. 63 ¶ 122.

(11th Cir. 2003). While there is a circuit split, contrary to the AG's claim, more circuit courts have recognized a private right of action than not. *Compare Schwier*, 340 F.3d at 1294-97; *Taylor v. Howe*, 225 F.3d 993, 996 (8th Cir. 2000); *Reddix v. Lucky*, 252 F.2d 930, 933-34 (5th Cir. 1958), *with Ohio Coal. for the Homeless v. Husted*, 837 F.3d 612, 630 (6th Cir. 2016); *Dekom v. New York*, No. 12-CV-1318 JS ARL, 2013 WL 3095010, at *18 (E.D.N.Y. June 18, 2013), *aff'd*, 583 F. App'x 15 (2d Cir. 2014).[14]

The AG recognizes that whether there is a private right of action turns on Congressional intent—but the AG never really examines it. *See* Mot. at 25. By contrast, *Schwier* studied the Congressional intent closely and held that Congress intended for a private right of action to exist. 340 F.3d at 1294-97 (stating Congress's intent in adding Attorney General enforcement was a means of *further* protecting civil rights as private plaintiffs had long brought suits) (citing H.R.REP. NO. 85–291 (1957)). *Schwier*'s analysis was so compelling, that Sixth Circuit in *Ohio Coal*—cited by the AG—stated that *Schwier* was more "in-depth" than its own precedent, which provided "no explanation" for its reasoning, but followed that precedent on stare decisis grounds. 837 F.3d at 630.

**2. State Laws Are Not Immune To § 10101 Claims**

The AG argues that § 10101 governs only "*ad hoc* executive actions that *exceed* state law, without dictating the *substance* of state law itself," would mean no state law could ever be challenged under § 10101, despite Congress's intent. Mot. at 26; *see Condon v. Reno*, 913 F. Supp. 946, 966 (D.S.C. 1995) (noting § 10101 was enacted forbidding *states* from denying voter registrants because of immaterial errors). Unsurprisingly, the AG's novel theory is not supported by any of the cases it cites.

*Organization for Black Struggle v. Ashcroft* directly contradicts the AG's position. 493 F. Supp. 3d 790, 803 (W.D. Mo. 2020). There, the court did not consider the challenged Missouri laws an inscrutable "baseline" immune from the statute. Instead the

---

[14] The Ninth Circuit has not formally weighed in on this split, but has unofficially done so. In *Davis v. Commonwealth Election Comm'n*, No. 1-14-CV-00002, 2014 WL 2111065, at *10 (D. N. Mar. I. May 20, 2014), *aff'd*, 844 F.3d 1087 (9th Cir. 2016), the court—persuaded by *Schwier*—held that there was a private right of action under Section 10101.

court was focused on whether they were material to assessing a voter's *qualifications*. Here, Plaintiff challenges state laws that request information that exceed the voter *qualifications* set under the Arizona state constitution and state law. *See* Mot. at 28 ("Arizona requires voters to be U.S. citizens and residents of the state." (citing Ariz. Const. art. VII, §2, cl. A; A.R.S. § 16-101)).[15]

### 3. Place of Birth is Immaterial to Determining Voter Eligibility

A voter registrant's place of birth is not material to determining their eligibility to vote, as none of the voter qualifications involve where a registrant was born, as the AG is aware. *See* A.R.S. § 16-101; Mot. at 28; Dkt. 63 ¶ 63. For good reason. A person's place of birth is not dispositive of whether they are a U.S. citizen. This requirement only serves to chill the registration of naturalized citizens with concern that indicating a foreign place of birth will subject them to additional scrutiny and potentially criminal charges.[16]

The AG's only argument why birthplace is material is that it "helps define what sort of proof can serve to demonstrate citizenship." Mot. at 28. It is not clear what the AG even means by helping "define" the sorts of proof, but information is not material simply because it *helps* determine other eligibility requirements. *See Martin v. Crittendon*, 347 F. Supp. 3d 1302, 1308-09 (N.D. Ga. 2018) (holding that a registrant's year of birth was not material, despite being *helpful* in determining whether a voter was proper age). Moreover, A.R.S. § 16-166 already enumerates what sorts of proof can demonstrate citizenship. The AG's broad reading of materiality would open the door to states requesting a wide variety of information if it was in any way related to eligibility criteria and is unsupported.

## IV. CONCLUSION

For the foregoing reasons, the Court should deny the AG's motion.

---

[15] The AG also argues that asking the applicant a second time to provide their place of birth cures the § 10101 violation. Not so. Conditioning the right to vote on the provision of immaterial information violates the statute. 52 U.S.C. § 10101(a)(2)(B) ("Deny[ing] the right of any individual to vote in any election because of an error or **omission** . . . if such error or **omission** is not material . . ." (emphasis added)); *see also Sixth Dist. of Afr. Methodist Episcopal Church v. Kemp*, 574 F. Supp. 3d 1260, 1282 (N.D. Ga. 2021).

[16] Indeed, the AG's post-hoc rationalizations for this requirement show that is exactly how Arizona will use this information. *Supra* at 12.

Dated: October 17, 2022

Respectfully submitted,

By */s/ Amit Makker*

LATHAM & WATKINS LLP
Sadik Huseny (*pro hac vice*)
Amit Makker (*pro hac vice*)
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-6538
Telephone: (415) 391-0600
Facsimile: (415) 395-8095

ASIAN AMERICANS ADVANCING JUSTICE-AAJC
Niyati Shah (*pro hac vice*)
Terry Ao Minnis (*pro hac vice*)
1620 L Street NW, Suite 1050
Washington, DC 20036
Telephone: (202) 296-2300
Facsimile: (202) 296-2318

SPENCER FANE
Andrew M. Federhar (No. 006567)
2415 East Camelback Road, Suite 600
Phoenix, AZ 85016
Telephone: (602) 333-5430
Facsimile: (602) 333-5431

*Attorneys for Plaintiff*